UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------x
ERNESTO DARQUEA
                    Plaintiff,

        –against–                          C. A. NO. 05-10438 MLW

VIISAGE TECHNOLOGY, INC.,
BERNARD BAILEY, WILLIAM K. AULET,
and DENIS K. BERUBE,
                    Defendants.

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL BY WALTER D. COHUTT**

 

**SHAPIRO HABER & URMY LLP**
Thomas G. Shapiro (BBO#454680)
Theodore M. Hess-Mahan (BBO#57109)
53 State Street
Boston, MA 02109
617-439-3939

Attorneys for Movant

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.      ALL RELATED CASES SHOULD BE CONSOLIDATED . . . . . . . . . . . . . . . . . 5

      B.      MOVANT WALTER COHUTT SHOULD
              BE APPOINTED LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           1.      The Procedure Required By the PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           2.      The Movant Satisfies the "Lead Plaintiff"
                 Requirements of the Exchange Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                (I)      Movant Has Complied with the Exchange
                        Act and Should Be Appointed Lead Plaintiff . . . . . . . . . . . . . . . 7

                (ii)     The Movant Has the Requisite Financial
                        Interest in the Relief Sought by the Class . . . . . . . . . . . . . . . . . . 8

                (iii)    Movant Otherwise Satisfies Rule 23 . . . . . . . . . . . . . . . . . . . . . . 8

      C.      MOVANT'S SELECTION OF LEAD COUNSEL
              SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                                                    **PAGE**

*Bassin v. Decode Genetics, Inc.,* 2005 U.S. Dist. LEXIS 51 (S.D.N.Y. Jan. 4, 2005) . . . . . . . . . 9

*Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Cable & Wireless, Plc., Securities Litigation*,
    217 F.R.D. 372, (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cardinal Health Securities Litigation*,
    226 F.R.D. 298, 2005 U.S. Dist. LEXIS 1431 (S.D. Ohio 2005) . . . . . . . . . . . . . . . . . . 8

*In re Great Southern Life Ins. Co. Sales Practices Litig.,*
    192 F.R.D. 212, 217 (N.D.Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Royal Ahold Secs. & ERISA Lit.,* 219 F.R.D. 343 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . 2

*Johnson v. Celotex Corp.,* 899 F.2d 1281(3d Cir.); cert. *denied,* 498 U.S. 920 (1990) . . . . . . . . 6

*Lax v. First Merchants Acceptance Corp.,*
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6,1997) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Linn v. Allied Ir. Banks*, PLC, 2004 U.S. Dist. LEXIS 24655 (S.D.N.Y. Dec. 8, 2004) . . . . . . . 7

*Modell v. Eliot Say. Bank,* 139 F.R.D. 17 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Priest v. Zayre Corp.*, 118 F.R.D. 552 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Skwortz v. Crayfish Co.*, 2001 U.S. Dist. LEXIS 15532 (S.D.N.Y. Sept. 28, 2001) . . . . . . . . . . 2

*Sczesny Trust v. KPMG, LLP*, 223 F.R.D. 319 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 9

*The Goodyear Tire and Rubber Securities Litigation*,
    2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004) . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES AND RULES**

Private Securities Litigation Reform Act ("PSLRA")

15 U.S.C. §78u-4(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. §78u-4(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rule 23 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rule 42(a) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **PRELIMINARY STATEMENT**

Movant Walter D. Cohutt, through his attorneys, submits this Memorandum of Law in support of his Motion for consolidation of related cases, appointment as Lead Plaintiff, and approval of his selection of Paskowitz & Associates as Lead Counsel, and Shapiro Haber & Urmy as Liaison Counsel. For the reasons set forth below, this Motion should be granted.

