UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re VIISAGE TECHNOLOGY, INC.
SECURITIES LITIGATION

Civil Action No. 05-cv-10438-MLW

This Pleading Applies to: All Actions

LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ON
THE MISREPRESENTATIONS AND OMISSIONS ALLEGED IN
THE CONSOLIDATED AMENDED CLASS ACTION
COMPLAINT CONCERNING THE GEORGIA LITIGATION

Jeffrey C. Block, Esq. (BBO# 6007470)
Leslie R. Stern, Esq. (BBO# 631201)
**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

*Liaison Counsel for Lead Plaintiffs*

Jeffrey A. Klafter, Esq., *pro hac vice*
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C. 20036
(202) 261-3553

Stephen D. Oestreich, Esq.
Robert Cappucci, Esq.
William W. Wickersham, Esq.
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

*Lead Counsel for Lead Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

DOCUMENTS THAT MAY BE CONSIDERED BY THE COURT ............................... 1

VIISAGE'S LITIGATION DISCLOSURES CONCERNING THE GEORGIA
LITIGATION DID NOT COMPLY WITH ITEM 103 ....................................................... 2

VIISAGE HAD AN INDEPENDENT DUTY TO DISCLOSE THE TRUTH ABOUT
THE GEORGIA LITIGATION GIVEN ITS AFFIMATIVE STATEMENTS .................. 8

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Beddall v. State Street Bank and Trust Co.*,
   137 F.3d 12 (1st Cir. 1998) ................................................................................ 1

*E.I. Dupont DeNemours & Co., Inc. v. Cullen*,
   791 F.2d 5 (1st Cir. 1986) .................................................................................. 2

*In re SeaChange Intl., Inc. Sec. Litig.*,
   No. 02-12116-DPW, 2004 U.S. Dist LEXIS 1687 (D. Mass. Feb. 6, 2004) ..... 5, 7, 8, 9

*Roeder v. Alpha Indus., Inc.*,
   814 F.2d 22 (1st Cir. 1987) ................................................................................ 9

*Rosenbaum Capital L.L.C. v. Boston Communications Group, Inc.*,
   445 F. Supp. 2d 170 (D. Mass. 2006) ................................................................ 5

*U.S. v. Yeaman*,
   987 F. Supp. 373 (E.D. Pa. 1997) ...................................................................... 9

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) .................................................................................. 2

**Statutes**

17 C.F.R. § 229.103 ................................................................................................ 2

## PRELIMINARY STATEMENT

Lead Plaintiffs respectfully submit this supplemental memorandum pursuant to the Court's Order, filed February 6, 2007. As demonstrated below, the disclosures of Viisage Technology, Inc. ("Viisage") concerning Digimarc ID Systems' ("Digimarc") action against the Georgia Technology Department ("GTA"), the Georgia Department of Motor Vehicle Safety ("DMVS") and Viisage (the "Georgia litigation") did not comply with Item 103 of Regulation S-K. Moreover, the alleged misrepresentations and omissions are actionable as the defendants made materially false statements and also omitted material facts necessary to make the statements made not misleading. For these reasons, as described in detail below, defendants' motion to dismiss Lead Plaintiffs' allegations concerning the Georgia litigation should be denied.

## DOCUMENTS THAT MAY BE CONSIDERED BY THE COURT

Pursuant to the Court's Order, filed February 6, 2007, Lead Plaintiffs are filing herewith a Compendium of Exhibits ("Compendium"), which contains, in chronological order, complete pleadings from the Georgia litigation and public disclosures by Viisage on which the plaintiffs' claims concerning the Georgia litigation are based.[1] These documents may be properly considered by the Court in deciding the pending motion to dismiss because, with the exception of one document, they are expressly referred to in Lead Plaintiffs' Consolidated Amended Class Action Complaint, filed February 27, 2006 (the "Complaint"). *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) ("when . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged),

