UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

**In re VIISAGE TECHNOLOGY, INC.
SECURITIES LITIGATION**

Civil Action No. 05-cv-10438-MLW

---

**This Pleading Applies to: All Actions**

---

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Jeffrey C. Block, Esq.  (BBO# 600747)
Leslie R. Stern, Esq. (BBO# 631201)
**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

*Liaison Counsel for Lead Plaintiffs*

Jeffrey A. Klafter, Esq. (*pro hac vice*)
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C.  20036
(202) 261-3553

Stephen D. Oestreich, Esq.
Robert Cappucci, Esq. (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

*Lead Counsel for Lead Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................... iii

I.    PRELIMINARY STATEMENT ............................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................ 2

III.  ARGUMENT ...................................................................... 5

      A.    THE SETTLEMENT MEETS THE CRITERIA
            NECESSARY FOR THIS COURT TO GRANT
            PRELIMINARY APPROVAL  ............................................ 5

            1.    The Court's Role in the Preliminary Approval
                  of a Class Action Settlement...................................... 5

            2.    Factors To Be Considered In Granting Preliminary
                  Approval ................................................................. 6

                  a.    The Settlement Falls Within the Range of
                        Possible Approval  ....................................... 7

            3.    The Settlement Has No Obvious Deficiencies........... 9

      B.    THE PROPOSED FORM AND METHOD
            OF CLASS NOTICE ARE APPROPRIATE  ....................... 10

            1.    The Contents Of The Settlement Notices ................. 10

            2.    The Notice Procedure Meets the Requirements
                  of Fed. R. Civ. P. 23................................................. 11

      C.    THE COURT SHOULD CERTIFY THE CLASS FOR
            SETTLEMENT PURPOSES .................................................. 13

      D.    THE COURT SHOULD APPOINT LEAD
            COUNSEL AS CLASS COUNSEL ...................................... 19

IV.   LEAD PLAINTIFFS SUPPORT THE
      PROPOSED SETTLEMENT ................................................... 19

CONCLUSION........................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997)................................................................ 17

*Andrews v. Bechtel Power Corp.*,
 780 F.2d 124 (1st Cir. 1985)............................................. 16

*Armstrong v. Board of Sch. Dirs. of the City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980) ............................................. 5

*Dura Pharmaceuticals, Inc. v. Broudo*,
 544 U.S. 336, 342, 125 S. Ct. 1627 (2005)....................................... 9

*Grace* v. *Modell v. Eliot Sav. Bank*,
 139 F.R.D. 17 (D. Mass. 1991) ............................................. 16

*Granada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir. 1992) ............................................. 7

*Guckenberger v. Boston Univ.*,
 957 F. Supp. 306 (D. Mass. 1997)...................................... 15

*In re Fleet/Norstar Sec. Litig.*,
 935 F. Supp. 99 (D.R.I. 1996)............................................. 8

*In re Global Crossing Ltd. Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ....................................... 7

*In re Lupron Marketing & Sales Practices Litig*,
 345 F. Supp. 2d 135 (D. Mass 2004) ................................ 5, 6

*In re Michael Milken & Assocs. Sec. Litig.*,
 150 F.R.D. 46 (S.D.N.Y. 1993) ....................................... 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ........................................ 5

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y.) .................................................. 7

*In re Pharm Indus. Average Wholesale Price Litig.*,
 230 F.R.D. 61 (D. Mass. 2005)............................................ 15

*In Re Polymedica Corp. Securities Litigation,*
    432 F.3d 1(1st Cir. 2005)....................................................................... 17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 2000) ....................................................... 5, 6

*Kirby v. Cullinet Software, Inc.,*
    116 F.R.D. 303 (D. Mass. 1987).......................................................... 15, 17

*McKenna v. First Horizon Home Loan Corp.,*
    429 F.Supp.2d 291 (D. Mass. 2006) .................................................... 13, 14

*McLaughlin v. Liberty Mut. Ins. Co.,*
    224 F.R.D. 304 (D. Mass. 2004)............................................................ 13

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972)................................................................... 7

*Perception Tech. Corp.,*
    128 F.R.D. 165 (D. Mass. 1989) .......................................................... 17

*Priest v. Zayre,*
    118 F.R.D. 552 (D. Mass. 1988)............................................................ 13