This action, and several related class actions, have been filed in this District against Defendant Viisage Technology, Inc. ("Viisage" or the "Company") and its top officers and directors. Each alleges violations of the securities laws through the issuance of false positive information regarding the Company's business and financial success in order artificially to inflate Viisage's stock price. Viisage provides technology identity solutions for governments, law enforcement agencies and businesses concerned with enhancing security, reducing identity theft, providing access control and protecting personal privacy. The Company's business involves two related segments: secure credentials and biometrics. The secure credentials solutions segment involves the design, development, marketing and implementation of integrated software and hardware solutions that produce identification credentials utilizing face recognition and other biometric technologies. The focus of the biometric technology solutions segment is primarily on applications designed to deter criminal and terrorist activities, including government research and development contracts.

During the class period (October 25, 2004 through March 2, 2005) defendants issued press releases and other publicly disseminated information which touted the financial success of Viisage in its 3rd Quarter 2004, wherein it reported its first profitable quarter in three years. As alleged in the Complaint, this profit was illusory and concocted by defendants to make Viisage appear successful so it could obtain improved commercial financing, and permit its controlling shareholder, Lau Acquisition Corp. ("Lau") which had been forced during 2003 to make loans totaling approximately $5 million to keep Viisage afloat, to be able to cease functioning as lender of last resort. Lau is controlled by the family of defendant Denis Berube ("Berube"), the Chairman of the Company's Board of Directors.

On February 7, 2005, Viisage stunned investors by reporting that in its fourth quarter 2004, it had returned to serious unprofitability.  On March 2, 2005, Viisage announced more bad news.  Its loss for the fourth quarter of 2004, was an astounding $5.2 million.  As a result of these admissions, the price of Viisage shares declined from $7.27 on February 8, 2005, to $4.50 on March 3, 3005.  Viisage stock has not recovered and closed at $3.35 on May 4, 2005.

Presently before this Court are a number of related class actions brought by persons who purchased Viisage common stock and who seek damages for fraud under the federal securities laws.  Under the Private Securities Litigation Reform Act ("PSLRA"), enacted by Congress in 1995, one or more of the class members who have timely filed a motion must be approved by this Court as "lead plaintiffs," who will guide this litigation as it goes forward.[1]  The PSLRA has specific lead plaintiff provisions which are designed to ensure that the lead plaintiffs are not simply those who got to the courthouse first, but rather those who will best represent the Class.  Toward this end, Congress has created a presumption that the movant with the largest financial interest in obtaining a recovery would be the most adequate lead plaintiff.  This test sensibly puts the control of the litigation into the hands of a person such as the instant Movant, who has a devastating personal losses as a result of defendants' fraud.  His losses are very significant.  Mr. Cohutt alone suffered losses of $120,400 due to defendants' fraud.

In the present case, Movant is among the most highly motivated plaintiffs imaginable.  Movant has suffered losses which are very significant to him and we believe that his losses are the largest of any of the shareholders who have come forward to lead this case. The appointment of Mr. Cohutt as Lead Plaintiff plainly furthers the goals of the PSLRA.

In sum, Mr. Cohutt, who is along term investor and not a day trader or an in and out trader, would provide highly vigorous representation, and he has every incentive to work with

---

[1] Under the PSLRA, any class member may file a motion for appointment as lead plaintiff; it is unnecessary for that class member to have previously filed a complaint in this or any other court. *In re Royal Ahold Secs. & ERISA Lit.,* 219 F.R.D. 343, 349 (D. Md. 2004); *Skwortz v. Crayfish Co.*, 2001 U.S. Dist. LEXIS 15532, at *17 (S.D.N.Y. Sept. 28, 2001) (movant must either "file a complaint or [make] a motion in response to a notice...").

counsel to obtain the largest possible recovery.

## FACTUAL BACKGROUND

Viisage specializes in providing state governments and others with secure means for issuing drivers' licenses, authenticating documents, and preventing identity theft.