---

[1] Lead Plaintiffs are also filing herewith "Excerpts From and References To" their Compendium (which consists of two volumes) for the convenience of the Court.

that document effectively merges into the pleadings, and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *Watterson v. Page*, 987 F.2d 1, 2 (1st Cir. 1993) (a district court may consider on a motion to dismiss "documents sufficiently referred to in the complaint."). The remaining document, Exhibit No. 1 to the Compendium, consists of Georgia's motion, dated October 1, 2003, to add Viisage as a party to the Georgia litigation. Lead Plaintiffs submit that this document may also be properly considered by the Court at this time because it is a pleading from a related proceeding that is integral to the Complaint.[2] *See Watterson v. Page*, 987 F.2d at 2 (a district court may also consider documents "central to plaintiffs' claim"); *E.I. Dupont DeNemours & Co., Inc. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986) (examining complaint in related state court proceeding that was central to the federal claim).

### VIISAGE'S LITIGATION DISCLOSURES CONCERNING THE GEORGIA LITIGATION DID NOT COMPLY WITH ITEM 103

Item 103 of Regulation S-K, which governs "Legal Proceedings," requires a public company to:

> Describe briefly any material pending legal proceeding, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, **the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought**.

17 C.F.R. § 229.103 (emphasis added). In Viisage's SEC filings subject to Item 103 during the Class Period, defendants failed to comply with Item 103 in three respects: (i) they failed to disclose that Viisage was a "principal party" to the Georgia litigation; (ii) they failed to provide a complete and accurate "description of the factual basis alleged to

---

[2] The order to which the motion relates is referred to in the Complaint, ¶43; Compendium, Exhibit 2.

underlie the proceedings;" and (iii) they failed to disclose that specific relief was sought against Viisage.

Specifically, in each of Viisage's 10-Qs and Registration Statements issued during the Class Period, defendants never disclosed that Viisage was a defendant in the Georgia litigation, and even went so far during its July 22, 2004 Conference Call with Analysts *to deny* that Viisage was a party to that action. *See* Compendium, Exhibits 5, 7, 11, 12-14, and 23. It is indisputable that Viisage became a defendant on November 12, 2003 with the filing of Digimarc's Amended Complaint. *See* Compendium, Exhibit 3. Further, as made clear by the defendants DMVS and GTA (collectively, "Georgia") in moving to add Viisage to the action, Viisage was not in any way viewed as a tangential party. Georgia stated: "In a challenge to a competitively procured government contract such as this, the successful vendor's [Viisage's] unique relationship to the controversy compels a finding that it is not only a necessary but also *an indispensable party* to the action. . . ." Compendium, Exhibit 1 at 3-4 (emphasis added).

With respect to the SEC's mandate that a public company describe the "factual basis alleged to underlie the proceeding and the relief sought," Viisage's 10-Qs and Registration Statements merely stated that the "lawsuit filed in March 2003 by one of our competitors" alleges that "the Department of Motor Vehicle Safety did not comply with its own bid process when it selected a vendor for its digital drivers' license program." Viisage provided no disclosure that Digimarc had alleged that Viisage engaged in improper conduct in the bid process and that Digimarc sought relief against it as well as Georgia. Complaint, ¶¶109(a); 126(a); Compendium, Exhibits 5, 7, 12-14, 23. However, in seeking to add Viisage as a "necessary party defendant" in October 2003, Georgia

- 3 -

made it quite clear in its motion that the Georgia litigation also concerned Viisage's misconduct in the bid process. Specifically, Georgia stated in that motion that: "Plaintiff alleges that specific actions taken by Viisage were improper." After describing Digimarc's contentions at the time, Georgia also went on to state that "Viisage has an interest in protecting its business reputation against any implication that it acted improperly, which is not the primary concern of the GTA and DMVS. Therefore Viisage's interests cannot be represented without its presence in the litigation." Compendium, Exhibit 1 at 6.