*Prudential Sec. Inc. Ltd. P'ships Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................... 8

*Randle v. Spectran,*
    129 F.R.D. 386(D. Mass. 1988)............................................................ 15, 17

*Rodrigues v. Members Mortgage Co., Inc.,*
    226 F.R.D. 147 (D. Mass. 2005)............................................................ 14, 15, 17

*Rolland v. Cellucci,*
    191 F.R.D. 3 (D. Mass. 2000)................................................................ 8

*Smilow v. Southwestern Bell Mobile Sys., Inc.,*
    323 F.3d 32 (1st Cir. 2003)................................................................... 13

*Swack v. Credit Suisse First Boston,*
    230 F.R.D. 250 (D. Mass. 2005)........................................................... *passim*

## STATUTES & RULES

Fed. R. Civ. P. 23(b)(3)................................................................................. 16, 18

Fed. R. Civ. P. 23(e) ................................................................... 1

Fed. R. Civ. P. 23(g)(1)(A) ......................................................... 19

15 U.S.C.A. § 77a ...................................................................... 10

15 U.S.C.A. § 78u-4(a)(7) .......................................................... 11

## UNREPORTED DECISIONS

*In re Automotive Refinishing Paint Antitrust Litig.,*
    2003 U.S. Dist. LEXIS 4681 (E.D. Pa. Mar. 17, 2003)....................... 6

*In re Transkaryotic Therapies, Inc. Sec. Litig.,*
    2005 WL 3178162 (D. Mass. Nov. 28, 2005) ................................... *passim*

## OTHER

3B J. Moore, *Moore's Federal Practice*
    ¶ 23.85[4], at Vol. 5, Chap. 23 (3d ed. 2002) ...................................... 6

I.                           **PRELIMINARY STATEMENT**

By Stipulation of Settlement dated July 19, 2007, the parties have agreed, subject to Court approval, to settle this class action (the "Action") for the sum of $2.3 million in cash plus interest.[1]  Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock and Lance Hancock respectfully submit this memorandum in support of their motion, pursuant to Fed. R. Civ. P. 23(e), for preliminarily approval of the proposed settlement (the "Settlement").  By preliminarily approving the Settlement, the Court will permit class members to consider the merits of the Settlement, while reserving final judgment on whether to finally approve the parties' compromise until the Court holds the "Fairness Hearing" contemplated by the Preliminary Approval Order attached as Exhibit A to the accompanying Stipulation of Settlement and also submitted separately for the Court's convenience.

To facilitate final approval of the Settlement, the Preliminary Approval Order also provides for: (1) certification of the class on whose behalf this Action was brought, solely for purposes of the Settlement (the "Class")[2]; (2) notice to the Class by first-class mail and publication of the Settlement and their rights thereto, including their right to opt-out of the Class or object to the Settlement.  Entry of the Preliminary Approval Order will not constrain the scope of the Court's review of the proposed Settlement at the Fairness Hearing.

Given the Court's rulings on Defendants' motion to dismiss and the significant risks of establishing liability and damages on the surviving claims, Lead Plaintiffs submit that the

---

[1]       A copy of the Stipulation of Settlement is attached as Exhibit 1 to the Declaration of Jeffrey A. Klafter, filed herewith ("Klafter Decl.").

[2]       The Class is defined in the Settlement Stipulation as: all Persons who purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive.  Excluded from the Class are:  (i) the Defendants herein, the directors, officers and employees of Viisage, the members of each Individual Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submit valid and timely requests for exclusion from the Class pursuant to the

Settlement provides an excellent benefit that falls well within a range of reasonableness and fully meets the criteria for preliminary, as well as final, approval.

II.                    **FACTUAL AND PROCEDURAL BACKGROUND**

On March 8, 2005 the first of eight class action complaints were filed in this District against the Defendants. Thereafter, competing Motions for the appointment of Lead Plaintiff were made, and on January 19, 2006, the Court entered an Order appointing Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock and Lance Hancock as Lead Plaintiffs and the law firms of Klafter & Olsen LLP and Entwistle & Cappucci LLP as Co-Lead Counsel.