For many years, Viisage has not been able to run its business profitably.  After a  loss of $17.7 million in 2003, the Company found itself in dire financial straits in the first half of 2004. Its credit line with Commerce Bank had proved inadequate to its needs, and controlling shareholder Lau had been forced during 2003 to bail out Viisage by making loans totaling approximately $5 million pursuant to a $7 million credit facility entered into between Lau and Viisage in May 2003. The individual defendants knew that Viisage's liquidity problems would be eased, and Lau relieved of its  uncomfortable role as lender of last resort to a struggling enterprise, if Viisage could obtain a large and flexible credit line from a reputable bank.  To do this, Viisage would have to present itself as a Company that was not constantly teetering on the edge of business failure, but rather as one which had turned the corner to profitability.  The defendants thus hatched a scheme to create an artificial profit in the third quarter of 2004, which ended on September 26, 2004.  Such a profit would allow Viisage to accomplish its crucial goal of replacing its old inadequate credit line with a newer, more generous credit line.

On October 26, 2004, the beginning of the Class Period, Viisage reported a net  profit for the third quarter of 2004, its first corporate profit in three years.  Turning the corner to apparent profitability allowed Viisage to obtain and announce a new $25 million credit line, as to which defendant Aulet, the CFO, boasted: "This new arrangement will not only give us valuable flexibility but will also reduce our rates of borrowing, significantly simplify our covenants, and increase yields on our money in the bank…."  Viisage also announced that it was increasing its projections for EBITDA to $11.5 to $12.5 million for the 2004 year.  (EBITDA is a key financial measure signifying earnings before deducting interest, taxes, depreciation and amortization).

Unbeknownst to shareholders, this third quarter profit had been artificially engineered by

3

improperly recognizing corporate benefits, and deferring recognition of corporate expenses from the third quarter into the fourth quarter. The artificially rosy third quarter report was followed almost immediately by unusual and suspicious selling by insiders, including Lau.

On February 7, 2005 Viisage stunned investors by reporting that in its fourth quarter it had returned to serious unprofitability. It reported unusual and disproportionate fourth quarter charges, many of which had plainly been improperly deferred from the third quarter or earlier periods. One such charge, in the amount of $2 million, related to a settlement payment in a case in which Viisage had been accused of misconduct in the procurement of a contract with the State of Georgia. During the third quarter of 2004, Georgia had been enjoined from making this payment, and in the fourth quarter the payment was adjudged unlawful due to fraud by Viisage. This prospective payment, given the circumstances, should have the subject of a reserve against earnings by the beginning of the Class Period, and should have been deemed impaired no later than December 27, 2004, the date of the final court ruling. Nonetheless, Viisage remained silent regarding the financial impact of this matter until Feb. 7, 2005. Other peculiar fourth quarter charges include large write-offs for legal fees, and SEC compliance costs. Due to these events, Viisage said EBITDA for 2004 would be $8-9 million, not the $11.5-12.5 million previously forecast, and that its loss for the year would be $7-8 million. On this news, Viisage stock dropped 20 percent on extraordinary trading volume of 4.6 million shares.

On March 2, 2005, Viisage announced more bad news. Its loss for the fourth quarter of 2004 was an astounding $5.2 million. In addition, Viisage stunned investors with the following announcement:

> In connection with the preparation of the Company's consolidated financial statements for the year ended December 31, 2004, the Company determined that it had an internal control deficiency that constitutes a "material weakness" as defined by the Public Company Accounting Oversight Board's Accounting Standard No. 2. The Company has concluded that it had insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters**.** As a result, management will be unable to conclude that the Company's internal

4

> controls over financial reporting are effective as of December 31, 2004. Therefore, BDO Seidman LLP, the Company's external accounting firm, will issue an adverse opinion with respect to the effectiveness of the Company's internal controls over financial reporting. In addition, as part of the Sarbanes-Oxley Section 404 compliance review, the Company is in the process of reviewing all of its other key internal control processes as well. While the evaluation is ongoing, management believes that it will likely conclude that the Company had significant deficiencies, which could constitute a material weakness, in the control processes around information technology systems as well.

In reaction to this news, Viisage stock dropped another 20 percent, on trading volume of 1.6 million shares. Viisage shares have continued to decline, and are currently trading at $3.35 per share.

## ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Various related actions have been filed in this District (the "Related Actions"). Those actions are:

*Ernesto Darquea v. Viisage Technology Inc. et al.*, 05-10438 MLW;

*Broder v. Viisage Technology Inc. et al*,. 05-10475 MLW;

*Flynn v. Viisage Technology Inc. et al.*, 05-10498 MLW;

*Chang v. Viisage Technology Inc. et al.,* 05-10537 MLW;

*Martin v. Viisage Technology Inc. et al.*, 05-10577 MLW;

*Clark v. Viisage Technology Inc. et al.,* 05-10478 MLW;

*Luo v. Viisage Technology Inc. et al.*, 05-10615 MLW; and

*Turnberry Asset Mgt. v. Viisage Technology Inc. et al.*, 05-10725 MLW.

The Related Actions each assert claims on behalf of the purchasers of Viisage stock for alleged violations of the Securities and Exchange Act of 1934. The Related Actions name as defendants Viisage and its top officers and directors, and involve essentially similar factual and legal issues. They are each brought by investors who assert that they purchased Viisage stock in reliance on the integrity of the market in Viisage stock, and were injured by a fraud perpetrated

though the issuance of materially false and misleading statements involving the same course of conduct described herein. Consolidation is appropriate with respect to actions involving common questions of law or fact. Fed.R.Civ.P. 42(a). See *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (3d Cir.); cert. *denied,* 498 U.S. 920 (1990). That test is met here and, accordingly, the Related Actions should be consolidated.

        **B.**    **MOVANT WALTER COHUTT SHOULD BE APPOINTED LEAD PLAINTIFF**

              **1**.    **The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). The plaintiff in the action entitled *Danquea v. Viisage Technology, Inc.,* 05-10438 WML filed in the District of Massachusetts on March 8, 2005, caused notice to be published on the *Business Wire* on March 8, 2005. *(See* Paskowitz Declaration, Exhibit B.) Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A) and (B).[2]

---

[2]     The *Business Wire* has consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business oriented publication or wire services." *Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 62-64 (D Mass 1996); *Lax* v. *First Merchants Acceptance Corp.,* No. 9702715,1997 U.S. Dist. LEXIS 11866, at*2 (ND. Ill. Aug. 6,1997).

Second, the PSLRA provides that within 90 days after the publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa)    has either field the complaint or made a motion in response to a notice..
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C §78u-4(a)(3)(B)(iii). *See Linn v. Allied Ir. Banks*, PLC, 2004 U.S. Dist. LEXIS 24655, at *11 (S.D.N.Y. Dec. 8, 2004).

### 2. Movant Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### (i) Movant Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S C. §78u-4(a)(3)(A) and (B), expires on May 9, 2005. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice published on March 8, 2005, Movant has timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movant has signed and filed a certification stating that he has reviewed the allegations of the Complaint and is willing to serve as a representative party on behalf of the class. *See*

7


Paskowitz Declaration, Exhibit C. In addition, Movant has selected and retained competent counsel to represent him and the class. *See* Paskowitz Declaration, Exhibit A. Accordingly, Movant satisfies the requirements of 15 U.S.C. §78u-4(a)(3)(B). Movant Walter Cohutt should be appointed Lead Plaintiff.

### (ii) The Movant Has the Requisite Financial Interest in the Relief Sought by the Class

Movant, as evidenced by his accompanying signed certification lost substantial sums through investing in Viisage stock. Mr. Cohutt lost $120,400 [3] as a result of the fraud. To Movant's knowledge, no other Movant was so seriously harmed. Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action.