Digimarc's Amended Complaint, filed on November 12, 2003, specifically included allegations of wrongdoing against Viisage and sought preliminary and permanent injunctive relief against Viisage Compendium, Exhibit 3. As the Digimarc action progressed, the allegations of Viisage's wrongdoing became more detailed. *See* Digimarc's April 20, 2004 Brief in Support of Plaintiff's Motion to Compel Production of Documents from Viisage Technology, Inc., Compendium, Exhibit 4 at 9 n.6 ("Digimarc has uncovered . . . indisputable evidence that Viisage made material misrepresentations of fact to the State during the evaluation process with regard to the permanent driver's license and identification card it was proposing, and DMVS and GTA awarded the contract to Viisage under the false impression that Viisage knew how to produce the permanent card sample type that DMVS selected."); Digimarc's August 23, 2004 Second Amended Complaint, Compendium, Exhibit 16 at 4, 17, 24, 27-29, and 31-41 (charging Viisage with "fraudulently" providing sample cards when it had no authority to provide them and no knowledge as to how they were manufactured and with providing other false and misleading information to Georgia as part of its bid); and

Digimarc's October 20, 2004 Brief in Opposition to Motion for Summary Judgment by Viisage Technology, Inc., Compendium, Exhibit 19 at 18-35 (detailing evidentiary support for Digimarc's claims of Viisage wrongdoing).[3] Nevertheless, Viisage's SEC filings continued to falsely describe the factual basis alleged to underlie the proceeding and the relief sought, even in its 10-Q filed November 10, 2004. *See* Complaint, ¶81; Compendium, Exhibit 23 at 11, 24, 31.

While Lead Plaintiffs are unaware of any relevant SEC guidance on the issues presented here, the Court's decisions in *In re SeaChange Intl., Inc. Sec. Litig.*, No. 02-12116-DPW, 2004 U.S. Dist LEXIS 1687 (D. Mass. Feb. 6, 2004) (*"SeaChange"*), and *Rosenbaum Capital L.L.C. v. Boston Communications Group, Inc.*, 445 F. Supp. 2d 170 (D. Mass. 2006) (Young, J.) (*"Boston Communications"*), a subsequent decision bearing on the issues here, as well as Viisage's own SEC disclosures concerning another case in which it was a named defendant, the Fargo Electronics litigation, demonstrate that Viisage did not comply with Item 103 regarding the Georgia litigation.

Specifically, in *SeaChange*, the litigation disclosure that Judge Woodlock found sufficient contained far more disclosure than Viisage's Georgia litigation disclosure at issue here. The full portion of the relevant legal disclosure in the January 2002 Prospectus partially quoted by the *SeaChange* Court at *23 is as follows:[4]

---

[3] Defendants have attempted to make much of the denials of wrongdoing by Viisage and Georgia during the Georgia litigation. These denials are irrelevant as Lead Plaintiffs do not contend that defendants should have predicted the outcome of the litigation. Now that a final Judgment confirming Viisage's deceptive conduct has been entered, however, Viisage is collaterally estopped from such denials. *See* Compendium, Exhibit 24 and Lead Plaintiffs' Corrected Memorandum in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed May 22, 2006, at 20.

[4] The Court may take judicial notice of the full portion of the disclosure before the Court in *SeaChange*, which was attached to the Appendix in Support of the SeaChange Defendants' Motion to Dismiss the Consolidated Amended Complaint, filed in this Court on July 18, 2003, Document 39. *See Watterson v.*

> Legal Proceedings
>
> On January 8, 2001, nCube Corp. filed a complaint against us in the United States District Court for the District of Delaware alleging that our use of our MediaCluster, MediaExpress and Media Server technology each infringe a patent held by nCube (Patent No. 5,805,804). In instituting the claim, nCube has sought both an injunction and monetary damages in an unspecified amount. We responded on January 26, 2001, denying the claim of infringement. We also asserted a counterclaim seeking a declaration from the District Court that U.S. Patent No. 5,805,804 is invalid and not infringed. Currently, discovery on this claim is scheduled to be completed in December 2001, following which will be a claim construction hearing.
>
> We cannot be certain of the outcome of the foregoing litigation, but do plan to oppose allegations against us and assert our claims against other parties vigorously. In addition, as these claims are subject to additional discovery and certain claims for damages are as yet unspecified, we are unable to estimate the impact to our business, financial condition and results of operations or cash flows.