Thereafter, on February 27, 2006, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint ("Complaint") against Defendants Viisage Technology, Inc. (now known as L-1 Identity Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G. Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter Nessen. The Complaint asserts four violations of the federal securities laws predicated on two groups of misrepresentations. First, Lead Plaintiffs alleged that Defendants disseminated material false and misleading information concerning the nature of litigation in which Viisage was involved over the issuance of a contract to Viisage to provide secure drivers' licenses to the Georgia Department of Motor Vehicle Safety (the "Georgia Litigation Disclosures"). Secondly, Lead Plaintiffs alleged that the Defendants made false statements concerning the adequacy of Viisage's internal disclosure and financial controls. (the "Internal Control Disclosures"). Based on these misrepresentations and omissions, the Complaint asserts a claim pursuant to the Securities Act of 1933 (the "Securities Act"), based on Georgia Litigation

_____

instructions set forth in the Notice of Pendency and Proposed Settlement, Application For Attorneys' Fees And

Disclosures and Internal Control Disclosures in Viisage's Registration Statement for its secondary share offering on August 4, 2004, and a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") concerning the same disclosures in the Registration Statement as well as additional related disclosures in other Viisage SEC filings, Viisage Press Releases and conference calls Viisage held with security analysts. The Complaint also asserts claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act for control person liability predicated on these alleged primary violations.

On April 3, 2006, the Defendants moved to dismiss the Complaint. Lead Plaintiffs opposed the Defendants' motion. On February 1, 2007, the Court held oral argument on the motion and following extensive oral argument, denied the motion to dismiss Lead Plaintiffs' claims concerning the Internal Control Disclosures, but requested each of the parties to submit further briefing on Lead Plaintiffs' claims concerning the Georgia Litigation Disclosures. Thereafter, on February 6, 2007, the Court entered an Order confirming its request for additional briefing on the Georgia Litigation Disclosure allegations, directing Lead Plaintiffs to serve a settlement demand on Defendants, and scheduling additional argument on the motion to dismiss on February 23, 2007. After hearing extensive argument on the Georgia Litigation Disclosure allegations on that date, the Court allowed Defendants' motion to dismiss those claims. On February 27, 2007, the Court entered an Order memorializing its oral rulings (the "February 27 Order").

By its February 27 Order, the Court also directed the parties to meet to "discuss [a] possible settlement of this case" and to exchange certain information to assist the parties in evaluating the merits of Lead Plaintiffs Internal Control Disclosure claims. In accordance with

---

Expenses and Fairness Hearing (attached as Exhibit 1 to the Preliminary Approval Order described below).

the February 27 Order, Defendants' counsel provided Lead Counsel with 770 pages of documents concerning Viisage's disclosure and internal financial controls during the Class Period, which documents were fully analyzed by Lead Counsel.  Similarly, Lead Plaintiffs provided Defendants with documents and information concerning trading in Viisage common stock by certain of the Lead Plaintiffs.

The parties thereafter engaged in extensive settlement discussions but initially were unable to reach agreement.  As a result, the parties negotiated and submitted a Proposed Joint Pretrial Scheduling Order ("Proposed Order") for the Court's approval.  However, as the parties were still engaged in settlement negotiations, the Proposed Order provided for a three-week delay before the commencement of formal discovery in which to conduct further negotiations.  Nevertheless, despite the efforts of counsel for the parties, during this three-week period, no agreement was reached.  Accordingly, Defendants answered the Complaint on May 14, 2007 and the parties were prepared to commence discovery upon entry of the Proposed Joint Pretrial Scheduling Order.

Following the submission of the Proposed Order, however, counsel for the parties made further efforts to reach a settlement and, after further intense negotiations, on June 13, 2007, they reached an agreement-in-principle to settle this Action, subject to the negotiation of a definitive stipulation of settlement and releases in forms satisfactory to counsel for all parties, and approval of that stipulation of settlement by the Court.

III.                          **ARGUMENT**

    A.    **THE SETTLEMENT MEETS THE CRITERIA NECESSARY
           FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

The class action settlement approval process is a two-step process. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). First, the Court reviews the proposed settlement to determine whether it will grant preliminary approval. If the court grants preliminary approval, "the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102. Lead Plaintiffs submit that this Court should grant preliminary approval to the Settlement, direct that notice of the Settlement be provided to the members of the Class, and schedule a Fairness Hearing to consider whether to give final approval to the Settlement.