### (iii) Movant Otherwise Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must also "otherwise [satisfy] the

---

[3] The PSLRA provides no guidance as to how the largest financial interest should be calculated. Many courts use a four factor analysis to make that determination. *See In re Cable & Wireless, Plc., Securities Litigation*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003); *The Goodyear Tire and Rubber Securities Litigation*, 2004 U.S. Dist. LEXIS 27043 at *16 (N.D. Ohio May 12, 2004); *In re Cardinal Health Securities Litigation*, 226 F.R.D. 298, 2005 U.S. Dist. LEXIS 1431 at *14 (S.D. Ohio 2005). The four factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered during the class period.
    Employing the four factor analysis, Mr. Cohutt purchased 40,000 shares during the class period at a cost of $259,200. Since no shares were sold during the class period, the number of his net purchased shares is 40,000. Net funds expended are $259,200. Mr. Cohutt's losses were calculated by subtracting the cost of the net purchases during the class period from the product of the number of shares times the PSLRA cap price calculated pursuant to 15 U.S.C. 78u-4(e)(1). (Since the 90 day period from the revelation of the fraud has not concluded, the average was run though May 4, 2005. The PSLRA cap price was calculated at $3.47.)
    Of course, this analysis is for the purpose of complying with 15 U.S.C. 78u-4, and is not an ultimate determination of damages in this action. *Goodyear Tire*, at *17 ("The Court separately addresses each Movant's financial interest in light of these factors, subject to the caveat that this discussion is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.")

requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy —directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Bassin v. Decode Genetics, Inc.,* 2005 U.S. Dist. 51, at *9 (S.D.N.Y. Jan. 4, 2005); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319,323-24 (S.D.N.Y 2004). Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representative and the class members because it is the generalized nature of the claims asserted which determines whether the class representative is typical. *See Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D. Mass. 1998) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between

9

their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).

The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See, In re Great Southern Life Ins. Co. Sales Practices Litig.,* 192 F.R.D. 212, 217 (N.D.Tex. 2000) (citing *Joint Legislative Comm. On Performance & Expenditure Review,* 637 F.2d 1014,1024 (5th Cir. 1981))

Movant satisfies this requirement because, just like all other class members, he:

   1.   purchased Viisage shares during the Class Period;

   2.   in reliance upon the allegedly material false and misleading statements issued by defendants; and

   3.   suffered damages thereby. Thus, Movant's claims are typical of those other class members since their claims and the claims of the other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of movant to represent the class to the existence of any conflicts between the interests of movant and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Modell v. Eliot Say. Bank,* 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985)).

Here Movant is an adequate representative of the class. As evidenced by the injury suffered by Movant, who purchased Viisage common stock at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Movant are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the class. Further, Movant has taken significant steps which demonstrate that he will protect the interest of the class; he has moved to be Lead Plaintiff and has retained competent and experienced counsel to prosecute these claims. In addition, as shown in the accompanying Declaration of Laurence D. Paskowitz and the Exhibit A thereto, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. MOVANT'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. Movant has selected Paskowitz & Associates as Lead Counsel, and Shapiro Haber & Urmy as Liaison Counsel. As shown in the accompanying Declaration of Laurence D. Paskowitz and the Exhibit A thereto, and the Declaration of Theodore M. Hess-Mahan and the Exhibit A thereto, Movant has selected counsel that are highly qualified, experienced and able to conduct this complex litigation in a professional manner.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court (i) consolidated all related cases; (ii) appoint Movant as Lead Plaintiff in the consolidated actions; (iii) approve Movant's selection of Paskowitz & Associates as lead counsel and Shapiro Haber & Urmy LLP as Liaison Counsel; and (iv) grant such other and further relief as the court may deem just and proper.

Dated: May 9, 2005

**SHAPIRO HABER & URMY LLP**

**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro (BBO#454680)
Theodore M. Hess-Mahan (BBO#57109)
53 State Street
Boston, MA 02109
617-439-3939

Attorneys For Movant Walter D. Cohutt

**OF COUNSEL:**

**PASKOWITZ &ASSOCIATES**
Laurence D. Paskowitz
60 East 42nd Street   46th Floor
New York, New York 10165
Telephone: (212) 685-0969
Facsimile: (212) 685-2306

**ROY L. JACOBS**
60 East 42nd Street
46th Floor
New York, NY 10165
(212) 867-1156
(212) 504-8343 (Fax)