Thus, unlike Viisage, SeaChange disclosed that a complaint was brought against it; described its own alleged misconduct that was at issue in the lawsuit; stated that both monetary and injunctive relief had been sought against it; and that it was defending itself.

Similarly, in *Boston Communications*, the disclosure before the Court was as follows:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The trial began on February 28, 2005 and is expected to be completed in mid May 2005. In 2005, Verizon Wireless, who was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. We

---

*Page*, 987 F.2d at 4 ("court may properly look beyond the complaint to matters of public record" in deciding a motion to dismiss.").

were not part of the settlement discussions and the terms of the settlement
are not public. We do not believe that we infringe these patents and
believe that the patents are invalid in light of prior art and other reasons.

Boston Communications Form 10-K filed March 16, 2005.[5]

As in *SeaChange*, this legal disclosure stands in stark contrast to that of Viisage in that, unlike Viisage's Item 103 disclosure, Boston Communication disclosed that the suit was filed against it; that it was charged with infringing two patents; and that the action sought damages and injunctive relief from the company. The only issue in *Boston Communications* concerned the last sentence in the disclosure above -- relating to Boston Communications' belief that it didn't infringe on the plaintiff's patents -- which the Court found sufficient to give rise to a duty to disclose the steps Boston Communications was alleged to have taken to hide its willful infringement. *See* 445 F. Supp.2d at 173, 176.

Lastly, Viisage's own disclosure concerning the Fargo Electronics, Inc. suit that was filed on July 19, 2004 also demonstrates the inadequacy of Viisage's Georgia litigation disclosure. *See* Viisage Form 10-Q filed November 10, 2004, Compendium, Exhibit 23 at 11. Unlike its disclosure concerning the Georgia litigation, Viisage disclosed that it was a defendant; described the specific nature of the infringement charged in the lawsuit; and that the plaintiff sought compensatory and injunctive relief against it as well as treble damages because Viisage was charged with "willful infringement." It is also noteworthy that Viisage disclosed that it intended to "vigorously defend" against Fargo Electronics' charges, while in the case of the Georgia litigation, it did not even acknowledge it was a defendant or that it was charged with any wrongdoing,

---

[5] The Court may also take judicial notice of the full relevant text from this Boston Communication SEC filing, which was attached to the Affidavit of Peter C. Harrar, filed October 4, 2006 in this Court, Document 37-1. *See* note 4, *supra*.

as to do so could have jeopardized ongoing bids for other public contracts. *See* Complaint, ¶¶5, 77. None of Viisage's public disclosures at issue here alerted investors to these material facts.

### VIISAGE HAD AN INDEPENDENT DUTY TO DISCLOSE THE TRUTH ABOUT THE GEORGIA LITIGATION GIVEN ITS AFFIMATIVE STATEMENTS

Viisage made actionable statements giving rise to a duty to disclose that Digimarc had named Viisage as a defendant in its lawsuit, that Viisage was charged with making materially false and misleading statements to obtain the Georgia contract and that Digimarc sought injunctive relief against Viisage as well as Georgia.[6] *SeaChange* is not to the contrary. There, as noted above, SeaChange's litigation disclosure was justifiably found by Judge Woodlock to comply with Item 103. 2004 U.S. Dist. LEXIS 1687 at *31. As discussed above, the same cannot be said as to Viisage's Georgia litigation disclosures.