        1.    **The Court's Role in the Preliminary
                Approval of a Class Action Settlement**

The primary issue which must be decided by the Court upon a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209-10 (S.D.N.Y. 2000) (quoting, *MCL* (2d) at § 30.41; *Armstrong v. Board of Sch. Dirs. of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980)); *In re Lupron Marketing & Sales Practices Litig*, 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, *inter alia*, "the proposed settlement amount is sufficiently within the range of reasonableness."). The preliminary approval analysis does not require the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Rather, the determination of whether the settlement is fair, reasonable, and adequate is made at the final settlement approval

hearing, after the class members have received notice of the settlement, and have had an opportunity to voice their views of the settlement. *See* 3B J. Moore, *Moore's Federal Practice* ¶ 23.85[4], at Vol. 5, Chap. 23 (3d ed. 2002) ([T]he court makes a cursory review to avoid the expense of notice to the class members if the negotiating parties have settled on a facially unfair agreement); *Prudential*, 163 F.R.D. at 210 (stating that the court will be in a position to fully evaluate whether a proposed settlement is fair, reasonable, and adequate "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement"). Preliminary approval is merely the prerequisite to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Prudential*, 163 F.R.D. at 209. Therefore, the Court need merely determine at this stage whether the settlement is "*possibly* fair, reasonable and adequate." *Id*. (emphasis added).

## 2.    Factors To Be Considered In Granting Preliminary Approval

Courts have articulated a number of factors that may be considered in evaluating a settlement at the preliminary approval stage. In *Prudential*, the Court articulated the following considerations:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) [of the Federal Rules of Civil Procedure] be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Prudential*, 163 F.R.D. at 209; *see also In re Lupron,* 345 F. Supp. 2d at 137 (fact that proposed settlement had been negotiated at arm's length, that experienced attorneys were in charge, that there was no evidence of collusion merited preliminary approval); *In re Automotive Refinishing Paint Antitrust Litig.,* 2003 U.S. Dist. LEXIS 4681, at *3 (E.D. Pa. Mar. 17, 2003) (granting

6

preliminary settlement approval and noting that it was appropriate to give deference to the recommendations of experienced attorneys who engaged in arms-length settlement negotiations). As discussed in detail below, the proposed Settlement meets these criteria.

a.    **The Settlement Falls Within the Range of Possible Approval**

The determination of a "reasonable" settlement "is not susceptible of a single mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.) (citation omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The foundation of any settlement is the uncertainty as to the outcome of the lawsuit. Moreover, reality dictates that, in order to settle, some discount needs to be offered to defendants, who would otherwise have no economic incentive to pay anything short of a judgment. If Lead Plaintiffs could be assured that a better result could be obtained—a result that would justify the protracted delay and the substantial effort and expenses attendant upon further litigation—they would never agree to a settlement for any amount less than the full amount of the class's damages. Responsible counsel, however, rarely can be so assured, and certainly not within the context of the Internal Control Disclosure claims remaining in this Action. The possibility that the Class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).[3]

Here, the Settlement amount is well within the range of approval as the amount of damages that could be recovered at trial is highly uncertain. Based on Lead Counsel's review

---

[3]    *See also In re Global Crossing Ltd. Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

with their expert of the maximum damages reasonably recoverable on the Internal Control

Disclosure claims which survived the motion to dismiss, Lead Counsel determined that the

maximum recoverable damages were in the $12 million range, but obtaining a verdict for that

amount is dependent on convincing the jury that fifty percent of the $0.97 decline in the price of

Viisage common stock at the end of the Class Period was attributable to Viisage's revelation of

material weaknesses in its internal controls.[4]  Defendants, however, would have offered expert

evidence suggesting that less than five percent of that decline was attributable to these

revelations which, if accepted by the jury, would result in a damage award to the Class of less

than $1 million.  Further, Lead Plaintiffs would not be able to recover any damages unless they

are successful in prevailing on summary judgment and at trial on liability – an outcome that was

uncertain given the discovery made available by Defendants.  Klafter Decl. ¶¶ 4-5.  Given these

risks, a settlement affording over two to three times the damages they might recover after trial

and approximately 20 percent of their best case is within the range of reasonableness and

ultimate approval by this Court.[5]

Further, the proposed Settlement has all of the other indicia of a reasonable settlement as

it is the product of serious, informed and non-collusive negotiations following an extensive

analysis of the strengths and weaknesses of the remaining claims in this Action.  Klafter Decl. ¶

3.