Furthermore, the claim before the Court in *SeaChange* was that SeaChange should have predicted the outcome of the patent litigation. *Id.* at *27. In the first instance, that is *not* the claim at issue in the case at bar; plaintiffs do not contend that Viisage should have predicted the outcome of the Georgia litigation or that it should have disclosed that it would likely lose. Rather, Lead Plaintiffs contend that Viisage concealed its status as a defendant and the allegations of improper conduct alleged against it by Digimarc to avoid jeopardizing Viisage's ongoing attempts to secure other publicly bid drivers' license contracts.

---

[6] As set forth in the Complaint, and summarized below, Lead Plaintiffs allege additional statements by Viisage giving rise to a duty to disclose further facts concerning the Georgia litigation. *See* Complaint, ¶¶ 109(a) – (c); 126(b) – (f).

- 8 -

Second, it was only after reaching the conclusion that the specific statements made by SeaChange did not give rise to a duty to disclose that Judge Woodlock turned to the plaintiffs' argument that SeaChange had an "obligation to disclose the fact that it was likely to lose the litigation" "even if none of the statements in the Prospectus describing the nCUBE litigation were materially false or misleading." *Id.* at \*27-29. Thus, the *SeaChange* Court did not immunize a public company from liability where it makes false or misleading statements giving rise to a duty -- separate and apart from Item 103 -- to disclose allegedly true facts regarding the litigation at issue.

This conclusion is confirmed by Judge Young's recent decision in *Boston Communications*, in which the Court denied a motion to dismiss a claim that the defendant had made a false and misleading statement regarding pending litigation. Specifically, as noted above, in addition to fully disclosing the pending patent litigation against it, Boston Communications represented that it "does not believe that it infringes these patents and believes it has meritorious defenses to the action." 445 F. Supp.2d at 173. Noting that the case had both similarities and differences from *SeaChange*, Judge Young held that the distinguishing factor was that Boston Communications, unlike SeaChange, made a false and misleading statement, giving rise to a duty to disclose. *Id.* at 174 ("SeaChange, however, had not made any representations suggesting it would win and thus was not inaccurate."). Relying on *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987), the Court held that Boston Communications had a duty to make a full and complete disclosure concerning the litigation given its affirmative misstatements that it did not infringe the patents and that it had meritorious defenses. 445 F. Supp.2d at 175-76. *See also U.S. v. Yeaman*, 987 F. Supp. 373, 382-83 (E.D. Pa. 1997) ("it is irrelevant

that Regulation S-K and Item 103 may have not required disclosure of this proceeding. Yeaman had a specific duty to disclose such further additional information to make his previous disclosures not misleading.").

The same is also true here in light of defendants' many misleading statements that gave rise to a duty to disclose the alleged omitted facts, including the following:

- The misrepresentations in Viisage's 10-Qs, Registration Statements and the Prospectuses filed with the SEC during the Class Period, each of which only stated that the litigation alleged "that the DMVS did not comply with its own bid process when it selected a vendor for its digital drivers' license program." ¶¶109(a); 126(a).

- The misrepresentations by CEO Bailey during the July 22, 2004 Conference Call with analysts that "Viisage was never a party to this lawsuit . . . nor were any allegations of impropriety ever lodged against our company." ¶136(d);

- The misleading statements in Viisage's July 21, 2004 Press Release, July 22, 2004 Amended Registration Statement, August 4, 2004 Prospectus, August 11, 2004 10-Q, and November 10, 2004 10-Q that the $2.5 million settlement with Georgia was entered into to benefit the citizens of Georgia and for "convenience," when it was motivated by Viisage's strong interest in stopping Digimarc from obtaining the full discovery that the Georgia Court had ordered Viisage to provide on June 3, 2004 – discovery that directly related to the misrepresentation alleged by Digimarc to have been perpetrated by Viisage. ¶¶109(b); 126(b) & (c); Compendium, Exhibits 9, 12 – 14, 23.[7]

- The misleading statements in Visage's July 22, 2004 Amended Registration Statement, August 4, 2004 Prospectus, August 11, 2004 10-Q, that the "DMVS has filed a motion with the Georgia court to dismiss the case based upon termination of the contract" that gave rise to a duty to disclose that Viisage too had made a motion to dismiss. ¶126(b); Compendium, Exhibits 12 - 14.[8]