---

that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted).
[4] Lead Plaintiffs believe fifty percent of the decline is the appropriate percentage because in addition to disclosing material weaknesses in its internal controls at the end of the Class Period, Viisage indicated that it expected fiscal year 2005 revenues to be "between $73 million and $80 million" as compared to security analyst then consensus revenue estimates of approximately $83 million.  Following these revelations, security analysts generally reduced their estimates and ratings on Viisage common stock due to both Viisage's lowered revenue estimates and its internal control deficiencies.
[5] This Court has broad discretion in ultimately assessing whether to finally approve a proposed class action settlement.  *Rolland v. Cellucci*, 191 F.R.D. 3, 12 (D. Mass. 2000); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996); *Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citing, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993)).

### 3.       The Settlement Has No Obvious Deficiencies

The Settlement does not have any obvious deficiencies. As stated, the $2.3 million Settlement provides a recovery for the Class that is well within the range of reasonableness. The Settlement does not improperly grant preferential treatment to any of the Lead Plaintiffs or any segment of the Class. Each Class members' recovery is determined by the Plan of Allocation, which is set forth and explained in the Notice, which is attached as Exhibit 1 to the proposed Preliminary Approval Order. The Plan of Allocation provides that all Class members who held their shares at the close of trading on March 2, 2005, the end of the Class Period and when Viisage first disclosed the existence of material weaknesses in its internal controls occurred, will be paid on a *pro rata* basis based on the number of shares so held. Lead Counsel adopted the Plan of Allocation after considering the import of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627 (2005), which was decided after the commencement of this Action. In *Dura*, the Supreme Court held that to recover damages, a plaintiff must show a connection between the alleged misrepresentations and the loss. Since this decision, appellate courts have interpreted *Dura* to bar a recovery of losses absent a showing that the losses were caused by a public disclosure concerning the alleged fraud. Here, the first disclosure of material weaknesses in Viisage's internal controls occurred after the close of the market on March 2, 2005. Lead Counsel also consulted with their financial expert on the Plan of Allocation and believe that it provides a fair and reasonable allocation of the Net Settlement Fund to those Class members who could establish damages caused by the misrepresentations at issue.

B.    **THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE APPROPRIATE**

1.    **The Contents Of The Settlement Notices**

The contents of the notice to the Class must conform to the requirements of the PSLRA,

15 U.S.C.A. § 77a, *et seq.*  The PSLRA requires:

> Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements:
>
> (A)    Statement of plaintiff recovery. The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.
>
> (B)    Statement of potential outcome of case.   (I). . . If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§   78a et seq.], a statement concerning the average amount of such potential damages per share [or] (ii) . . . If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS § § 78a et seq.], a statement from each settling party concerning the issue or issues on which the parties disagree.  (iii) . . . A statement made in accordance with clause (I) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.
>
> (C)    Statement of attorneys' fees or costs sought. If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs

> determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement.
>
> (D)    Identification of lawyers' representatives. The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.
>
> (E)    Reasons for settlement. A brief statement explaining the reasons why the parties are proposing the settlement.
>
> (F)    Other information. Such other information as may be required by the court.

15 U.S.C.A. § 78u-4(a)(7). The proposed Notice to be mailed to the Class provides all of the information required by the PSLRA.

## 2.    The Notice Procedure Meets the Requirements of Fed. R. Civ. P. 23

The Preliminary Approval Order sets forth a notice procedure that is consistent with constitutional due process and the requirements of Federal Rule of Civil Procedure 23(c). Specifically, the Preliminary Approval Order provides that:

i.     The Notice and Proof of Claim form (Exhibits 1 and 2, respectively, to the Preliminary Approval Order) will be mailed to all Class members who can be identified through reasonable effort, by first class mail, not later than twenty-eight (28) days after the entry of the Preliminary Approval Order (the "Notice Date");

ii.     Not later than ten (10) days after the Notice Date, the Summary Notice (Exhibit 3 to the Preliminary Approval Order) will be published once in the national edition of the *Wall Street Journal;*

     iii. Banks, brokerage firms, institutions and other nominees who purchased or acquired Viisage common stock during the Class Period for the indirect or beneficial interest of Class members shall be directed to send the Notice and Proof of Claim form to Class members within seven (7) days after receipt thereof, or, alternatively, shall be directed to send a list of the names and addresses of such Class members to the A. B. Data, Ltd., the proposed Claims Administrator, within seven (7) days after receipt thereof, who will thereafter send the Notice and Proof of Claim form to such Class members.