- The reiteration of the foregoing misleading representation in Viisage's November 10, 2004 10-Q when Georgia's motion to dismiss, as well as Viisage's, had been

---

[7] As Viisage knew, Digimarc's *second* motion to compel, that was pending at the time Viisage initiated the settlement with Georgia, sought an order striking Viisage's answer as well as attorneys' fees due to Digimarc's blatant ignorance of the Georgia Court's June 3, 2004 Order. *See* Compendium, Exhibits 6, 8.

[8] Significantly, with respect to the Fargo Electronics litigation, Bailey forthrightly disclosed that Viisage had filed a motion to dismiss the case. *See* Transcript of October 26, 2004 Conference Call with Analysts, Compendium, Exhibit 22, at 3-4.

denied by order of the Georgia court on September 2, 2004. ¶126(f); *Compare* Compendium, Exhibit 17 *with* Exhibit 23.[9]

No reader of Viisage's public statements concerning the Georgia litigation would have been informed that Viisage was named as a defendant in the Digimarc action, that Digimarc had alleged serious misconduct on the part of Viisage in the bidding process, and/or that Digimarc sought relief against Viisage as well as Georgia. Indeed, defendants' misleading statements conveyed just the opposite impression, particularly defendant Bailey's outright denial that Viisage was a party to the Digimarc action and his statement that Digimarc had not alleged that Viisage had engaged in improper conduct. Accordingly, Lead Plaintiffs have stated actionable claims concerning the Georgia litigation.

---

[9] Lead Plaintiffs also allege that given Viisage's disclosures in the August 4, 2004 Prospectus and August 11, 2004 10-Q that "a competitor" had sought to enjoin the $2.5 million payment, Viisage was obligated to promptly disclose that the payment had been enjoined by Orders entered August 18, 2004 and September 2, 2004. *See* ¶¶68, 69, 71, 74; Compendium, Exhibits 15, 17. Nevertheless, despite making public statements concerning its drivers' license and identity solutions business on October 5, 2004 and October, 21 2004, Viisage failed to disclose that the August 18 Order until, at the earliest, October 25, 2004, and also failed to disclose the September 2 Order, which it referred to as a "preliminary injunction," until November 10 when it filed its 10-Q. *See* ¶126(e); Compendium, Exhibits 18, 20, 21 and 23. Even then, however, Viisage disclosed no facts from which investors could determine the likelihood the settlement would be permanently enjoined. *See* ¶126(b) (Viisage failed to disclose that there was a substantial risk that Viisage was not entitled to the $2.5 million payment because of its own alleged wrongdoing.).

## CONCLUSION

For the foregoing reasons, and those set forth in Lead Plaintiffs' Corrected Memorandum in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed May 22, 2006, defendants' motion to dismiss the claims relating to the Georgia litigation should be denied.

DATED:   February 14, 2007

/s/   Leslie R. Stern
Jeffrey C. Block, Esq. (BBO# 6007470)
Leslie R. Stern, Esq. (BBO# 631201)
BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

*Plaintiffs' Liaison Counsel*

Jeffrey A. Klafter, Esq., *pro hac vice*
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C. 20036
(202) 261-3553

Stephen D. Oestreich, Esq.
Robert Cappucci, Esq.
William W. Wickersham, Esq.
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

*Lead Counsel for Lead Plaintiffs*

Roy L. Jacobs, Esq.
**ROY JACOBS & ASSOCIATES**
60 East 42nd Street
46th Floor
New York, NY 10165
212-867-1156

Laurence D. Paskowitz, Esq.
**PASKOWITZ & ASSOCIATES**
60 East 42nd Street
46th Floor
New York, NY 10165
(212) 685-0969

*Counsel for Additional Plaintiff Walter Cohutt*