   There are certain blank dates in the Notice, Proof of Claim form and Summary Notice. Those dates are provided by the Preliminary Approval Order and will be added once that Order is entered.  The Preliminary Approval Order provides for the following schedule:

**Exclusion Requests**: Requests for exclusion must be received by the Claims Administrator fourteen (14) days before the Fairness Hearing.

**Objections:** Objections to the Settlement, the Plan of Allocation, Request for Attorney Fees and Expenses must be filed with the Court and served on counsel for the parties fourteen (14) days before the Settlement Fairness Hearing.

**Papers in Support of the Settlement:** Lead Plaintiffs must file their moving papers in support of the Settlement and their Request for Attorneys Fees and Expenses seven (7) days before the Fairness Hearing.

The proposed Preliminary Approval Order contains two blanks to be completed by the Court – the date and time for the Fairness Hearing (¶5) and the deadline for submitting Proof of Claim forms (¶12).  Lead Plaintiffs proposed that that the Fairness Hearing be set by the Court approximately seventy-five (75) days after the Notice Date to provide sufficient time for nominees to provide the Notice and Proof of Claim form to their beneficial owners.  Lead Plaintiffs propose that the deadline for submitting Proof of Claim forms be thirty (30) days after the Fairness Hearing.

   Lead Plaintiffs submit that the foregoing notice procedure and deadlines are fair and

reasonable, will effectuate the best notice practicable under the circumstances and satisfies due process requirements.

   C.    **THE COURT SHOULD CERTIFY**
         **THE CLASS FOR SETTLEMENT PURPOSES**

A condition of the proposed Settlement is the certification of the Class for settlement purposes only. *See* Stipulation of Settlement, ¶¶ 4.1 and 9.2. The proposed Class satisfies all of the requirements for class certification pursuant to Fed. R. Civ. P. 23(b)(3).. *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir. 2003) ("To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b).").

As Courts in this district have noted, securities fraud cases are particularly suited for class certification under Rule 23. *See, e.g., Swack v. Credit Suisse First Boston,* 230 F.R.D. 250, 258 (D. Mass. 2005) (quoting *Priest v. Zayre*, 118 F.R.D. 552, 554-55 (D. Mass. 1988) for the proposition that "[c]ourts have expressed a general preference for class certification in securities fraud cases based on a policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights") Here, the Class should be certified for settlement purposes.

First, the Class easily satisfies Rule 23(a)'s numerosity requirement. The parties have stipulated that approximately 14 million shares were held by damaged Class members. Stipulation of Settlement, ¶ 9.3. These shares were obviously held by thousands of Class members and represent an amount that is certainly adequate to demonstrate numerosity. *McKenna v. First Horizon Home Loan Corp.*, 429 F.Supp.2d 291, 307 (D. Mass. 2006) ("courts in this district have noted that a 40 person class is generally found to establish numerosity") (quoting *McLaughlin v. Liberty Mut. Ins. Co.,* 224 F.R.D. 304, 307 (D. Mass. 2004) (citation and

internal quotation omitted)); *Rodrigues v. Members Mortgage Co., Inc.,* 226 F.R.D. 147, 150-5 1 (D. Mass. 2005)(class that numbered approximately 40 members satisfied the numerosity requirement). Here it is clear that the class is so numerous that joinder of all Class members is impracticable.

Second, the Complaint recites a number of central legal and factual questions that are common to all Class members. *See* Complaint, ¶ 40. The existence of those substantial common questions is predictable in light of the fact that Lead Plaintiffs' claims arise from uniform disclosures made in Viisage's SEC filings and other public disclosures. Courts have held that cases which involve common legal and factual issues indistinguishable from those presented here satisfy Rule 23(a). *In re Transkaryotic Therapies, Inc. Sec. Litig.,* 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) (commonality requirement was satisfied where plaintiffs alleged that common issues included "whether defendants violated federal securities laws, whether defendants made misrepresentations about TKT's business and financial operations, and whether class members suffered damages"); *Swack*, 230 F.R.D. at 260 (commonality requirement was satisfied in a securities fraud class action by a list of issues related to "conduct, causation, and harm" that was similar to the common issues presented here); *Rodrigues*, 226 F.R.D. at 151 (commonality requirement was satisfied where all class members' claims raised four general questions related to liability).

Third, the Class also satisfies Rule 23(a)'s typicality requirement, which focuses upon whether "the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *See McKenna*, 429 F.Supp.2d at 308; *Swack,* 230 F.R.D. at 260 (the typicality requirement is met "when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when

the plaintiff's claims and those of the class are based on the same legal theory'") (quoting *Guckenberger v. Boston Univ.,* 957 F. Supp. 306, 325 (D. Mass. 1997)); *Transkaryotic,* 2005 WL 3178162, at *3 ("In general, 'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Pharm Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 78 (D. Mass. 2005)); *McKenna*, 429 F.Supp.2d at 308 (typicality requirement was satisfied where all class members' claims arose from a course of conduct related to a lender's use of a challenged form at real estate closings).

This is particularly the case where the claims of the plaintiffs and the members of the class are predicated on the fraud on the market theory. *See Swack*, 230 F.R.D. at 264 (typicality requirement was satisfied despite the existence of potential unique defenses related to the plaintiff's reliance upon non-public information learned during the course of meetings with senior executives where the plaintiff's "claims against the Defendants rise or fall on the same legal theory – i.e., fraud-on-the-market – as do those of the absent class members and, therefore, she has the same interest as they do in vindicating the theory"); *Kirby v. Cullinet Software, Inc.,* 116 F.R.D. 303, 307 (D. Mass. 1987) ("By basing their claim on the fraud on the market theory, plaintiffs can indicate their typicality by demonstrating that they relied on the integrity of the market."); *Randle v. Spectran*, 129 F.R.D. 386, 391-392 (D. Mass. 1988).

Here, Lead Plaintiffs allege that the Defendants disseminated virtually identical false and misleading statements concerning Viisage's internal and financial controls throughout the Class Period and concealed material weaknesses in those controls until the end of the Class Period. Complaint, ¶¶ 52-54, 57-58, 69-70, 82-83, and 98. Lead Plaintiffs further that they relied on the integrity of the market price of Viisage stock but that as a result of these misrepresentations and

omissions, the market prices of Viisage shares were artificially inflated during the Class Period and that the revelation of this fraud caused damage to Lead Plaintiffs and members of the Class. Complaint, ¶ 145. As the claims of Lead Plaintiffs and Class members arise from the same course of conduct and rise or fall on the same legal theory, the typicality requirement has been satisfied here.

Fourth, Lead Plaintiffs satisfy Rule 23(a)'s adequacy requirement because their interests "will not conflict with the interests of the class members" and their counsel "is qualified, experienced and able to vigorously conduct the proposed litigation."; *Transkaryotic,* 2005 WL 3178162, at *4 (quoting *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985)); *Rodrigues,* 226 F.R.D. at 151 (adequacy requirement was satisfied where plaintiff "retained counsel with significant experience in class representation" and demonstrated "a sufficient (albeit imperfect) understanding of the issues in the suit").

As the Firm Resumes of Co-Lead Counsels reflect, they are eminently qualified.[6] Lead Counsel have also demonstrated their adequacy by vigorously and successfully prosecuting this matter. *See Swack*, 230 F.R.D. at 267 (counsel was adequate where they had "broad-based experience in complex litigation, including experience in securities fraud class actions in this district and others"); *Grace* v. *Modell v. Eliot Sav. Bank,* 139 F.R.D. 17, 23 (D. Mass. 1991) (approving lead counsel because they were "familiar with and experienced in this type of litigation"). Accordingly, Lead Plaintiffs have fairly and adequately protected the interests of the Class.

The Class also satisfies the dual requirements of Fed. R. Civ. P. 23(b)(3), predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3) (certification is appropriate where "the questions of

---

[6] Lead Counsel Firm Resumes are attached to the Klafter Decl. as Exhibits 2 and 3, respectively.

law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy"). The Class satisfies the predominance requirement because it is difficult to discern any liability issues not shared by all Class members. Notably, the Supreme Court has emphasized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Rodrigues*, 226 F.R.D. at 152-53 (common issues predominated where plaintiffs intended to demonstrate that defendant lenders engaged in a uniform unlawful practice in violation of the TILA statute at closings despite the defendants' contention that the particular facts surrounding each closing raised individual issues); *Randle*, 129 F.R.D. at 393 ("I conclude that the common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning [the company's] securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action."); *Perception Tech. Corp.,* 128 F.R.D. 165, 171 (D. Mass. 1989)("In fraud on the market cases, common questions of law and fact predominate over individual questions."); *Kirby,* 116 F.R.D. at 311 ("[P]laintiffs are basing their class claim on the fraud on the market theory, which presents the common question of reliance on the integrity of the market. . . . Thus, the court finds that common questions of law and fact predominate."). Here, during the Class Period, Viisage shares traded in an efficient market and as such the fraud on the market presumption is applicable to the claims alleged. Complaint, ¶ 148. *See In Re Polymedica Corp. Securities Litigation,* 432 F.3d 1, 14 (1st Cir. 2005) (An efficient market digests all publicly available information to set the market price of a security). In light of these shared class-wide issues, the Class satisfies Rule 23 (b)(3)'s

predominance standard.

Finally, the Class satisfies Rule 23(b)(3)'s superiority requirement. Rule 23(b)(3) dictates that the following four factors are "pertinent" in assessing whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy":

> the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action.

*See Swack*, 230 F.R.D. at 273 ("Clearly, the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues – i.e., the Defendants' allegedly illegal conduct and the impact thereof on the market price of Razorfish stock – would be an inefficient allocation of limited court resources. Furthermore, and even more importantly, is the very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries."); *Transkaryotic*, 2005 WL 3178162, at *2 (same holding)

A class action is the only effective way of having litigated the Action. First, because of the enormous costs associated with prosecuting the Action, no Class member has expressed an interest in prosecuting claims individually. Second, all of the actions brought against the Defendants are pending before the Court. Third, the interests of efficiency dictate that all of the litigation against the Defendants should be concentrated in this forum. Finally, although manageability of this Action is not at issue as Lead Plaintiffs are seeking certification of a settlement class, as the history of the Action demonstrates, this litigation presents no management issues that weigh against the certification of the Class. Thus, as courts have consistently held in connection with similar securities class actions, the class action device

provides the superior method for expeditiously resolving this controversy.

  **D.  THE COURT SHOULD APPOINT LEAD
     COUNSEL AS CLASS COUNSEL**

  Rule 23(g) states that, "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). The Rule further dictates that, in appointing class counsel, the Court "must consider:"

> the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). Rule 23 also permits the Court to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

  As shown by their Firm Resumes and as they have demonstrated throughout the Action, Lead Counsel possess the experience and resources to represent the Class fairly and adequately in the Action. Lead Counsel should therefore also be appointed as class counsel for purposes of the proposed Settlement.

**IV.    LEAD PLAINTIFFS SUPPORT THE PROPOSED SETTLEMENT**

  Lead Plaintiffs have assisted in the vigorous prosecution of the Action, reviewing key pleadings and discussing case strategy and settlement negotiations with counsel. Each has performed (and continues to perform) the tasks and duties required of a class representative in exemplary fashion.

  Based on their full understanding of this litigation, as well as the risks of summary judgment, of a defense verdict or of having a verdict in favor of Lead Plaintiffs and the Class overturned on appeal, and the risk of a jury award of damages less than amount provided by the Settlement, Lead Plaintiffs agree that the Settlement is in the best interests of the Class. Klafter Decl. ¶ 7.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

Dated: July 23, 2007

Respectfully submitted,

BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO

By:    /s/ Leslie R. Stern
           Jeffrey C. Block (BBO# 600747)
           Leslie R. Stern  (BBO# 631201)
           One Liberty Square, 8th Floor
           Boston, MA 02109
           (617) 542-8300

**Plaintiffs Liaison Counsel**

Jeffrey A. Klafter, Esq. (*pro hac vice*)
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C.  20036
(202) 261-3553

Vincent R. Cappucci. Esq.
Stephen D Oestreich, Esq.
Robert N. Cappucci, Esq.(*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

**Plaintiffs Co-Lead Counsel**

20