**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **In re VIISAGE TECHNOLOGY, INC. SECURITIES LITIGATION** | |
| | **Civil Action No. 05-cv-10438-MLW** |
| **This Pleading Applies to: All Actions** | |

**DECLARATION OF JEFFREY A. KLAFTER IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, JEFFREY A. KLAFTER, declare as follows pursuant to 28 U.S.C. § 1736:

1.      I am a partner with Klafter & Olsen LLP, one of the Court appointed Lead Counsel in this Action.

2.      I submit this Declaration In Support of Lead Plaintiffs' motion for preliminary approval of a proposed settlement set forth in a Stipulation of Settlement dated July 19, 2007and for entry of the proposed Preliminary Approval Order submitted herewith.  A true and correct copy of the Stipulation of Settlement is attached hereto as Exhibit 1.

3.      The proposed Settlement is the product of extensive arms-length negotiations between Lead Counsel, counsel for the Defendants, and counsel for, and a representative of Defendants' insurer carrier.  It is also the product of a thorough analysis of the discovery directed by the Court in its February 27, 2007 Order and assessment of the provable damages suffered by the Class, both of which enabled Lead Counsel and the Lead Plaintiffs to assess the strengths and weaknesses of the remaining claims in this Action before agreeing to the proposed Settlement.

4.    The provable damages of the Class attributable to the internal control disclosures in this Action are highly uncertain.  The damage expert retained by Lead Counsel determined that the maximum class-wide damages reasonably recoverable on the internal control disclosure claims were in the $12 million range, assuming the jury would find that fifty percent of the decline in the price of Viisage common stock on March 3, 2005 was attributable to Viisage's revelation of material weaknesses in its internal controls.  During the settlement negotiations, however, counsel for Defendants made it clear that they would proffer an expert who would opine that less than five percent of that decline was attributable to Viisage's disclosure of material weaknesses in its internal controls on March 2, 2005, resulting in damages of less than $1 million.

5.    Lead Counsel were also mindful that they would not be entitled to proceed to trial unless discovery elicited sufficient facts to overcome a motion for summary judgment -- – an outcome that was uncertain given the discovery made available by Defendants.  Furthermore, even if Lead Plaintiffs could overcome a summary judgment motion by Defendants, convincing a jury that the Defendants should be held liable and prevailing on the inevitable appeal of such a jury finding also carry significant risks.

6.    Attached as Exhibits 2 and 3 hereto are true and correct copies of the Firm Resumes of Klafter & Olsen LLP and Entwistle & Cappucci LLP, respectively.

7.    The Lead Plaintiffs support the proposed Settlement as in the best interests of the Class given the risks of proceeding with the internal control disclosure claims allowed by the Court to proceed to discovery.

I declare under the penalty of perjury that the foregoing is true and correct.  Executed on July 23, 2007 in White Plains, New York.

                                                          /s/ Jeffrey Klafter
                                                          Jeffrey A. Klafter

EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| |
|---|
| In re VIISAGE TECHNOLOGY, INC. SECURITIES LITIGATION |
| This Pleading Applies to: All Actions |

**Civil Action No. 05-cv-10438-MLW**

## STIPULATION OF SETTLEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Stipulation of Settlement (the "Stipulation" or "Settlement Agreement") is entered into among Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock and Lance Hancock, on behalf of themselves and the Class defined herein (collectively, "Lead Paintiffs"), and Defendants Viisage Technology, Inc. (now known as L-1 Identity Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G. Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter Nessen (collectively, "Defendants") by and through their respective, duly authorized counsel. This Stipulation is intended by both Lead Plaintiffs and Defendants to fully and finally compromise, resolve, discharge and settle the Released Claims, as defined herein, and dismiss this Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim or defense by any Lead Plaintiff or Defendant.

**WHEREAS:**

**Procedural History**

A.      This securities class action was commenced on March 8, 2005, alleging violations of the federal securities laws on behalf of certain investors in Viisage Technology, Inc. ("Viisage").

B.      By Order dated January 19, 2006, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court appointed Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock, and Lance Hancock as Lead Plaintiffs, and approved their selection of Klafter & Olsen LLP and Entwistle & Cappucci LLP as Lead Counsel in the Action.

C.      Lead Plaintiffs filed their Consolidated Amended Class Action Complaint on February 27, 2006 (the "Complaint"), which alleged, among other things, that Viisage issued press releases and filed documents with the Securities and Exchange Commission (the "SEC"), and that certain of the individual defendants made statements during conference calls with securities analysts, which contained materially false and misleading statements concerning: (1) litigation with which Viisage was involved in connection with a contract it had obtained with the Georgia Department of Motor Vehicle Safety ("DMVS") to provide secure drivers licenses for the State ("the Georgia DMVS Litigation"); and (2) Viisage's disclosure controls and internal financial controls.  The Complaint further alleged that these materially false and misleading statements were made with knowledge of, or in reckless disregard, of the true facts.

D.      Lead Plaintiffs asserted in the Complaint that, in connection with this alleged wrongdoing, Defendants violated Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) (and Rule 10b-5 promulgated thereunder) and 20(a) of the Securities Exchange Act of

1934, and caused damages to Lead Plaintiffs and the members of a class (the "Class") consisting of purchasers of the Company's publicly traded securities during the period from May 12, 2004 through March 2, 2005.  By their Complaint, Lead Plaintiffs sought money damages plus interest, costs and attorneys' fees from Defendants.

E.    On April 3, 2006, Defendants filed their motion to dismiss the Complaint, which motion was opposed by Lead Plaintiffs.  The Court held oral argument on Defendants' motion to dismiss on February 1, 2007, and on February 23, 2007 entered an Order allowing the motion to dismiss with respect to Lead Plaintiff's claims concerning the Georgia DMVS disclosures, but denying the motion to dismiss with respect to claims concerning Viisage's disclosure controls and internal financial controls (the "February 27 Order").

F.    The February 27 Order further directed the parties to, by April 27, 2007:  (1) meet to discuss a possible settlement of the Action; (2) exchange certain information to assist the Parties in discussing settlement; and (3) report to the Court on the status of those discussions and to present a proposed scheduling order to govern the case in the event a settlement was not achieved.   In accordance with the February 27 Order, Defendants' counsel provided Lead Counsel with seven hundred and seventy pages of documents concerning Viisage's disclosure and internal financial controls during the Class Period and Lead Counsel provided Defendants' counsel with documents and information concerning trading in Viisage securities by certain of the Lead Plaintiffs.

G.    Further, in accordance with the February 27 Order, counsel for the Parties engaged in settlement discussions but were unable to reach agreement by April 27 and therefore negotiated and submitted a Proposed Joint Pretrial Scheduling Order ("Proposed Order") for the Court's approval on that date.   However, as the Parties were still engaged in settlement

negotiations, the Proposed Order contained a three-week delay before the commencement of formal discovery in which to conduct further negotiations. Nevertheless, despite the efforts of counsel for the Parties, during this three-week period, no agreement was reached. Accordingly, Defendants answered the Complaint on May 14, 2007 and the Parties were prepared to commence discovery upon entry of the Proposed Joint Pretrial Scheduling Order.

H.    Following the submission of the Proposed Order, however, the Parties made further efforts to reach a settlement and finally reached an agreement-in-principle to settle this Action for the consideration set forth herein on June 13, 2007, subject to the negotiation of a definitive stipulation of settlement and releases in forms satisfactory to counsel for all Parties, and approval of that stipulation of settlement by the Court.

I.    Based upon their discovery, investigation and evaluation of the facts and law relating to the claims alleged in the Complaint, Lead Plaintiffs and Lead Counsel (who have extensive experience in securities class action litigation) have agreed to settle this Action pursuant to the terms and conditions of this Settlement Agreement after considering, among other things, (i) the cash benefits to Class members of this Settlement; (ii) the uncertainty of being able to prove the allegations in the Complaint that the Court did not dismiss; (iii) the attendant risks of litigation, especially in complex actions such as this action, as well as the difficulties and delays inherent in such litigation (including any appeals); (iv) the uncertainty, even if Lead Plaintiffs were to establish liability at trial, of establishing damages given the fact that Viisage made additional announcements, at the same time it revealed, after the close of the market on March 2, 2005, that "the Company determined that it had an internal control deficiency that constitutes a 'material weakness,'" which other disclosures may have contributed to the price decline on March 3, 2005 and impacted the recoverable damages; (v) their

knowledge, from the settlement negotiations, of Defendants' likely positions on the various liability and damages issues; (vi) the risks of an adverse ruling on an anticipated motion for summary judgment at the conclusion of discovery; (vii) the likelihood of obtaining a reversal of the Court's determination to dismiss the Georgia DMVS disclosure allegations, which likely could only be appealed after the conclusion of a trial in this Action; (viii) the desirability of settling this Action on the terms and conditions set forth herein rather than risking no recovery after years of litigation; and (ix) their belief that the Settlement is fair, reasonable and adequate, and in the best interests of all Class members.

M.    Defendants have denied and expressly continue to deny any wrongdoing, fault, liability, violation of law or damage alleged in the Complaint and do not admit or concede any wrongdoing, fault, liability, violation of law or damage in connection with any facts or claims that have been or could have been alleged against them by the Lead Plaintiffs, but consider it desirable for the Action to be settled and dismissed because the proposed Settlement will (i) bring to an end the substantial expenses, burdens, risks and uncertainties associated with continued litigation of this Action; (ii) finally put to rest those claims and the underlying matters; and (iii) avoid further expense and disruption of the management and operation of Defendants' business due to the prosecution and defense of this Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, among Lead Plaintiffs, on behalf of themselves and each of the other members of the Class, by and through their duly authorized counsel, and Defendants, by and through their duly authorized counsel, that subject to the approval of the Court, this Action hereby will be settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Stipulation of Settlement dated as of July 19, 2007.

**1      DEFINITIONS**

As used in this Stipulation and the exhibits annexed hereto, the following terms have the following meanings unless a section or subsection of this Stipulation or an exhibit otherwise provides:

1.1          "Action" means the consolidated action titled In re Viisage Technology, Inc. Securities Litigation, No. 1:05-cv-10438-MLW (D. Mass.).

1.2          "Authorized Claimant" means a Class Member (or the representative of such Class Member including, without limitation, agents, administrators, executors, heirs, successors, and assigns), who timely submits a valid and signed Proof of Claim form to the Claims Administrator and who is entitled to a distribution from the Net Settlement Fund pursuant to the terms and conditions set forth in this Stipulation or the Plan of Allocation.

1.3          "Claims Administrator" means, subject to Court approval, A.B. Data, Ltd., or such other or subsequent entity that the Court shall appoint to administer the Settlement and to perform other administrative functions under this Settlement Agreement.

1.4          "Class" or "Class Members" means all Persons who purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive.  Excluded from the Class are:  (i) the Defendants herein, the directors, officers and employees of Viisage, the members of each Individual Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submit valid and timely requests for exclusion from the Class pursuant to the instructions set forth in the Notice.

1.5        "Class Period" means the period of time between May 12, 2004 through March 2, 2005, inclusive.

1.6        "Complaint" means the Consolidated Amended Class Action Complaint filed in this Action on February 27, 2006.

1.7        "Court" means the United States District Court for the District of Massachusetts.

1.8        "Defendants" means Viisage and the Individual Defendants.

1.9        "Defendants' Counsel" means the law firm of Choate Hall & Stewart LLP.

1.10        "Effective Date" means the date on which the Final Judgment, in substantially the form set forth in Exhibit B annexed hereto, becomes final.  For purposes of this definition, the Final Judgment shall become final: (i) if no appeal is taken therefrom by any Person as to the Final Judgment on or before the date on which the time to appeal from the Final Judgment has expired pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure; or (ii) if any appeal is taken, within the time specified in Rule 4(a) of the Federal Rules of Appellate Procedure, by any Person from the Final Judgment, on the date on which all appeals therefrom, including any petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form or review, have been finally dismissed, have expired or have been disposed of in a manner resulting in a final affirmance of the Final Judgment and any orders or rulings merged into the Final Judgment.

1.11        "Escrow Account" means the interest-bearing escrow account in which the Settlement Fund will be deposited.

1.12        "Escrow Agent" means North Fork Bank, or its successor.

1.13    "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Settlement Agreement as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, and at which the Court may also determine whether the proposed Plan of Allocation should be approved, and whether the application of Lead Counsel for a Fee and Expense Award on behalf of Plaintiffs' Counsel should be granted.

1.14    "Fee and Expense Award" means such amounts as may be awarded by the Court to compensate Plaintiffs' Counsel for their fees and expenses in connection with the Action, which may include some or all of the following: (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred in connection with prosecuting the Action, including, without limitation, expenses attributable to experts and/or consultants retained by Lead Counsel; and (iii) interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid).

1.15    "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.16    "Individual Defendants" means Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G. Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato, and Peter Nessen.

1.17    "Lead Counsel" means the law firms of Klafter & Olsen LLP and Entwistle & Cappucci LLP.

1.18    "Lead Plaintiffs" means Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock, and Lance Hancock.

1.19       "Net Settlement Fund" means the Settlement Fund, including any income earned therefrom, less (i) any Fee and Expense Award; (ii) any Notice and Administration Expenses; and (iii) any Taxes and Tax Expenses payable from the Settlement Fund.

1.20       "Notice" means the Notice of Pendency and Proposed Settlement, Application For Attorneys' Fees And Expenses and Fairness Hearing, which is to be mailed to Class Members, pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 1 to Exhibit A.

1.21       "Notice and Administration Expenses" means all costs associated with the administration of the Settlement, including, without limitation, the costs associated with preparing, printing and mailing the Notice to Class Members, publishing the Summary Notice, preparing and processing Proof of Claim forms, and distributing the Net Settlement Fund.

1.22       "Notice Costs" means costs incurred in connection with preparing, mailing and publishing the Notice and Summary Notice, responding to nominees' requests for additional copies of the Notice, tallying the number of opt outs, costs billed to the Claims Administrator by the nominees and associated correspondence and telephone costs, and related costs.

1.23       "Parties" means the Lead Plaintiffs and the Defendants.

1.24       "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their/its heirs, executors, administrators, predecessors, successors, representatives, or assignees.

1.25       "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants

as proposed by Lead Counsel and set forth in the Notice, or such other Plan of Allocation as the Court shall approve.

1.26         "Plaintiffs' Counsel" means Lead Counsel and all other counsel of record listed in the Complaint.

1.27         "Preliminary Approval Order" means the Order to be entered by the Court certifying the class for settlement purposes only, preliminarily approving the Settlement and providing for notice, as contemplated in Section 4.1 of this Settlement Agreement. A copy of the Preliminary Approval Order proposed by the Parties is annexed hereto as Exhibit A.

1.28         "Proof of Claim form" means the form which will be mailed to Class Members with the Notice and pursuant to which Class Members will submit a claim by signing, dating, and returning it to the Claims Administrator in accordance with the procedures set forth therein and in the Notice, substantially in the form attached hereto as Exhibit 2 to Exhibit A.

1.29         "PSLRA" means the Private Securities Litigation Reform Act of 1995.

1.30         "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

1.31         "Released Claims" shall collectively mean any and all claims (including Unknown Claims (as defined in paragraph 1.39 below), debts, demands, liabilities, rights and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, based upon or related to the purchase of Viisage publicly traded securities

during the Class Period and the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were or could have been alleged in the Action against any of the Released Persons, except claims to enforce the Settlement or any of its terms.

1.32        "Released Persons" means any and all of the Defendants, their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former employees, officers, and directors of each of them, the present and former trustees, attorneys, accountants, insurers, partners, principals, and agents of each of them, and the predecessors, heirs, executors, administrators, successors, and assigns of each of them, and any person or entity which is or was related to or affiliated with any Released Person or in which any Released Person has or had a controlling interest and the present and former employees, officers, directors, attorneys, accountants, insurers, partners, principals, and agents of each of them.

1.33        "SEC" means the United States Securities and Exchange Commission.

1.34        "Settlement" means the agreement between and among the Parties to settle, compromise and dismiss this Action with prejudice and on the merits, under the terms, conditions, and provisions set forth in this Settlement Agreement.

1.35        "Settlement Fund" means the fund described in Section 2.1 of this Settlement Agreement.

1.36        "Stipulation" or "Settlement Agreement" means this Stipulation of Settlement and its accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

1.37        "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement, Application For Attorneys' Fees And Expenses and Fairness Hearing, for publication

in the national edition of *The Wall Street Journal*, substantially in the form attached as Exhibit 3 to Exhibit A.

1.38        "Taxes and Tax Expenses" means (i) all taxes (including any estimated taxes, interest or penalties) on the income of the Settlement Fund; and (ii) expenses and costs incurred in connection with the operation and implementation of Section 3.7 of this Settlement Agreement and the taxation of the Settlement Fund, including, without limitation, expenses of tax attorneys and/or accountants related to filing (or failing to file) the returns described in Section 3.7.

1.39        "Unknown Claims" means any and all Released Claims that theLead Plaintiffs or any other Class Members do not know or suspect to exist in their favor at the time of the release of the Defendants and the Released Persons including, without limitation, claims that, if known by them, might have affected their decisions to settle with and release the Defendants and the Released Persons, or might have affected their decisions whether to object to this Settlement.

1.40        "Viisage" means Viisage Technology, Inc. and its successor in interest, L-1 Identity Solutions, Inc.

## 2    THE SETTLEMENT FUND

2.1        The Settlement Fund shall consist of two million three hundred thousand dollars ($2,300,000.00) (the "Settlement Amount"), which the Defendants shall pay or cause to be paid, by wire transfer or similar means, into the Escrow Account to be established by Lead Counsel and maintained by the Escrow Agent within ten (10) business days after entry of the Preliminary Approval Order by the Court, together with all interest or other income earned on the Settlement Amount, after it is deposited into the Settlement Fund, or any portion thereof.

**3**      **ADMINISTRATION OF THE SETTLEMENT FUND**

      **a.**      **The Escrow Agent**

3.1      The Escrow Agent shall invest the Settlement Fund in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at the then-current market rates, except that $150,000.00 to be used for Notice Costs, and any residual cash balances and cash pending investment in United States Treasury Bills, may be invested and reinvested in a money market mutual fund comprised exclusively of investments secured by the full faith and credit of the United States.  Neither Defendants nor Defendants' Counsel shall have any responsibility or liability for investment decisions.

3.2      The Escrow Agent shall not use or disburse all or any part of the Settlement Fund except as provided for in the Stipulation, or by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel.

3.3      Before the Effective Date, any and all Notice Costs up to $150,000.00 that are approved by Lead Counsel shall be paid out of the Settlement Fund.

3.4      The Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

3.5      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation, the Plan of Allocation, and/or further order(s) of the Court.

3.6      Except as permitted by Sections 3.3, 3.7, and 7.2, Lead Counsel and the Escrow Agent shall not disburse any portion of the Settlement Fund prior to the Effective Date.

- 13 -

Upon request by Defendants' Counsel, Lead Counsel and the Escrow Agent shall promptly provide to Defendants' Counsel all information reasonably requested by Defendants' Counsel in connection with any disbursement(s) from the Settlement Fund made prior to the Effective Date.

### b.    Taxes and Tax Expenses

3.7    (a)    The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Section 3.7, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing to occur.

(b)    For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Klafter & Olsen LLP or its successor, which shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Section 3.7(a)) shall be consistent with this Section 3.7 and in all events shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 3.7(c) hereof.

(c)     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this Section 3.7 (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) the returns described in this Section 3.7) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons shall have no liability or responsibility for the Taxes, the Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. Any Taxes and Tax Expenses owed by any Defendant or Released Person (including, without limitation, any related expenses of tax attorneys and/or accountants) shall also be paid out of the Settlement Fund.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); the Released Persons are not responsible and shall have no liability therefor, or for any reporting requirements that may relate thereto.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 3.7.

**4     PRELIMINARY APPROVAL HEARING AND ORDER**

4.1     Promptly upon execution of this Settlement Agreement, the Parties shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry

of an order ("Preliminary Approval Order"), substantially in the form attached hereto as Exhibit A:

      (a)      certifying the Class, for settlement purposes only, pursuant to Fed. R. Civ. Pro. 23.

      (b)      preliminarily approving the Settlement;

      (c)      scheduling a Fairness Hearing to be held before the Court, at a time and date to be set by the Court, as set forth in the Notice, in order finally to determine the reasonableness, adequacy, and fairness of the Settlement, to determine whether the Final Judgment should be entered pursuant to this Stipulation, and at which time the Court may also consider the Plan of Allocation, the application of Lead Counsel for a Fee and Expense Award;

      (d)      appointing a Claims Administrator;

      (e)      approving and directing the Claims Administrator, under the supervision of Lead Counsel as the circumstances may require, to mail or cause to be mailed to all potential Class Members that can be identified with reasonable effort:

      (i)      copies of the Notice, substantially in the form annexed hereto as Exhibit 1 to Exhibit A; and

      (ii)      copies of the Proof of Claim form, substantially in the form annexed hereto as Exhibit 2 to Exhibit A

      (f)      approving, and directing the Claims Administrator to cause to be published once in the national edition of *Wall Street Journal*, a Summary Notice substantially in the form annexed hereto as Exhibit 3 to Exhibit A;

      (g)      providing for a right of a Class Member to request exclusion from the Class, in the manner and time provided in the Notice;

(h)     requiring any Class Member who objects to the approval of this Settlement, the Plan of Allocation, or the application for a Fee and Expense Award, to file and serve, in the manner and time provided in the Notice, notice of the Class Member's intention to object, the grounds for such objection, and all papers the Class Member intends to present to the Court in opposition to this Settlement, and providing that any Class Member who does not follow the objection procedure in the Notice will be barred from making an objection or participating in the Fairness Hearing;

(i)     setting a period of time during which Class Members must submit Proof of Claim forms in order to participate in the distribution of the Net Settlement Fund;

(j)     determining, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, that the giving of notice as provided in the Preliminary Approval Order meets the requirements of applicable law and due process, constitutes the best notice practicable under the circumstances to all persons entitled thereto, and constitutes due and sufficient notice of the Fairness Hearing and the rights of persons and entities in the Class with respect thereto; and

(k)     pending the Court's entry of the Final Judgment, enjoining Lead Plaintiffs and all Class Members from instituting, commencing or prosecuting any action against the Defendants or Released Persons that asserts any of the Released Claims.

## 5     ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND SUPERVISION AND DISTRIBUTION OF THE SETTLEMENT FUND

5.1     The Claims Administrator, acting on behalf of the Class, and subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as the circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Defendants and Defendants' Counsel shall have no role in or responsibility for the administration

of the Settlement or for the solicitation, review or evaluation of Proof of Claim forms nor any liability therefor, and shall have no liability to any Person, including, without limitation, the Class or Lead Counsel, in connection with such matters.

5.2      The Settlement Fund shall be applied as follows:

(a)      to pay any Notice and Administration Expenses;

(b)      to pay any Taxes and Tax Expenses;

(c)      to pay any Fee and Expense Award; and

(d)      to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3      Except as expressly stated in this Stipulation, all payments of Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund and any portion of the Fee and Expense Award shall be paid by the Settlement Fund and not by Lead Plaintiffs, Plaintiffs' Counsel, Class Members, the Defendants, or Defendants' Counsel.  Except as expressly stated in this Stipulation, there shall be no liability on the part of Lead Plaintiffs, Plaintiffs' Counsel, Class Members, the Defendants, or Defendants' Counsel for Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund and any portion of the Fee and Expense Award.

5.4      Following the Effective Date, in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)    Each Class Member who wishes to participate in the Net Settlement Fund must return a signed Proof of Claim form by first-class mail, postmarked no later than ninety (90) days after the mailing of the Notice or such other time as may be set by the Court.  The date will be set forth in the Notice.  The address to which the Proof of Claim form must be mailed shall be set forth on the Proof of Claim form itself and shall also be printed in the Notice.  If a Class Member chooses to return his, her, or its Proof of Claim form in a manner other than by first-class mail, then it must be actually received at the address on the Proof of Claim form by the date set forth in the Notice, unless that date is extended by order of the Court.

(b)    The Proof of Claim form must be sworn on oath or made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

(c)    The validity of each Proof of Claim submitted will be determined by the Claims Administrator, acting under Lead Counsel's supervision as necessary, in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall promptly advise the Class Member in writing if it rejects the claim or of any deficiency.  Lead Counsel, the Claims Administrator, Defendants and Defendants' Counsel shall not have any liability arising out of said determination.  In the event a Class Member disagrees with such determination by the Claims Administrator to reject a claim, the dispute shall be submitted to the Court for summary resolution.  Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to that Class Member's claim to the settlement.

(d)    Except as otherwise ordered by the Court, any Class Member who fails to return a timely and signed Proof of Claim form consistent with the procedures set forth in this Section shall be barred from receiving a distribution from the Net Settlement Fund, but shall nevertheless be bound by and subject to this Stipulation, the Final Judgment, and all proceedings,

rulings, orders, and judgments in this Action, including, without limitation, the release of the Released Claims and the dismissal with prejudice of this Action. Notwithstanding the foregoing, Lead Counsel may, in their sole discretion, accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

(e)    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice mailed to Class Members and approved by the Court. The Defendants shall have neither the right nor the duty to participate in the manner in which the Net Settlement Fund is distributed to the Class. The Plan of Allocation shall not be a part of the Stipulation and any order or proceeding related to said Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Final Judgment approving this Stipulation and the Settlement it describes, or any other orders entered pursuant to this Stipulation.

(f)    This is not a claims-made settlement. As of the Effective Date, the Defendants shall not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Proof of Claim forms that are submitted, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel shall reallocate such balance among Authorized Claimants provided it is economical to distribute such balance in an equitable manner. If it is not economical to do so, or if there is any balance remaining after a second distribution to Authorized Claimants, any balance which still remains in the Net Settlement Fund shall be donated to one or more appropriate not-for-profit organizations. Any

orders or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation, and shall have no effect on the Final Judgment becoming final.

       5.5          No Person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel or any Claims Administrator based on distributions, determinations, or claim rejections made substantially in accordance with the Settlement Agreement contained herein, the Plan of Allocation, or further orders of the Court. No Person shall have any claim against Defendants or Defendants' Counsel, based on any distributions, determinations, or claim rejections.

**6     RELEASES**

       6.1          Upon the Effective Date, each and every Lead Plaintiff and Class Member, and any of their heirs, executors, administrators, successors or assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against each and all of the Released Persons, whether or not such Class Member submits a timely and valid Proof of Claim form, and the Action shall be dismissed with prejudice.

       6.2          Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Class Members, the Lead Plaintiffs, and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims.

       6.3          Unless otherwise provided for herein, or unless the Court orders otherwise, only those Class Members filing valid and timely Proof of Claim forms shall be entitled to receive a distribution from the Net Settlement Fund. All Class Members shall be

bound by the releases set forth in this section whether or not they submit a valid and timely Proof of Claim form.

6.4         With respect to any and all Unknown Claims and Released Claims against the Defendants and the Released Persons, the Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall knowingly, voluntarily, intentionally and expressly waive and relinquish, and each of the other Class Members shall be deemed to have, and by operation of the Final Judgment shall have, knowingly, voluntarily, intentionally and expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by § 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs shall also knowingly, voluntarily, intentionally and expressly waive and relinquish, and each of the other Class Members shall be deemed to have, and by operation of the Final Judgment shall have, knowingly, voluntarily, intentionally and expressly waived any and all provisions, rights and benefits conferred by law of any state or territory of the United States, or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  The Lead Plaintiffs and the other Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the Unknown Claims and Released Claims, but hereby stipulate and agree that upon the Effective Date, the Lead Plaintiffs fully, finally, and forever settle and release, and each other Class Member shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally and forever settled and released any and all Unknown Claims and Released Claims against the Defendants and the Released Persons, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or

hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to subsequent discovery or existence of such different or additional facts. The Parties acknowledge that the foregoing waiver was bargained for and a key element of the Settlement of which the release in this subsection is a part.

6.5        The Lead Plaintiffs and the other Class Members further covenant that they will refrain from commencing any action, suit, arbitration or administrative proceeding, or prosecuting any pending action, suit, arbitration or administrative proceeding, in law or in equity, asserting any of the Released Claims against the Released Persons. In the event that any Lead Plaintiff or Class Member commences or continues any such action, suit, arbitration or administrative proceeding, any Released Person shall be entitled to seek an order from the Court enjoining the continuation of such action, suit, arbitration or administrative proceeding.

6.6        This Stipulation may be pleaded as a full and complete defense to any action, suit, arbitration or administrative proceeding instituted, prosecuted or attempted against any Released Person with respect to any of the Released Claims. The Lead Plaintiffs, Class Members and Defendants agree that any such proceeding would cause irreparable injury to the Party against which it is brought and that the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

## 7        FEE AND EXPENSE AWARD

7.1        Lead Counsel may submit an application on behalf of themselves and other Plaintiffs' counsel for a Fee and Expense Award to be distributed from the Settlement Fund. Such application must be submitted in such a manner that it may be heard at the Fairness Hearing, and must be consistent with the description in the Notice of the fees and expenses that

would be sought.   Lead Counsel may make additional applications for reimbursement of expenses (including Notice and Administration Expenses) incurred subsequent to their initial application for a Fee and Expense Award.

7.2        Any Fee and Expense Award shall become payable to Lead Counsel, on behalf of all Plaintiffs' Counsel, from the Settlement Fund immediately after entry of both the Final Judgment and the Fee and Expense Award.  Lead Counsel shall thereafter allocate the Fee and Expense Award payable to Lead Counsel among all Plaintiffs' Counsel in a manner that, in Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Action.  If the Final Judgment is reversed or modified on appeal, if the Effective Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 9.2, Section 9.3, or Section 10.3 of this Stipulation, then any Fee and Expense Award is no longer payable.  And in the event that any portion of the Fee and Expense Award had been paid from the Settlement Fund, Lead Counsel shall, within five (5) business days from the reversal or modification of the Final Judgment, the event which precludes the Effective Date from occurring, or the termination of the Settlement Agreement pursuant to Section 9.2, Section 9.3, or Section 10.3 of this Stipulation, as applicable, refund to the Settlement Fund the Fee and Expense Award paid to Lead Counsel, respectively, and in addition shall pay into the Settlement Fund interest on the amount refunded at the average rate earned on the Settlement Fund from the time of payment until the date of refund.  As a condition of receiving any Fee and Expense Award, Lead Counsel, on behalf of themselves and each of their partners, agree that their law firms and their partners are subject to the jurisdiction of the Court for the purpose of enforcing this Section 7.2 of this Stipulation.  Lead Counsel, and each of them, expressly agree that they will be jointly and severally liable for refunding the Fee and Expense Award.  Without

limitation, Lead Counsel and its partners agree that the Court may, upon application of Defendants or Defendants' Counsel and upon notice to Lead Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them should such Lead Counsel fail timely to refund any Fee and Expense Award and pay interest pursuant to this Section 7.2.

7.3        Defendants, Defendants' Counsel and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel or any other Person who receives payment from the Settlement Fund.

7.4        Defendants, Defendants' Counsel and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any Fee and Expense Award that the Court may make.  The Defendants, Defendants' Counsel and the Released Persons shall have no authority or responsibility for, or liability whatsoever with respect to, the allocation of any Fee and Expense Award by Lead Counsel and/or any other claim that any Person may assert as to any Fee and Expense Award.

7.5        The procedures for and the allowance or disallowance by the Court of an application for a Fee and Expense Award to be paid out of the Settlement Fund are not part of the Settlement set forth in this Stipulation and are to be considered by the Court at the Fairness Hearing, but separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  None of the Parties may terminate or cancel the Settlement Agreement on the basis of the amount of any Fee and Expense Award. Any order or proceedings related to any application for a Fee and Expense Award by Lead Counsel or any appeal from any order relating to such a Fee and Expense Award or any reversal

or modification thereof shall not modify, terminate or cancel this Stipulation or affect or delay the finality of the Final Judgment approving the Stipulation and the Settlement of the Action.

## 8    FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

8.1        Upon the Court's approval of this Settlement Agreement, a Final Judgment, substantially similar in all material respects to that annexed as Exhibit B hereto shall be entered, which shall, among other things:

(a)        find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve this Settlement Agreement and all exhibits thereto;

(b)        approve the Settlement as (i) fair, reasonable, and adequate, (ii) consistent and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the PSLRA, the rules of the Court, and any other applicable law, and (iii) in the best interests of all Class Members;

(c)        direct the Parties and their counsel to implement and consummate this Settlement Agreement according to its terms and provisions;

(d)        declare this Settlement Agreement to be binding, as to the Released Claims, on Lead Plaintiffs and all other Class Members, as well as their heirs, executors, administrators, successors, and assigns;

(e)        find that the Notice, the Summary Notice and the method of providing notice set forth in the Preliminary Approval Order: (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of their right to request exclusion from the Class, object to the proposed Settlement and their right to appear at the Fairness Hearing; (iii) were reasonable and constituted due, adequate,

and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the PSLRA, the rules of the Court, and any other applicable law;

(f) find that Lead Counsel and the Lead Plaintiffs adequately represented the Class consistent with Rules 23(a)(4) and 23(g) of the Federal Rules of Civil Procedure for purposes of entering into and implementing the Settlement;

(g) find that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure;

(h) dismiss the Action on the merits and with prejudice, and without fees or costs to any Party except as provided in this Settlement Agreement;

(i) completely discharge, settle, dismiss with prejudice, release, and permanently bar and enjoin the assertion, prosecution, or continuation by any Lead Plaintiff or any Class Member (and any of their heirs, executors, administrators, successors or assigns) of any Released Claim, including any Unknown Claim, either directly or indirectly, representatively, derivatively or in any other capacity, against each and every Released Person; provided, however, that the Final Judgment shall not bar any action or claim to enforce the terms of the Settlement as approved by the Court or the Final Judgment; and

(j) without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to any award of attorneys' fees and expenses to Lead Counsel on behalf of Plaintiffs' Counsel, all matters relating to the administration, consummation, enforcement, and interpretation of this Settlement Agreement and the Final Judgment, and for any other necessary purpose.

### 9     CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

9.1         The terms and provisions of this Settlement Agreement may only be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Judgment, the Parties may by written agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Final Judgment and do not (i) materially limit the rights of Class Members under the Settlement Agreement; or (ii) materially limit the rights of the Released Persons under the Settlement Agreement.

9.2         This Settlement Agreement will terminate at the sole option and discretion of Lead Plaintiffs or Defendants if (i) the Court or any appellate court rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to Notice, and/or the terms of the Releases; (ii) the Court or any appellate court does not enter or completely affirm, or modifies or expands, any portion of the Preliminary Approval Order or Final Judgment that the terminating Party reasonably and in good faith believes is material.  The terminating Party must exercise the option to withdraw from and terminate this Settlement Agreement as provided in this Section 9.2 by providing written notice of said termination to all other Parties hereto no later than twenty (20) days after receiving actual notice of the event prompting the termination.

9.3         No later than seven (7) days before the Fairness Hearing, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if valid and timely requests for exclusion are received from Class Members who, in the aggregate, purchased an amount greater than five percent (5 %) of the aggregate number of damaged shares of Viisage common stock purchased by all Class Members during the Class Period.  Requests for exclusion that were not timely submitted, that were timely and validly withdrawn, or that failed to provide all of the information required by this Settlement Agreement shall not be counted.  Solely for purposes of this Section 9.4, the Parties stipulate that the aggregate number of damaged shares of Viisage common stock purchased by all Class Members during the Class Period is 14 million shares. Lead Counsel shall provide to Defendants' Counsel, within three (3) days after such requests are received (but in no event less than ten (10) days prior to the Fairness Hearing), the aggregate number of shares of Viisage common stock purchased during the Class Period by Class Members who submit valid and timely requests for exclusion.

9.4         If an option to withdraw from and terminate this Settlement Agreement arises under Section 9.2 or Section 9.3 of this Stipulation, (i) neither Defendants nor Lead Plaintiffs will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of the Defendants or Lead Plaintiffs, respectively.

9.5         In addition to all of the rights and remedies that Lead Plaintiffs and Lead Counsel have under the terms of this Stipulation,  Lead Plaintiffs shall also have the right to terminate the Settlement in the event that Defendants do not pay or cause to be paid the Settlement Amount as provided in Section 2.1 above, by providing written notice of their

election to do so to all other Parties to this Stipulation no later than ten (10) days after such failure.

        9.6        If the Effective Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 9.2, Section 9.3 or Section 9.5 of this Stipulation, then:

        (a)        this Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section 9.6 and Sections 7.2 and 10.5;

        (b)        this Settlement Agreement, all of its provisions, and all negotiations, statements, documents and proceedings relating to it shall be without prejudice to the rights of Defendants, Lead Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions vis-à-vis each other as they existed immediately before the execution of this Settlement Agreement;

        (c)        the Released Persons expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action;

        (d)        Lead Plaintiffs and their current and former predecessors, successors, heirs, agents, attorneys, representatives, and assigns, individually and on behalf of the Class, expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action;

        (e)        neither this Settlement Agreement, nor the fact of its having been made, nor any documents prepared and statements made in connection therewith shall be referred to, admissible in or introduced or entered into evidence in any other way for any purpose whatsoever in this Action or in any other action or proceeding;

(f)     Lead Counsel shall, within ten (10) days, authorize the Escrow Agent to immediately return to Defendants' Counsel, in accordance with their instructions, the Settlement Amount (plus any interest accrued thereon) less any Notice and Administration Expenses paid out of, or incurred by, the Settlement Fund, and less any Taxes and Tax Expenses paid out of, or incurred by, the Settlement Fund; and

(g)     any order or judgment entered after the date of this Settlement Agreement that relates to this Settlement Agreement shall be deemed vacated and will be without any force or effect.

9.7     Neither a modification nor a reversal by the Court or any appellate court of any Plan of Allocation or of any Fee and Expense Award shall constitute grounds for cancellation or termination of this Stipulation.

9.8     Upon the Effective Date, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

## 10     GENERAL MATTERS

10.1     The Parties (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the full extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.

10.2     The Parties intend this Stipulation to be a final and complete resolution of all disputes that have been asserted or that could have been asserted by the Lead Plaintiffs and Class Members against the Released Persons with respect to the Released Claims or the Action. The Settlement compromises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith and at arm's length

by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent and experienced legal counsel.  The Parties and their counsel agree not to contend in any forum that the Action was brought or defended in bad faith or without a reasonable basis and reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any forum that the Action was brought or defended in bad faith or without a reasonable basis.

10.3    If a case is commenced under Title 11 of the United States Code (Bankruptcy) in respect of any Person contributing funds to the Settlement Amount on behalf of any Defendant, or a trustee, receiver or conservator is appointed as to any such Person under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by such Person to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be, and is capable of being, returned or disgorged by the Settlement Fund and is so returned or disgorged, and replacement funds are not promptly deposited into the Settlement Fund by Defendants, then, at the election of Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the releases given and Final Judgment entered in favor of the Defendants pursuant to this Stipulation, which releases and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as of the day immediately prior to the execution of this Stipulation and any amounts in the Settlement Fund shall be returned as provided in Section 9.6.

10.4    By executing this Settlement Agreement, Defendants do not intend to, and do not, release any claim against any insurer for any amount to be paid into the Settlement Fund,

or for any costs or expenses, including attorneys' fees and costs Defendants have incurred in connection with this Action.

   10.5   Neither this Settlement Agreement, whether or not it is consummated and whether or not it is terminated, nor any of its provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, nor any matter arising in connection with such negotiations, proceedings or agreements, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement: (i) is or may in any event be deemed or construed to be or may be offered or received in evidence or used as or deemed to be an admission or evidence of a presumption, concession or admission by any Defendant of the truth of any fact alleged in the Complaint or the validity of any Released Claim or of any wrongdoing, liability, negligence or fault by any Defendant, or a presumption, concession or admission by any Lead Plaintiff or member of the Class as to the infirmity of any fact alleged in the Complaint, viability of any Released Claim, or lack of wrongdoing, liability, negligence or fault by any Defendant; (ii) is or may be deemed to be or may be referred to or used as an admission or evidence of a presumption, concession or admission with respect to any fault or omission, or lack thereof, of the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of the Settlement Agreement, the Settlement or the Final Judgment; (iii) is or may be used as an admission or evidence that the claims of Lead Plaintiffs' or Class Members in the Action did not have merit; (iv) is or may be used or construed against any Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered by Lead

Plaintiffs, on behalf of the Class, after trial; (v) is or may be used or construed or received in evidence as an admission, concession or presumption by Defendants that any damages were recoverable under the Complaint or by Lead Plaintiffs that the damages recoverable under the Complaint would not have exceeded the Settlement Amount. Defendants may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. Any Party may file this Settlement Agreement and/or the Final Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or the Final Judgment.

10.6    All agreements made during the course of this Action, relating to the confidentiality of documents or other information produced during pre-trial discovery in this Action ("Discovery Material") shall survive this Settlement Agreement. All such Discovery Material that has been designated as "confidential" under said agreements, and all copies thereof, shall be returned or destroyed and counsel of record shall certify in writing within thirty (30) days after the Effective Date that all such confidential Discovery Material has been destroyed or returned.

10.7    All of the Exhibits to the Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

10.8    The Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except by a written instrument signed by or on behalf of all Parties or their successors-in-interest. The waiver by one Party of any breach of this Stipulation by any

other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

10.9      The Settlement Agreement and the Exhibits attached hereto constitute the sole and entire agreement among the Parties, and no representations, warranties, inducements, promises or agreements, oral or otherwise, have been made by or to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Any and all prior discussions, negotiations, agreements, commitments, and understandings related thereto are superseded hereby and merged herein.  Except as otherwise provided herein, each Party shall bear his, her, or its own fees and costs.

10.10     Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class which they deem appropriate.

10.11     Lead Plaintiffs and Lead Counsel represent and warrant that they have not assigned, encumbered or in any manner transferred in whole or in part any of the Released Claims.

10.12     Each counsel or other Person executing the Settlement Agreement or any of its Exhibits, or any related settlement documents, on behalf of any Party hereby warrants and represents that such Person has the full authority to do so and that such Person has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

10.13        This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Complete sets of original executed counterparts shall be filed with the Court and shall be exchanged among Lead Counsel and counsel for the Defendants.

10.14        The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, trustees, successors and assigns of the Parties, including any corporation, partnership or other entity into which any Party hereto may merge or consolidate.

10.15        The construction, interpretation, operation, effect and validity of this Settlement Agreement and any ancillary documents necessary to effectuate it, shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, excluding its conflict-of-law provisions, except to the extent that federal law requires that federal law governs. Any dispute relating to this Stipulation shall be brought exclusively in the United States District Court for the District of Massachusetts, and each of the Parties agrees not to contest subject matter jurisdiction or personal jurisdiction for any such dispute brought in this Court.  This is a mandatory forum selection clause.

10.16        The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the administration and consummation of the Settlement embodied therein.  All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

10.17        The Parties reserve the right, upon the agreement of all of them and subject to the Court's approval, to make any reasonable extensions of time or modifications to

the Exhibits that might be necessary to carry out any of the provisions of this Settlement Agreement.

10.18    All Parties agree that this Settlement Agreement was drafted by counsel for the Parties in good faith and at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Settlement Agreement was made or executed. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared or drafted by counsel for that Party.  It is recognized that this Stipulation was the result of arm's length negotiations between counsel for the Parties and that counsel for all Parties contributed substantially and materially to the preparation of this Stipulation.

10.19    The captions contained in this Stipulation are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Stipulation or the intent of any provision hereof.

10.20    In the event any one or more of the material provisions contained in this Stipulation shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Stipulation shall not be binding on a Party without the consent of such Party to the change resulting from such finding or holding.

10.21    By making their application for approval of this Settlement, Lead Counsel and Defendants' Counsel shall not be deemed to have waived any attorney-client or work product privilege or immunity and all information and documents transmitted between Lead Counsel and Defendants' Counsel in connection with this Settlement shall be inadmissible in accordance with Federal Rule of Evidence 408.

10.22    Unless otherwise indicated, any notice or other communication that may or must be given by any Party or its counsel, or by the Claims Administrator, under this Stipulation shall be in writing and shall be delivered by fax and by prepaid overnight mail to counsel for the Party or Parties to which such notice or communication is directed at the fax number and address for such counsel set forth below.

Dated: July 19, 2007

Jeffrey C. Block, Esq. (BBO# 6007470)
Leslie R. Stern, Esq. (BBO# 631201)
BERMAN DEVALERIO PEASE
        TABACCO BURT & PUCILLO
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

**Plaintiffs' Liaison Counsel**

Jeffrey A. Klafter, Esq. (*pro hac vice*)
KLAFTER & OLSEN LLP
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
KLAFTER & OLSEN LLP
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 261-3553

10.22      Unless otherwise indicated, any notice or other communication that may or must be given by any Party or its counsel, or by the Claims Administrator, under this Stipulation shall be in writing and shall be delivered by fax and by prepaid overnight mail to counsel for the Party or Parties to which such notice or communication is directed at the fax number and address for such counsel set forth below.

Dated: July  23, 2007

_____

Jeffrey C. Block, Esq.  (BBO# 6007470
Leslie R. Stern, Esq. (BBO# 631201)
BERMAN DEVALERIO PEASE
        TABACCO BURT & PUCILLO
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

**Plaintiffs' Liaison Counsel**

_____

Jeffrey A. Klafter, Esq. (*pro hac vice*)
KLAFTER & OLSEN LLP
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
KLAFTER & OLSEN LLP
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C.  20036
(202) 261-3553

Vincent R. Cappucci. Esq.
Stephen D Oestreich, Esq.
Robert N. Cappucci, Esq.(*pro hac vice*)
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

**Lead Counsel for Lead Plaintiffs**

Mitchell H. Kaplan, Esq. (BB0# 258940)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

**Counsel for Defendants Viisage Technology, Inc.
Bernard C. Bailey, William K. Aulet, Denis K.
Berube, Marcel Yon, Buddy G. Beck, Charles A.
Levine, Thomas J. Reilly, Harriet Mouchly-
Weiss, Paul T. Principato, and Peter Nessen**

Vincent R. Cappucci. Esq.
Stephen D Oestreich, Esq.
Robert N. Cappucci, Esq.(*pro hac vice*)
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

**Lead Counsel for Lead Plaintiffs**


Mitchell H. Kaplan, Esq. (BB0# 258940)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

**Counsel for Defendants Viisage Technology, Inc.
Bernard C. Bailey, William K. Aulet, Denis K.
Berube, Marcel Yon, Buddy G. Beck, Charles A.
Levine, Thomas J. Reilly, Harriet Mouchly-
Weiss, Paul T. Principato, and Peter Nessen**

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

**In re VIISAGE TECHNOLOGY, INC.
SECURITIES LITIGATION**

---

**This Pleading Applies to: All Actions**

**Civil Action No. 05-cv-10438-MLW**

---

## [PROPOSED] ORDER CERTIFYING THE CLASS, PRELIMINARILY APPROVING
## SETTLEMENT AND PROVIDING FOR NOTICE TO THE CLASS

WHEREAS:

A.      Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC,
Ronald Sauer, David Hancock and Lance Hancock ("Lead Plaintiffs"), on behalf of themselves and
the Class certified herein, and Defendants Viisage Technology, Inc. (now known as L-1 Identity
Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G.
Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter
Nessen (collectively, "Defendants") have entered into a Settlement of the claims asserted in the
Action, the terms of which are set forth in a Stipulation of Settlement and annexed exhibits dated
July 19, 2007 (collectively, the "Settlement Agreement");

B.      Lead Plaintiffs and Defendants have moved, pursuant to Rule 23 of the Federal Rules
of Civil Procedure, for an order certifying the class defined herein, for settlement purposes only,
preliminarily approving the Settlement in accordance with the terms and conditions of the Settlement
Agreement and directing the issuance of notice to the class in accordance with the Settlement
Agreement; and

C.      The Court, having read and considered the Settlement Agreement, including the
proposed Notice of Pendency and Proposed Settlement of Class Action, Application For Attorneys'

Fees and Expenses and Fairness Hearing (the "Notice"), the proposed Summary Notice of Pendency and Proposed Settlement of Class Action, Application For Attorneys' Fees and Expenses and Fairness Hearing (the "Summary Notice"), the proposed Proof of Claim form, and the proposed Final Judgment and Order of Dismissal with Prejudice, Lead Plaintiffs' Motion for Certification of a Settlement Class and for Preliminary Approval of Proposed Settlement, and having held a hearing on said motion on August __, 2007, finds that substantial and sufficient grounds exist for entering this Preliminary Approval Order.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      This Preliminary Approval Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement.

2.      The Court finds that a class consisting of all Persons who purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive (the "Class Period"), excluding: (i) the Defendants herein, the directors, officers and employees of Viisage, the members of each Individual Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submit valid and timely requests for exclusion from the Class pursuant to the instructions set forth in the Notice, should be certified for settlement purposes pursuant to Fed. R. Civ. Pro. 23 for the following reasons:

(a)      As approximately 14 million shares were of Viisage common stock were purchased by Class Members during the Class Period, the number of members of the Class are likely so numerous that joinder of all Class Members would be impracticable;

(b)      There are questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class Members, including: (i)

- 2 -

whether defendants violated the federal securities laws; (ii) whether defendants misrepresented material facts; (iii) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (iv) whether defendants knew, or recklessly disregarded that their statements were false and misleading; and (v) whether the members of the Class have sustained damages proximately caused by the alleged misrepresentations and omissions, and, if so, what is the appropriate measure of damages.

(c)　　Lead Plaintiffs' claims are typical of the claims of the members of the Class because Lead Plaintiffs and all of the Class Members sustained damages arising out of the same wrongful conduct at issue in this Action;

(d)　　Lead Plaintiffs have demonstrated that they have fairly and adequately protect the interests of Class Members and have retained counsel who are experienced and competent in class and securities litigation.  Lead Plaintiffs have no interests that are contrary to or in conflict with the members of the Class Lead Plaintiffs seek to represent;

(e)　　A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since: (i) joinder of all members is impracticable; (ii) the damages allegedly suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs allegedly done to them, and no Class Member has commenced a separate individual action concerning the claims at issue here; (iii) it is desirable to resolve the Class' claims in this one forum; and (iv) there are no difficulties likely to be encountered in the management of this action as a class action.

3.　　The Court appoints Lead Counsel as Class Counsel pursuant to Fed. R. Civ. Pro. 23(g).

4.　　The Court preliminarily approves the Settlement of this Action on the terms and conditions set forth in the Settlement Agreement as being sufficiently fair, reasonable, and adequate

to warrant sending notice of the proposed Settlement to Class Members and further consideration of the Settlement at the Fairness Hearing described below.

5.     A hearing (the "Fairness Hearing") will be held on _____, 2007 at ____ __.m. in Courtroom 13 of the United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210, to consider, among other things, whether the proposed Settlement of the Action on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; whether the proposed Plan of Allocation of the Net Settlement Fund is fair, reasonable, and adequate and should be approved by the Court; whether a Final Judgment substantially in the form of Exhibit B to the Settlement Agreement should be entered in this Action; and to consider Lead Counsel's application for a Fee and Expense Award to Plaintiffs' Counsel.  The Court expressly reserves the right to adjourn the Fairness Hearing from time to time without any further written notice to Class Members.

6.     The Court approves the form, substance, and requirements of the Notice and the Summary Notice (together, the "Notices") and the Proof of Claim form annexed hereto, and finds that the procedures established for publication, mailing, and distribution of the Notices, as set forth in paragraphs 7 through 9 of this Preliminary Approval Order: (a) constitute the best notice practicable under the circumstances and are reasonably calculated to apprise Class Members of the proposed Settlement and their right to object thereto; (b) constitute reasonable, due, adequate, and sufficient notice of the Fairness Hearing and of the rights of persons and entities in the Class with respect thereto; and (c) meet all applicable requirements of the Federal Rules of Civil Procedure (including Rule 23(c)), the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, the Rules of this Court, and any other applicable law.

- 4 -

7.     The Court appoints A.B. Data, Ltd. (the "Claims Administrator") to administer the notice procedure as well as the processing of claims under the supervision of Lead Counsel, as more fully set forth below:

(a)     Not later than twenty-eight (28) days after the entry of this Preliminary Approval Order (the "Notice Date"), the Claims Administrator shall cause copies of the Notice and the Proof of Claim form, substantially in the forms annexed hereto as Exhibits 1 and 2, respectively, to be mailed by first-class mail, postage prepaid, to all potential Class Members that can be identified with reasonable effort; and

(b)     Not later than ten (10) days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form annexed hereto as Exhibit 3, to be published once in the national edition of the *Wall Street Journal*.

8.     No later than seven (7) days prior to the Fairness Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of the mailings and publication required in paragraph 7 of this Preliminary Approval Order.

9.     The Claims Administrator shall ask nominees that hold shares of Viisage that were purchased during the Class Period to mail copies of the Notice and the Proof of Claim form to the beneficial owners of those Viisage shares within ten (10) days after receipt thereof, or to send a list of the names and addresses of such beneficial owners to the Claims Administrator within ten (10) days of receipt thereof, in which event the Claims Administrator shall promptly mail copies of the Notice and Proof of Claim form to such beneficial owners.

10.     Lead Counsel is authorized to pay any and all Notice Costs up to $150,000.00 out of the Settlement Fund without further order of the Court.  Any .reimbursement of banks, brokerage houses, or other nominees for costs of mailing notices to beneficial owners of Viisgae shares who are potential Class Members shall be limited to out-of-pocket expenses that would not have been

incurred except for the sending of such notices.  Any dispute concerning such reimbursement shall be resolved by this Court.

11.     Any member of the Class who wishes to be excluded from the Class must submit a request for exclusion, in accordance with the instructions in the Notice, to the Claims Administrator, by first class mail no later than fourteen (14) days before the Fairness Hearing.  All persons who submit valid and timely requests for exclusion in the manner set forth in the Notice shall have no rights under the Settlement Agreement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by  any of the terms and provisions of the Settlement Agreement, including the Releases defined in Section 6 thereof, or any proceedings, rulings, orders, and judgments in this Action..  The Claims Administrator shall provide copies of requests for exclusion to  Lead Counsel and Defendants' Counsel, within three (3) days after such requests are received, and at least ten (10) days before the Fairness Hearing.  Any Class Member who does not submit a valid and timely written request for exclusion from the Class in accordance with the instructions in the Notice is a Class Member and shall be bound by all of the terms and provisions of the Settlement Agreement, including the Releases defined in Section 6 thereof, and by all proceedings, rulings, orders, and judgments in this Action, whether favorable or unfavorable to the Class.

12.     Any Class Member who wishes to participate in the distribution of the Net Settlement Fund must sign and return a completed Proof of Claim form in accordance with the instructions contained therein and in the Notice.  All Proof of Claim forms must be submitted  by first-class mail, postmarked no later than _____, 2007 or such other time as may be set by the Court.  If a Class Member chooses to return his, her, or its Proof of Claim form in a manner other than by first-class mail, then it must be actually received at the address on the Proof of Claim form no later than _____, 2007 or such other date as may be set by the Court.  Except as otherwise ordered by the Court, any Class Member who fails to return a timely and signed Proof of Claim form shall be barred from receiving a distribution of the Net Settlement Fund, but shall nevertheless be bound by

and subject to the Settlement Agreement, the Final Judgment, and all proceedings, rulings, orders, and judgments in this Action, including, without limitation, the release of the Released Claims and the dismissal with prejudice of this Action. Notwithstanding the foregoing, Lead Counsel may, in their sole discretion, accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

13.    Any Class Member may enter an appearance in the Action, individually or through counsel of his, her or its own choice, at his, her or its own expense. Any Class Member who chooses not to enter an appearance in the Action will be represented by Lead Counsel.

14.    Pending final determination of whether the Settlement should be approved and the Court's entry of the Final Judgment, neither Lead Plaintiffs nor any other Class Member, either directly, representatively, or in any other capacity, shall institute, commence or prosecute any action or proceeding against any of the Released Persons, in any court or tribunal, that asserts any of the Released Claims.

15.    Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to any terms of the proposed Settlement Agreement, to the Plan of Allocation, or to Lead Counsel's request for a Fee and Expense Award must file with the Court (c/o Clerk of the Court, United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210), in the manner provided in the Notice and no later than fourteen (14) days before the Fairness Hearing or as the Court may otherwise direct, notice of the Class Member's intention to object, the grounds for such objection, and all papers the Class Member intends to present to the Court in opposition to the Settlement Agreement, the Plan of Allocation, or Lead Counsel's request for a Fee and Expense Award, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his, her or its objection. In addition to filing such papers and materials with the Court, the Class Member must serve copies of

such papers and materials, in the manner provided in the Notice, upon each of the following Lead

Counsel and Defendants' Counsel:

> Jeffrey A. Klafter, Esq.
> Kurt B. Olsen, Esq.
> KLAFTER & OLSEN LLP
> 1311 Mamaroneck Avenue, Suite 220
> White Plains, NY 10605
>
> Vincent R. Cappucci, Esq.
> Stephen D. Oestreich, Esq.
> Robert N. Cappucci, Esq.
> ENTWISTLE & CAPPUCCI LLP
> 280 Park Avenue
> 26th Floor West
> New York, NY  33432
>
> *Co-Lead Counsel for Lead Plaintiffs*
>
> Mitchell H. Kaplan, Esq.
> CHOATE HALL & STEWART LLP
> Two International Place
> Boston, MA 02110
>
> *Counsel for Defendants*

16.     Any Class Member may file an objection of the nature described in paragraph 14 on

his, her or its own or through an attorney hired at his, her or its own expense.  Any Class Member

who files and serves such an objection may, but is not required to, appear at the Fairness Hearing,

either in person or through an attorney hired at the Class Member's own expense.  If a Class Member

hires an attorney to represent him, her or it at the Fairness Hearing, the attorney must file a notice of

appearance with the Clerk of the Court and deliver a copy of that notice to Lead Counsel and

Defendants' Counsel, at the addresses set forth in paragraph 14 of this Order, no later than fourteen

(14) days before the date of the Fairness Hearing.

17.     Persons who intend to object to the Settlement <u>and</u> present evidence at the Fairness

Hearing must include in their written objections the identity of any witnesses they may seek to call to

testify and any exhibits they may seek to introduce into evidence at the Fairness Hearing.  Any Party

has the right to object to any testimony or other evidence that a person objecting to the Settlement seeks to introduce.

18.    Unless the Court otherwise directs, no member of the Class or other person shall be entitled to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for a Fee and Expense Award, or otherwise be heard at the Fairness Hearing, except by filing and serving written objections as described above and following the objection procedure in the Notice.  Any person who does not object in the manner prescribed above shall be deemed to have waived such objection in this or any other action or proceeding and shall be bound by all of the terms and provisions of the Settlement Agreement, and by all proceedings, rulings, orders, and judgments in this Action.

19.    No Person that is not a Lead Plaintiff, Class Member, Plaintiffs' Counsel, or the Claims Administrator shall have any right to any portion of the Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Settlement Agreement.

20.    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement, the Plan of Allocation, and/or further order(s) of the Court.

21.    All papers in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's application for a Fee and Expense Award shall be filed and served no later than seven (7) days prior to the Fairness Hearing.

22.    Neither this Order, the Settlement Agreement (whether or not it is consummated and whether or not it is terminated), nor any of their provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, nor any matter arising in connection with such negotiations, proceedings or agreements, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement: (i) is or may in any event be

deemed or construed to be or may be offered or received in evidence or used as or deemed to be an admission or evidence of a presumption, concession or admission by any Defendant of the truth of any fact alleged in the Complaint or the validity of any Released Claim or of any wrongdoing, liability, negligence or fault by any Defendant, or a presumption, concession or admission by any Lead Plaintiff as to the infirmity of any fact alleged in the Complaint, viability of any Released Claim, or lack of wrongdoing, liability, negligence or fault by any Defendant; (ii) is or may be deemed to be or may be referred to or used as an admission or evidence of a presumption, concession or admission with respect to any fault or omission, or lack thereof, of the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of the Settlement Agreement, the Settlement or the Final Judgment; (iii) is or may be used as an admission or evidence that Lead Plaintiffs' claims in the Action did not have merit; (iv) is or may be used or construed against any Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered by Lead Plaintiffs, on behalf of the Class, after trial; (v) is or may be used or construed or received in evidence as an admission, concession or presumption by Defendants that any damages were recoverable under the Complaint or by Lead Plaintiffs that the damages recoverable under the Complaint would not have exceeded the Settlement Fund.  Defendants may file the Settlement Agreement in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.  Any Party may file the Settlement Agreement in any action that may be brought to enforce the terms of the Settlement Agreement.

23.    At or after the Fairness Hearing, the Court shall determine whether the Plan of Allocation and Lead Counsel's application for a Fee and Expense Award shall be approved.  Neither

Defendants nor Defendants' Counsel shall have any responsibility for, or any liability whatsoever with respect to, any Plan of Allocation of the Net Settlement Fund or any application for a Fee and Expense Award. Such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. The Court may approve the Settlement with such modifications as may be agreed to, in writing, by the Parties, if appropriate, without further notice to the Class.

24.    This Court shall have exclusive jurisdiction over this Action, the implementation, administration and enforcement of the Settlement, the determination of all disputed questions of law and fact with respect to the validity of any claim or right of any person to participate in the distribution of the Net Settlement Fund, and any other matters arising out of or connected with the Settlement.

IT IS SO ORDERED.

Dated: _____

_____
HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, APPLICATION FOR ATTORNEYS'
FEES AND EXPENSES AND FAIRNESS HEARING**

**If You Bought Viisage Technology, Inc. ("Viisage") common stock during the period from May 12, 2004 through March 2, 2005,
inclusive., you could get a payment from the class action settlement described below.**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

THIS NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, APPLICATION FOR ATTORNEYS' FEES AND
EXPENSES AND FAIRNESS HEARING ("NOTICE") RELATES TO A PROPOSED SETTLEMENT OF CLASS CLAIMS ASSERTED IN
AN ACTION ENTITLED IN RE VIISAGE TECHNOLOGY, INC. SECURITIES LITIGATION, CIVIL ACTION NO. 05-cv-10438-MLW,
BROUGHT BY LEAD PLAINTIFFS TURNBERRY ASSET MANAGEMENT, ELECTRONIC TRADING GROUP, LLC, RONALD SAUER,
DAVID HANCOCK AND LANCE HANCOCK, ON BEHALF OF THEMSELVES AND THE CLASS DEFINED HEREIN (COLLECTIVELY,
"LEAD PAINTIFFS") AGAINST VIISAGE (NOW KNOWN AS L-1 IDENTITY SOLUTIONS, INC.), BERNARD C. BAILEY, WILLIAM K.
AULET, DENIS K. BERUBE, MARCEL YON, BUDDY G. BECK, CHARLES A. LEVINE, THOMAS J. REILLY, HARRIET MOUCHLY-
WEISS, PAUL T. PRINCIPATO AND PETER NESSEN (COLLECTIVELY, "DEFENDANTS").

THIS NOTICE EXPLAINS IMPORTANT RIGHTS YOU MAY HAVE INCLUDING YOUR POSSIBLE RECEIPT OF CASH
CONSIDERATION AS A RESULT OF THE SETTLEMENT AND ALSO CONTAINS A PROOF OF CLAIM FORM THAT YOU MUST
COMPLETE AND SUBMIT BY _____, 2007 IN ORDER TO BE ELIGIBLE TO SHARE IN THE SETTLEMENT. PLEASE READ
IT CAREFULLY!

- The proposed Settlement will provide $2.3 million in cash (the "Settlement Amount") to pay claims of investors who purchased
  Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive (the "Class Period").
  The only securities issued by Viisage that were publicly traded during the Class Period were its common stock. Lead Plaintiffs
  estimate that the average recovery per 100 damaged shares of common stock would be approximately $16.55 before the
  deduction of attorney, notice, administrative, and tax fees, costs, and expenses, as approved by the Court. The recovery is
  explained in greater detail below.  As is also explained below, the parties do not agree on the average amount of damages that
  would be recoverable if Lead Plaintiffs prevailed on all claims.

- The proposed Settlement will resolve a lawsuit over whether the Defendants violated federal securities laws as a result of issuing
  allegedly false and misleading public statements. The Defendants deny all allegations of wrongdoing.  Lead Plaintiffs believe that
  the proposed Settlement is in the best interests of the members of the Class in that it provides a significant benefit now, as
  compared to the risk that a smaller or no recovery would be achieved after a trial and appeals, possibly years in the future, in
  connection with which Defendants would have the opportunity to assert substantial defenses to the claims asserted on behalf of
  the Class.

- Lead Counsel intends to apply for an award of attorneys' fees on behalf of all plaintiffs' counsel (collectively, "Plaintiffs'
  Counsel") not to exceed 25% of the Settlement Amount. In addition, Lead Counsel intends to apply for reimbursement of
  expenses paid and incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of this Action, in an
  amount not to exceed $55,000.00. If Lead Counsel's Fee and Expense Application is approved by the Court, the average
  recovery per allegedly damaged share of common stock would be reduced by approximately $0.045.  Plaintiffs' Counsel have
  litigated this Action on a contingent-fee basis, and have advanced all of the expenses of litigation with the expectation that if
  they were successful in recovering money for the Class, they would receive attorneys' fees and be reimbursed for their
  expenses from the recovery, as is customary in this type of litigation.

- Your legal rights are affected whether you act, or do not act, so please read this Notice carefully.  If you have any questions
  concerning any matter contained in this Notice, you may contact any of the Lead Counsel identified below or the Claims
  Administrator as indicated on page __.

| YOUR LEGAL RIGHTS AND OPTIONS CONCERNING THE PROPOSED SETTLEMENT, FEE AND EXPENSE APPLICATION OR PLAN OF ALLOCATION: | |
|---|---|
| **SUBMIT A PROOF OF CLAIM FORM** | The only way to get a payment. |
| **REQUEST EXCLUSION FROM THE CLASS** | Get no payment, Preserve all rights. |
| **OBJECT** | Write to the Court about why you don't like the any of the above. |
| **APPEAR AT A HEARING** | Ask to speak in Court about any of the above. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options – **and the deadlines to exercise them –** are explained in this Notice.

- The issuance of this Notice is not intended to be an expression of the Court's opinion on the merits of any claim in the Action and
  the Court in charge of this case still has to decide whether to enter a judgment approving the proposed Settlement.  Payments will be
  made if the Court approves the proposed Settlement, after appeals are resolved, and after the completion of all claims processing.
  Please be patient.

- Any questions regarding the proposed Settlement should be directed to the following Plaintiffs' Lead Counsel: Robert N.
  Cappucci, Esq., Entwistle & Cappucci LLP, 1-212-894-7200 or Jeffrey A. Klafter, Esq., Klafter & Olsen LLP, 1-914-997-5656.

DO NOT CONTACT THE COURT

---

WHY DID I GET THIS NOTICE?

---

This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and pursuant to an Order of the United States District Court for the District of Massachusetts (the "Court"). The purpose of this Notice is to inform you: (1) that the Court has, for settlement purposes only, certified this action as a class action, on behalf of a class consisting of all persons who purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive, with certain exclusions set forth in the footnote below (the "Class");[1] (2) of the proposed settlement that has been reached in this class action between Lead Plaintiffs, individually and on behalf of the Class, and Defendants; (3) of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement and at which the Court may also consider approval of the Plan of Allocation and the application of Lead Counsel on behalf of all Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses, described below.

Pursuant to an Order of the Court dated _____, 2007, (the "Preliminary Approval Order"), the Fairness Hearing will be held at __:__ _.m. on _____, 2007, before the Honorable Mark L. Wolf in Courtroom 10 of the United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210.

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A MEMBER OF THE CLASS ("CLASS MEMBER") OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE PROPOSED SETTLEMENT. IF YOU WISH TO PARTICIPATE IN THE PROPOSED SETTLEMENT, YOU MUST SUBMIT THE ENCLOSED PROOF OF CLAIM FORM TO THE CLAIMS ADMINISTRATOR BY _____, 2007.**

---

WHAT RECOVERY DOES THE PROPOSED SETTLEMENT PROVIDE?

---

Pursuant to the Settlement described herein, the Defendants have agreed to pay or cause to be paid a total of $2,300,000 (the "Settlement Amount") for the benefit of the Class. The Settlement Amount, less notice and administration expenses and attorneys' fees and expenses awarded to Plaintiffs' Counsel (the "Net Settlement Fund") will be distributed in accordance with a plan of allocation (the "Plan of Allocation") described below. Under the proposed Plan of Allocation, the expected recovery from the proposed Settlement per 100 damaged shares of common stock would be approximately $16.55. However, your actual recovery from the Net Settlement Fund will depend on a number of variables including the number of Viisage shares of common stock you purchased during the Class Period,, whether those shares were held as of the close of the market on March 2, 2005 or sold on or before June 1, 2005, and the total number of shares for which timely and valid Proof of Claim forms have been submitted by Class Members ("Authorized Claimants"). See "How Much Will My Payment Be?", on page __ below.

---

WHAT MIGHT HAVE HAPPENED IF THE PARTIES HAD NOT AGREED TO THE PROPOSED SETTLEMENT?

---

Lead Plaintiffs and Defendants do not agree on the average amount of damages per share of Viisage common stock that would be recoverable if Lead Plaintiffs were to have prevailed on the Class' claims asserted in the Action which were not dismissed by the Court. The issues on which the Parties disagree include, among other things, the amount of damage, if any, allegedly caused by the alleged misrepresentations and omissions set forth in the claims that were not dismissed by the Court. If Lead Plaintiffs failed to establish any essential legal or factual element of their claims, neither they nor the Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their asserted challenges to recoverable damages, Plaintiffs would likely recover substantially less than the Settlement Amount of $2,300,000, or recover nothing.

---

[1] Excluded from the Class are: (i) the Defendants herein, the directors, officers and employees of Viisage, the members of each Individual Defendant's immediate families, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submit a valid and timely request for exclusion from the Class pursuant to the instructions set forth in this Notice.

**WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR?**

This securities class action was commenced on March 8, 2005, alleging violations of the federal securities laws on behalf of certain investors in Viisage. By Order dated January 19, 2006, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court appointed Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock, and Lance Hancock as Lead Plaintiffs and approved their selection of Klafter & Olsen LLP and Entwistle & Cappucci LLP as Lead Counsel in the Action ("Lead Counsel"). Lead Plaintiffs filed their Consolidated Amended Class Action Complaint on February 27, 2006 (the "Complaint"), which alleged, among other things, that Viisage issued press releases and filed documents with the Securities and Exchange Commission (the "SEC"), and that certain of the individual defendants made statements during conference calls with securities analysts, which contained materially false and misleading statements concerning: (1) litigation with which Viisage was involved in connection with a contract it had obtained from the Georgia Department of Motor Vehicle Safety ("DMVS") to provide secure drivers licenses for the State ("the Georgia DMVS Litigation"); and (2) Viisage's disclosure controls and internal financial controls. The Complaint further alleged that these materially false and misleading statements were made with knowledge of, or in reckless disregard of, the true facts. Lead Plaintiffs asserted in the Complaint that, in connection with this alleged wrongdoing, Defendants violated Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) (and Rule 10b-5 promulgated thereunder) and 20(a) of the Securities Exchange Act of 1934, and caused damages to Lead Plaintiffs and the members of the Class By their Complaint, Lead Plaintiffs sought money damages plus interest, costs and attorneys' fees from Defendants.

On April 3, 2006, Defendants filed their motion to dismiss the Complaint, which motion was opposed by Lead Plaintiffs. The Court held oral argument on Defendants' motion to dismiss on February 1, 2007, at which time, following extensive oral argument, the Court denied the motion to dismiss Lead Plaintiffs' claims concerning Viisage's disclosure controls and internal financial controls, but requested each of the parties to submit further briefing on Lead Plaintiffs' claims concerning the Georgia DMVS Litigation disclosures. These supplemental briefs were filed with the Court on February 14, 2007. The Court then held further argument concerning the Georgia DMVS Litigation disclosures on February 23, 2007, at which time the Court determined to allow Defendants' motion to dismiss those claims. On February 27, 2007, the Court entered an Order memorializing these rulings (the "February 27 Order").

The February 27 Order further directed the parties to, by April 27, 2007: (1) meet to discuss a possible settlement of the Action; (2) exchange certain information to assist the Parties in discussing settlement; and (3) report to the Court on the status of those discussions and to present a proposed scheduling order to govern the case in the event a settlement was not achieved. In accordance with the February 27 Order, Defendants' counsel provided Lead Counsel with seven hundred and seventy pages of documents concerning Viisage's disclosure and internal financial controls during the Class Period and Lead Counsel provided Defendants' counsel with documents and information concerning trading in Viisage common stock by certain of the Lead Plaintiffs.

**WHAT LED UP TO THE PROPOSED SETTLEMENT?**

In accordance with the February 27 Order, counsel for the Parties engaged in settlement discussions but were unable to reach agreement by April 27, 2007 and therefore negotiated and submitted a Proposed Joint Pretrial Scheduling Order ("Proposed Order") for the Court's approval on that date. However, as the Parties were still engaged in settlement negotiations, the Proposed Order contained a three-week delay before the commencement of formal discovery in which to conduct further negotiations. Despite the efforts of counsel for the Parties, during this three-week period, no agreement was reached. Accordingly, Defendants answered the Complaint on May 14, 2007 and the Parties were prepared to commence discovery upon entry of the Proposed Joint Pretrial Scheduling Order.

Following the submission of the Proposed Order, however, the Parties made further efforts to reach a settlement and finally reached an agreement-in-principle to settle this Action for the Settlement Amount on June 13, 2007, subject to the negotiation of a definitive stipulation of settlement and releases in forms satisfactory to counsel for all Parties, and approval of that stipulation of settlement by the Court. The proposed Settlement described herein is the product of extensive arm's-length negotiations between Lead Counsel and Defendants' Counsel.

**WHAT ARE THE REASONS FOR THE SETTLEMENT?**

Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit. However, they recognize and acknowledge the expense and length of continued proceedings necessary to prosecute this Action through

trial and appeals and the uncertain outcome of such proceedings.  In particular, Lead Plaintiffs and Lead Counsel have considered the likelihood of proving liability and damages on the internal control claims which the Court allowed to proceed to discovery.  Following extensive discovery, Defendants would have moved for summary judgment, which, if successful, would terminate the Action unless the grant of summary judgment could be reversed on appeal.  Lead Plaintiffs and Lead Counsel also took into account the issues which would have to be decided by a jury if summary judgment was denied, including whether any statement made by any of the Defendants was false, whether the Defendants acted with scienter (knowingly or recklessly), a predicate for liability on certain of Lead Plaintiffs' claims, whether each of the alleged misrepresentations and omissions were material, and the amount of any damages caused by the alleged misrepresentations and omissions.  Proof of damages caused by the alleged misrepresentations and omissions concerning Viisage's internal disclosure and financial controls would also be particularly problematic as Viisage made other disclosures in its announcement on March 2, 2005 in which Viisage first publicly disclosed material weaknesses in these controls.  Lead Plaintiffs and Lead Counsel have also taken into account the uncertain outcome and trial risk in complex actions such as this Action. Based upon consideration of these factors, which could have led to a smaller or no recovery at all after a trial and appeals, possibly years in the future, and balancing them against the certain and significant benefits that the Class will receive as a result of the proposed Settlement, Lead Plaintiffs and Lead Counsel determined that the proposed Settlement described herein is fair, reasonable and adequate and that it is in the best interests of the Class to settle the Action on the terms described herein.

Prior to agreeing to the proposed Settlement, Lead Counsel conducted an extensive investigation and discovery relating to the events and transactions underlying the claims. Lead Counsel also retained and had the benefit of experts in calculating damages in actions such as this.

## WHY HAVE THE DEFENDANTS AGREED TO THE PROPOSED SETTLEMENT?

Defendants have denied and expressly continue to deny any wrongdoing, fault, liability, violation of law or damage alleged in the Complaint and do not admit or concede any wrongdoing, fault, liability, violation of law or damage in connection with any facts or claims that have been or could have been alleged against them by the Lead Plaintiffs, but consider it desirable for the Action to be settled and dismissed because the proposed Settlement will (i) bring to an end the substantial expenses, burdens, risks and uncertainties associated with continued litigation of this Action; (ii) finally put to rest those claims and the underlying matters; and (iii) avoid further expense and disruption of the management and operation of Defendants' business due to the prosecution and defense of this Action.

## HOW MUCH WILL MY PAYMENT BE?

If the proposed Settlement is approved by the Court and you are entitled to a payment, your share of the Net Settlement Fund will depend on the number of valid Proof of Claim Forms that Class Members submit, the number of shares of Viisage common stock you purchased, and when you purchased or sold those shares, as described in the Plan of Allocation that is included at the end of this Notice.

By following the Plan of Allocation at the end of this Notice, you can calculate your "Recognized Loss."  The Claims Administrator will distribute the Net Settlement Fund according to the Plan of Allocation after all Proof of Claim forms have been processed, the Settlement has been approved by the Court, and any appeals have been resolved in favor of approval of the Settlement or the time for any appeals has expired.

## HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO?

To qualify for a payment out of the Net Settlement Fund, you must complete and sign the Proof of Claim form enclosed with this Notice and and mail it by First-Class mail to In re Viisage Technology, Inc. Securities Litigation, c/o A.B. Data, Ltd., Claims Administrator, _P.O. Box 170500, Milwaukee, WI 53217, postmarked no later than _____, 2007.  If a Class Member chooses to return his, her, or its Proof of Claim form in a manner other than by First-Class mail, then it must be actually received at the address on the Proof of Claim form no later than _____, 2007.

Review the Proof of Claim form and read the instructions carefully.  The Proof of Claim form must be supported by such documents specified in the Proof of Claim form as are reasonably available to you. The Proof of Claim form includes

the Releases set forth below. Any member of the Class who fails to submit a Proof of Claim form postmarked or received by _____, 2007, and who does not exclude himself, herself or itself from the Class, shall be forever barred from receiving any payments pursuant to the proposed Settlement described herein, but in all other respects will be subject to and bound by the provisions of any judgment entered, including but not limited to the releases included therein. This means that if the proposed Settlement is approved by the Court, each Class Member will be deemed to have released the Released Claims against the Released Persons, as defined below, and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Claims against the Released Persons regardless of whether or not you submit a Proof of Claim.  If you have any questions, or need assistance, call the Claims Administrator at (866) 217-4245 toll-free or send an e-mail to info@abdatalawserve, and someone will assist you.

## WHEN WILL I RECEIVE MY PAYMENT?

The Court will hold a hearing on _____, 2007 to consider whether to approve the proposed Settlement.  The Net Settlement Fund cannot be distributed until after the Court has approved the proposed Settlement and any appeals have been resolved in favor of its approval, or after the expiration of the time to file an appeal.  The resolution of any appeals could take more than a year.  In addition, the review and processing of Proof of Claim forms must be completed by the Claims Administrator before Net Settlement Fund distributions can be made.  Claims processing, by itself, is a complicated process and will take many months.  Please be patient.

## WHAT RIGHTS AM I GIVING UP TO RECEIVE A PAYMENT?

If you are a Class Member and if the proposed Settlement is approved by the Court and that approval becomes final, you, on behalf of yourself, your heirs, executors, administrators, successors, assigns, and any persons you represent, will release all "Released Claims," including all "Unknown Claims," against all "Released Persons" as follows:

(a)    "Released Claims" shall collectively mean any and all claims (including Unknown Claims (as defined below), debts, demands, liabilities, rights and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, based upon or related to the purchase of Viisage publicly traded securities during the Class Period and the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were or could have been alleged in the Action against any of the Released Persons, except claims to enforce the Settlement or any of its terms.

(b)    "Released Persons" means any and all of the Defendants, their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former employees, officers, and directors of each of them, the present and former trustees, attorneys, accountants, insurers, partners, principals, and agents of each of them, and the predecessors, heirs, executors, administrators, successors, and assigns of each of them, and any person or entity which is or was related to or affiliated with any Released Person or in which any Released Person has or had a controlling interest and the present and former employees, officers, directors, attorneys, accountants, insurers, partners, principals, and agents of each of them

(c)    "Unknown Claims" means any and all Released Claims that the Lead Plaintiffs or any other Class Members do not know or suspect to exist in their favor at the time of the release of the Defendants and the Released Persons including, without limitation, claims that, if known by them, might have affected their decisions to settle with and release the Defendants and the Released Persons, or might have affected their decisions whether to object to this Settlement.

(d)    If you are a Class Member, all of the Court's proceedings, rulings, orders, and judgments will apply to you and legally bind you.

## CAN I EXCLUDE MYSELF FROM THE CLASS?

YOU WILL BE EXCLUDED FROM THE CLASS ONLY UPON SPECIFIC WRITTEN REQUEST AS

DESCRIBED BELOW. If you request to be excluded, you will not be entitled to share in any recovery obtained by the Lead Plaintiffs by settlement or favorable judgment in the Action, including the Settlement with the Defendants described in this Notice. You also will not be bound by any judgment in favor of either the Lead Plaintiffs or Defendants.

You may request to be excluded from the Class by timely mailing a written Request for Exclusion, POSTMARKED ON OR BEFORE _____, 2007, to: In re Viisage Technology, Inc. Securities Litigation, c/o A.B. Data, Ltd., Claims Administrator, P.O. Box 170500, Milwaukee, WI 53217.

Your Request for Exclusion should include your name (and the name of any joint owner of Viisage common stock), your address, the number of shares of Viisage common stock purchased and sold by you during the Class Period, the date(s) of such purchase(s) and sale(s) and the price(s) paid and received, and should specifically state that you request to be excluded from the Class in the Action. Each individual requesting exclusion must personally sign a Request for Exclusion. In the case of a corporation or partnership requesting exclusion, an officer of the corporation or general partner must sign a Request for Exclusion.

| DO I HAVE A LAWYER IN THIS CASE? |
|---|

Yes.  The Court appointed Klafter & Olsen LLP and Entwistle & Cappucci LLP as Lead Counsel in the Action to represent all Class Members in this Action.  You will not be charged for these lawyers, although they will ask the Court to award them a portion of the Settlement Amount as a fee for the services of all Plaintiffs' Counsel to Lead Plaintiffs and the Class and to reimburse them for their expenses in prosecuting this Action.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| HOW WILL THE LAWYERS BE PAID? |
|---|

Lead Counsel for the Lead Plaintiffs will apply, on behalf of all Plaintiffs' Counsel, in one or more applications, to the Court for an award of attorneys' fees from the Settlement Amount of twenty-five percent (25_%) of the Settlement Amount, and reimbursement of expenses of no greater than $55,000.00 (The "Request for Attorneys' Fees and Expenses").  If this amount is awarded by the Court, the average estimated cost per allegedly damaged share is $0.045.  Plaintiffs' Counsel have spent more than two years litigating this Action on an entirely contingent-fee basis, and have advanced all of the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive attorneys' fees and be reimbursed for their expenses from any funds recovered on behalf of the Class, as is customary in this type of litigation.  Any amounts awarded by the Court will come out of the Settlement Amount.

| WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE PROPOSED SETTLEMENT, PLAN OF ALLOCATION AND REQUEST FOR ATTORNEYS' FEES AND EXPENSES? |
|---|

As noted above, the Fairness Hearing will be held on _____, 2007 at ____ __.m. in Courtroom 10 of the United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210, at which the Court will consider, among other things, whether the proposed Settlement of the Action on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; whether the proposed Plan of Allocation of the Net Settlement Fund is fair, reasonable, and adequate and should be approved by the Court; whether a Final Judgment substantially in the form of Exhibit B to the Settlement Agreement should be entered in this Action.  The Court expressly reserves the right to adjourn the Fairness Hearing from time to time without any further written notice to Class Members, other than notice posted at the Court on the date of the Fairness Hearing.  At or after the Fairness Hearing, the Court will also consider whether to approve Lead Counsel's Request for Attorneys' Fees and Expenses and the Plan of Allocation described herein.

| WHAT CAN I DO IF I DON'T LIKE THE PROPOSED SETTLEMENT, THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES, AND/OR THE PLAN OF ALLOCATION? |
|---|

If you are a Class Member, you can object to the Settlement, the Request for Attorneys' Fees and Expenses and/or the Plan of Allocation if you do not like any part of it.  If you object to the Settlement, the Request for Attorneys' Fees and Expenses and/or the Plan of Allocation, you can present reasons why you think the Court should not approve any of them.  To object, you must send a letter saying what you object to and the reasons for your objection.  Be sure to include the case name and number:  "*In re Viisage Technology, Inc. Securities Litigation*, Civil Action No. 05-cv-10438-MLW (D. Mass.)," your name, current address, telephone number, and signature, information concerning your purchase(s) and sale of Viisage common stock during the Class Period and through June 1, 2005, including the number of such shares purchased and sold, the dates of purchase and sale, the reason(s) you object to the proposed Settlement, the Request for Attorneys' Fees and Expenses and/or the Plan of Allocation, and all legal support you wish to bring to the Court's attention or evidence you have to support your objection.  You must mail or deliver copies of your objection and of any papers you would like to present to the Court to all of the people identified below such that they are *received* no later than _____, *2007:*

*The Court:*

Clerk of the Court
United States District Court for the District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts  02210

*Lead Counsel for Plaintiffs:*

Jeffrey A. Klafter, Esq.
KLAFTER & OLSEN LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, New York  10605

Robert N. Cappucci, Esq.
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, New York 10017

*Counsel for Defendants*:

Mitchell H. Kaplan, Esq.
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110

Any objection may be filed and served on your own or through an attorney hired at your own expense.  If you file and serve an objection, you may, but are not required to, appear at the Fairness Hearing, either in person or through an attorney hired at your own expense.  If you hire an attorney to represent you at the Fairness Hearing, the attorney must file a notice of appearance with the Clerk of the Court and deliver a copy of that notice to Lead Counsel and Defendants' Counsel, at the addresses set forth above, so that they are *received* no later than fourteen (14) days before the date of the Fairness Hearing.

ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED ABOVE WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION, AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT, THE FEE AND EXPENSE APPLICATION, AND/OR THE PROPOSED PLAN OF ALLOCATION, UNLESS THE COURT ORDERS OTHERWISE.

Class Members who do not object to the Settlement, Fee and Expense Application and Plan of Allocation need not appear at the Fairness Hearing.

WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND REQUESTING EXCLUSION?

Objecting is telling the Court that you do not like something about the Settlement, Plan of Allocation or Request

for Attorneys' Fees and Expenses. You can object only if you are a Class Member. If you submit a Request for Exclusion, that tells the Court that you don't want to be a Class Member, and therefore you cannot object because the Action no longer affects you.

---

**WHAT WILL HAPPEN IF I DO NOTHING AT ALL?**

---

If you fail to submit a timely Proof of Claim form in response to this Notice, you will not get any money from this Settlement. Whether or not you submit a timely Proof of Claim form, if you are a Class Member, you will not ever be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any Defendant or other Released Person asserting any of the Released Claims, as described above.

---

**WHAT IS THE PLAN OF ALLOCATION?**

---

The Plan of Allocation is the method by which the Net Settlement Fund will be allocated among Class Members who submit timely, valid and signed Proof of Claim forms ("Authorized Claimants"). It is the product of Lead Counsel's investigation and discovery, and consultation with their damage expert. In formulating this Plan of Allocation, Lead Counsel considered the applicable law governing the ability to recover damages for the alleged internal control claims – the only claims allowed to proceed by the Court.

Shortly following the commencement of this Action, the United States Supreme Court issued a decision concerning the ability of purchasers of securities to recover losses in a securities fraud action such as this. The Supreme Court held that to recover damages, a plaintiff must show a connection between the alleged misrepresentations and the loss. Since this decision, appellate courts have interpreted it to bar a recovery of losses absent a showing that any losses were caused by a public disclosure concerning the alleged fraud. Here, the first disclosure of material weaknesses in Viisage's internal controls occurred after the close of the market on March 2, 2005.

Specifically, on March 2, 2005, after the close of the market, Viisage issued a press release reporting its fourth quarter financial results, which largely conformed to the preliminary results announced by Viisage on February 7, 2005. Viisage also disclosed in its March 2, 2005 press release that "the Company determined that it had an internal control deficiency that constitutes a 'material weakness'. . ." Further, Viisage held a conference call with securities analysts at 8:00 am on March 3, 2005, during which it amplified on its internal control deficiencies and also indicated that Viisage expected fiscal year 2005 revenues to be "between $73 million and $80 million" as compared to security analyst then consensus revenue estimates of approximately $83 million. Further, contrary to its prior practice of providing guidance for Earnings Before Income Tax, Depreciation and Amortization ("EBITDA"), Viisage stated that "we have decided to not give specific guidance on that number. . . ." Following these disclosures, the price of Viisage common stock declined by $0.97 per share (or 17.7%) on March 3, 2005 (not taking into account the 2-for-5 reverse stock split in December 2005). Also, following Viisage's March 2 and 3, 2005 revelations, security analysts generally reduced their estimates and ratings on Viisage common stock due to Viisage's lowered revenue estimates and its internal control deficiencies. Parsing out the portion of the decline in Viisage's stock price on March 3, 2005 that plaintiffs contend was due to the internal control disclosures was the subject of an extensive disagreement among the parties and would have been hotly debated by expert witnesses retained by Lead Plaintiffs and Defendants. For purposes of this Plan of Allocation, given that security analysts focused on both Viisage's lowered revenue guidance <u>and</u> the internal control issues in their reports, it is assumed that 50% of the $0.97 decline per share of Viisage common stock on March 3, 2005 (or $0.485) was caused by the revelations concerning the alleged internal control misrepresentations and omissions.

Based on these factors, each Authorized Claimant's "Recognized Loss" will be calculated for purposes of the proposed Settlement as follows:

(a)     For shares of Viisage common stock <u>that were purchased during the period May 12, 2004 and March 2, 2005, inclusive, and still held as of the close of the market on March 2, 2005</u> (the end of the Class Period), the Recognized Loss per share shall be <u>the lesser of</u>: (1) $0.485; <u>and</u> (2) if sold prior to June 1, 2005 [the 90-day period after March 2, 2005], the difference between (x) the purchase price paid and (y) the sales price. If you did not incur a loss based upon shares of common stock purchased during the Class Period and sold during the period March 3, 2005 through and including June 1, 2005, then the Recognized Loss per share shall be $0.00.

(b)   For shares of Viisage common stock <u>that were purchased during the period May 12, 2004 and March 2, 2005, inclusive, and sold during the same period</u>, the Recognized Loss per share shall be $0.00 because both the purchase and sale occurred during a period when there was no public disclosure of a material weakness in Viisage's internal controls prior to the close of the market on March 2, 2005.  As a result, any losses on such transactions are not compensable pursuant to the federal security law claims asserted in this Action.

The date of purchase or sale is the "contract" or "trade" date as distinguished from the "settlement" date. The determination of the price received per share and the price paid per share shall be exclusive of commissions, taxes, fees and charges.

For purposed of calculating the Recognized Loss of an Authorized Claimant, the first in, first out ("FIFO") method will be used.  This means that sales of Viisage common stock will be first matched with any pre-Class Period holdings and then with purchases during the Class Period in chronological order. All profits determined on a FIFO basis shall be subtracted from the total of all losses determined on a FIFO basis from all transactions in Visage common  stock during the Class Period to determine if an Authorized Claimant has a Recognized Loss. If at any time more shares of Viisage common stock are sold than have been purchased during the Class Period, an initial balance of a corresponding number of shares will be imputed unless it is indicated on the Proof of Claim form.  <u>Only if an Authorized Claimant had a net loss, after the total of such profits are subtracted from the total of such losses, will such Authorized Claimant be eligible to receive a distribution from the Net Settlement Fund.</u>

Any person or entity who sold Viisage common stock "short" shall have no Recognized Loss with respect to any purchase during the Class Period to cover such short sale.

To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss.  If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Loss of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage that each Authorized Claimant's Recognized Loss bears to the total of the Recognized Losses of all Authorized Claimants.  As such, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.  The Court has reserved jurisdiction to allow, disallow, or adjust the Recognized Loss of any Class Member on equitable grounds.

***Please note that the term "Recognized Loss" is used solely for calculating the amount of participation by Authorized Claimants in the Net Settlement Fund, and does not reflect the actual amount an Authorized Claimant can expect to recover.***

No Authorized Claimant will have any claim against Lead Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or any other person designated by Lead Counsel, based on distributions made substantially in accordance with this Plan of Allocation, or further orders of the Court.  No Authorized Claimant or any other Person shall have any claim against Defendants or Defendants' Counsel based on the amounts of any distributions from the Net Settlement Fund, any determinations regarding that Person's eligibility to receive a distribution from the Net Settlement Fund, or any rejection of that Person's claim to receive a distribution from the Net Settlement Fund.

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you hold Viisage common stock that was purchased during the Class Period as nominee for a beneficial owner, then within ten (10) days after you receive this Notice, you must either:   (a) mail copies of this Notice and the accompanying Proof of Claim Form by first-class mail to each such beneficial owner; or (b) send a list of the names and addresses of such beneficial owners to the Claims Administrator at the following address:

*In re Viisage Technology, Inc. Securities Litigation*
c/o A.B. Data, Ltd., Claims Administrator
Attention: Fulfillment Department
P.O. Box 170500
4057 North Wilson Drive
Milwaukee, Wisconsin 53217

(800) 949-0192
Fax (414) 963-7950
fulfillment@abdatalawserve.com

---

**ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? WHO SHOULD I CONTACT IF I HAVE QUESTIONS?**

---

This Notice summarizes the proposed Settlement.  More details are contained in the formal Settlement Agreement which has been filed with the Court.  In addition, Lead Plaintiffs' submissions in support of the proposed Settlement, the Plan of Allocation and Lead Counsel's Fee and Expense Application will be on file with the Court on _____, 2007.  If you want a copy of the Settlement Agreement, Lead Plaintiffs' submissions in support of the proposed Settlement, the Plan of Allocation or Lead Counsel's Fee and Expense Application, or if you have any questions about these matters, you may: write to Lead Counsel at one of the addresses set forth above; write to the Claims Administrator at In re Viisage Technology, Inc. Securities Litigation, c/o A.B. Data, Ltd., Claims Administrator, P.O. Box 170500, Milwaukee, WI 53217 or call (866) 217-4245 toll-free..

***PLEASE DIRECT YOUR QUESTIONS TO THE CLAIMS
ADMINISTRATOR OR TO LEAD COUNSEL.  DO NOT
CONTACT THE COURT OR DEFENDANTS' COUNSEL WITH QUESTIONS.***

DATED: _____, 2007          BY ORDER OF THE UNITED STATES
                                                                   DISTRICT COURT FOR THE
                                                                   DISTRICT OF MASSACHUSETTS

EXHIBIT 2

## IN RE VIISAGE TECHNOLOGY, INC. SECURITIES LITIGATION

## PROOF OF CLAIM

IF YOU PURCHASED THE COMMON STOCK OF VIISAGE TECHNOLOGY, INC. ("VIISAGE") DURING THE PERIOD FROM MAY 12, 2004 THROUGH MARCH 2, 2005, INCLUSIVE, ("CLASS PERIOD"), AND WERE ALLEGEDLY DAMAGED THEREBY, YOU ARE A "CLASS MEMBER" AND YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE PROPOSED SETTLEMENT DESCRIBED IN THE ACCOMPANYING NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FAIRNESS HEARING ("NOTICE").[1]

IF YOU ARE A CLASS MEMBER, YOU MUST COMPLETE, SIGN AND SUBMIT THIS PROOF OF CLAIM FORM IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS AND MAIL IT BY FIRST-CLASS MAIL, POSTMARKED **NO LATER THAN _____, 2007** TO THE CLAIMS ADMINISTRATOR AT THE FOLLOWING ADDRESS:

In re Viisage Technology, Inc., Securities Litigation
c/o A.B. Data, Ltd.
Claims Administrator
Post Office Box 170500
Milwaukee, WI 53217

IF YOU CHOOSE TO RETURN THIS PROOF OF CLAIM FORM IN A MANNER OTHER THAN BY FIRST-CLASS MAIL, THEN IT MUST BE ACTUALLY RECEIVED

---

[1] If you do not have the Notice, you may download it from www.abdatalawserve.com, www.klaferolsen.com, www.entwistle-law.com or request it mailed to you by calling toll-free (866) 217-4245 or writing to the Claims Administrator.

BY THE CLAIMS ADMINISTRATOR AT THIS ADDRESS **NO LATER THAN** _____, **2007.**

## REQUIREMENTS FOR FILING A PROOF OF CLAIM

Your claim will be considered only upon compliance with all of the following conditions:

1.  You must accurately complete all portions of the attached Proof of Claim form.

    The Proof of Claim form contains purchase and sale schedules.  You must carefully complete each applicable section of the schedules.  List each transaction during the period from May 12, 2004 through June 1, 2005, inclusive, separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day and year of each transaction you list.  Do not omit to state any requested information regarding your holdings, purchases or sales (including any free receipts and/or free deliveries).  This information is necessary to determine your share of any distribution.  If you cannot list all transactions in the spaces provided in the Proof of Claim form, or if you believe that you must or should supply additional information with respect to any transaction, attach additional sheets to the Proof of Claim form supplying the required information.  Your full name must be properly identified on each additional sheet of paper.

2.  You must sign the Proof of Claim form.

    If the shares of Viisage common stock were or are owned jointly, all joint owners must sign the Proof of Claim form.  Executors, administrators, guardians, conservators and trustees may complete and sign the Proof of Claim form on behalf of persons or entities represented by them, but they must identify such persons or

entities and provide proof of their authority (for example, currently effective letters testamentary or letters of administration) to complete and execute the Proof of Claim form on their behalf and to bind them in accordance with the terms thereof.  A Proof of Claim form submitted by legal representatives of a claimant must be executed by all such representatives.

3.  You must attach to the Proof of Claim form legible copies of broker confirmation slips, monthly brokerage statements, or other proof satisfactory to A.B. Data confirming the particulars of each purchase and sale you have made during the period from May 12, 2004, through June 1, 2005, inclusive.  Please make sure that all supporting documentation states your account name.  If you are filing on behalf of a deceased claimant, please provide a copy of the death certificate and a will or probate documents.

4.  If you acquired Viisage common stock by means of a gift, inheritance or operation of law during the Class Period, such acquisitions do not qualify as part of the Settlement.

5.  Any person or entity who sold Viisage common stock "short" shall have no Recognized Loss with respect to any purchase during the Class Period to cover such short sale.

6.  **You must also provide supporting documentation showing your holdings as of the close of trading on May 11, 2004, and June 1, 2005, if any.**

7.  Your failure to complete and mail the Proof of Claim form postmarked, or submit it so that it is received, by _____, **2007**, may preclude you from receiving any share of the available proceeds of the Settlement.  So that you will have a record of the date of your mailing and its receipt by A.B. Data, you are advised to use certified mail, return receipt requested.

ANY PERSON WHO KNOWINGLY SUBMITS A FALSE PROOF OF CLAIM FORM IS SUBJECT TO PENALTIES FOR PERJURY AND OTHER VIOLATIONS OF FEDERAL LAW.

Submission of a Proof of Claim form, however, does not assure that you will share in the distribution of the Net Settlement Fund.

If the proposed Settlement is approved by the Court, and if you have a Recognized Loss entitling you to a *pro rata* payment from the Net Settlement Fund as calculated in accordance with the Plan of Allocation described in the accompanying Notice, a check will be sent to you, or too your financial institution by direct deposit if you elect, representing such *pro rata* share at an appropriate time after all Proof of Claim forms from all Class Members have been processed.  Processing all of the Proof of Claim forms will likely take a significant amount of time.  Please be patient, and please advise the Claims Administrator of any changes in your name and/or address.

**If you are a Class Member and you do not complete, sign and return the Proof of Claim form postmarked or received by the deadline, you will not receive any money from the Net Settlement Fund but you will still be bound by all orders of the Court in this action, including the Release reprinted in the Notice.**

## ***STATEMENT OF CLAIM***

Please print or type

I, _____, and _____ state as follows:

(if applicable)

LAST NAME (Claimant)            FIRST NAME (Claimant)

Last Name (Beneficial Owner if different from Claimant)            First Name (Beneficial Owner)

Last Name (Co-Beneficial Owner)            First Name (Co-Beneficial Owner)

Company/Other Entity (If Claimant is Not an Individual)

Trustee/Nominee/Other

Account Number (If Claimant is Not an Individual)            Trust/Other Date (If Applicable)

Address

Address

City                                            State        Zip Code

Foreign Province            Foreign Zip Code            Foreign Country

Telephone Number (Day)        Telephone Number (Night)

(          )          -              (          )          -

Beneficial Owner's Employer Identification Number      or    Social Security Number

E-mail Address

5

IDENTITY OF CLAIMANT
○ Individual   ○ Joint Owners   ○ Estate   ○ Corporation   ○ Trust   ○ Partnership   ○ Other (specify, describe on separate sheet)   ○ IRA, Keogh or other type of Individual Retirement Plan (indicate type of plan, mailing address, and name of current custodian)   ○ Legal Representative

**Legal Representative of claimants must attach power of attorney or other instrument**

**showing authority to act as Legal Representative.**

Defendants include:   VIISAGE TECHNOLOGY, INC. (NOW KNOWN AS L-1 IDENTITY SOLUTIONS, INC.), BERNARD C. BAILEY, WILLIAM K. AULET, DENIS K. BERUBE, MARCEL YON, BUDDY G. BECK, CHARLES A. LEVINE, THOMAS J. REILLY, HARRIET MOUCHLY-WEISS, PAUL T. PRINCIPATO AND PETER NESSEN (COLLECTIVELY, "DEFENDANTS").

☐ Check here if the claimant or beneficial owner is excluded from the Class.

☐ Check here if the claimant or beneficial owner was an officer, director or partner, of Viisage Technology, Inc. (now known as L-1 Identity Solutions, Inc.) at any time between May 12, 2004, through and including March 2, 2005.  If so, please state position(s) held and dates of employment.

☐ Check here if the claimant or beneficial owner acquired Viisage common stock through the Viisage employee benefit plan.

---

DIRECT DEPOSIT – If you prefer your settlement check to be directly deposited into your bank account, check here ○

You MUST provide the following information:

BANK NAME

ROUTING NUMBER

ACCOUNT NUMBER

○ CHECKING ACCOUNT     ○ SAVINGS ACCOUNT

CLAIMANT'S ACCOUNT NAME MATCHES SUBMITTED
DOCUMENTATION (MUST MATCH)     ○ Y  ○ N

---

**SCHEDULE OF PURCHASES AND SALES OF VIISAGE COMMON STOCK**

Separately list each of your purchases and sales of Viisage Common Stock. Attach a separate schedule if more space is needed. Be sure to include your full name on any separate sheets.

For purposes of this schedule, you should list all transactions (including any free receipts and/or free deliveries) from May 12, 2004, through June 1, 2005, inclusive.

The date of purchase and sale is the "trade" or "contract" date, and not the "settlement" or "payment" date. The purchase price is the price paid without regard to commissions or other expenses. The sale price is the price received without regard to commissions or other expenses.

**BEGINNING HOLDINGS OF VIISAGE COMMON STOCK:**

Please state the number of shares of Viisage common stock that you owned as of the close of business on May 11, 2004.

Proof enclosed?

○ Y  ○ N

If none, check here ☐

7

**PURCHASES:**

List all purchases of Viisage common stock between May 12, 2004, and June 1, 2005, inclusive:    If none, check here. ○

| Date(s) of purchase<br>List chronologically<br><br>MM      DD      YYYY | Number of shares purchased | Purchase price<br>per share<br>(excluding taxes, commissions, etc.) | Proof of purchase enclosed |
|---|---|---|---|
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |
| ____ / ____ / _____ | | $ _____ . ____ | ○ Y<br>○ N |

IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT

AS ABOVE.  PRINT YOUR FULL NAME ON EACH ADDITIONAL PAGE.

**SALES:**

List all sales you made of Viisage common stock between May 12, 2004, and June 1, 2005, inclusive:                                        If none, check here. ○

| Date(s) of sales List chronologically | | | Number of shares sold | Sale price per share (excluding taxes, commissions, etc.) | Proof of sale enclosed |
|---|---|---|---|---|---|
| MM | DD | YYYY | | | |
| / | / | | | $ . | ○ Y ○ N |
| / | / | | | $ . | ○ Y ○ N |
| / | / | | | $ . | ○ Y ○ N |
| / | / | | | $ . | ○ Y ○ N |
| / | / | | | $ . | ○ Y ○ N |
| / | / | | | $ . | ○ Y ○ N |

IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT

AS ABOVE.  PRINT YOUR FULL NAME ON EACH ADDITIONAL PAGE.

**UNSOLD HOLDINGS:**

Proof enclosed?

Please state the number of shares of Viisage common stock that you held as of the close of trading on June 1, 2005.                  ○ Y ○ N

If you did not own any shares of Viisage common stock as of the close of trading on June 1, 2005, please

check here. ○

### _YOU MUST PROVIDE SUPPORTING DOCUMENTATION OF ALL HOLDINGS AND_

### _TRANSACTIONS IN VIISAGE SECURITIES INDICATED ABOVE._

## *CERTIFICATION*

1.      I (We) purchased publicly common stock of Viisage during the period from May 12, 2004, through March 2, 2005, inclusive. (Do not submit this Proof of Claim if you did not purchase Viisage common stock during this period).

2.      By submitting this Proof of Claim, I (we) state that I (we) believe in good faith that I am (we are) a Class Member(s) as defined above and in the Notice, or am (are) legally authorized to act for such person; that I am (we are) not a Defendant(s) in the Litigation or anyone excluded from the Class; that I (we) have read and understand the Notice; that I (we) believe that I am (we are) entitled to receive a share of the Net Settlement Fund; that I (we) elect to participate in the proposed Settlement described in the Notice; and that I (we) have not submitted a Request for Exclusion.  (If you are acting in a representative capacity on behalf of a Class Member (e.g. as an executor, administrator, trustee, or other representative), you must submit evidence of your current authority to act on behalf of that Class Member.  Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3.      I (We) have set forth where requested above all relevant information with respect to my ownership of Viisage common stock at the commencement of the Class Period and all purchases and sales of  Viisage common stock during the Class Period and during the ninety day period after the Class Period.  I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.

4.      I (We) have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, relevant portions of my tax returns or other documents

evidencing each purchase, sale or retention of Viisage common stock listed above in support of my claim. (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS FROM YOUR BROKER OR TAX ADVISOR BECAUSE THESE DOCUMENTS ARE NECESSARY TO PROVE AND PROCESS YOUR CLAIM.)

5.      I (We) understand that the information contained in this Proof of Claim form is subject to such verification as the Claims Administrator may request or as the Court may direct, and I (we) agree to cooperate in any such verification.

6.      Upon the occurrence of the Effective Date (the date on which the proposed Settlement is approved by the Court and that approval becomes final), my (our) signature(s) hereto will constitute a full and complete release, remise and discharge by me (us) and my (our) heirs, executors, administrators, successors and assigns (or, if I am (we are) submitting this Proof of Claim form on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by its, his, her or their heirs, executors, administrators, successors, and assigns) of all "Released Claims," including "Unknown Claims" against each and all of the "Released Persons," as each term is defined in the Notice.

7.      NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may make a request to the Claims Administrator to accept, or may be requested by the Claims Administrator to submit, information regarding their transactions in Viisage common stock in electronic files.  All claimants MUST submit a manually signed paper Proof of Claim form listing all their transactions whether or not they also submit electronic copies.  If you wish to file your Proof of Claim

electronically, you must contact the Claims Administrator at 1(800) 949-0194 or visit their website at www.abdatalawserve.com to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

       8.    Substitute Form W-9 - Request for Taxpayer Identification Number ("TIN"):

       Enter Taxpayer Identification Number below for the Beneficial Owner(s).  For most individuals, this is your Social Security Number ("SSN").  The Internal Revenue Service ("IRS") requires such Taxpayer Identification Number.  If you fail to provide this information, your claim may be rejected.

_____
Social Security Number
(for individuals)

_____
Taxpayer Identification Number
(for estates, trusts, corporations, etc.)

       I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding; or (b) I (We) have not been notified by the IRS that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:  If you have been notified by the IRS that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE

INFORMATION PROVIDED BY ME (US) ON THIS PROOF OF CLAIM FORM IS

TRUE, CORRECT AND COMPLETE.

Signature of claimant (If this claim is being made on behalf of Joint Claimants, then each must sign)

_____ (Signature)

_____ (Signature)

_____
(Capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)

Date:_____

## REMINDER CHECKLIST

1. ↑ Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.

2. ↑ Do NOT use highlighter on the Proof of Claim form or any supporting documents.

3. ↑ If you move or change your name after submitting this Proof of Claim form, please notify the Claims Administrator of the change in your name and/or address.

4. ↑ Keep a copy of your Claim Form and all documentation submitted for your records.

5.    ↑    You will **not** receive confirmation that your Proof of Claim form has been received **unless** you send it via Certified Mail, Return Receipt Requested or by some other means that provides you with proof of receipt.

EXHIBIT 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

**In re VIISAGE TECHNOLOGY, INC. SECURITIES LITIGATION**

**Civil Action No. 05-cv-10438-MLW**

---

**This Pleading Applies to: All Actions**

---

### SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND FAIRNESS HEARING

**TO:    ALL PERSONS WHO PURCHASED VIISAGE TECHNOLOGY, INC. ("VIISAGE") COMMON STOCK DURING THE PERIOD FROM MAY 12, 2004 THROUGH MARCH 2, 2005, INCLUSIVE.**

PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY A SETTLEMENT IN THIS CLASS ACTION LAWSUIT.

This Summary Notice of Pendency and Proposed Settlement of Class Action and Fairness Hearing is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Massachusetts dated _____, 2007.  The purpose of this notice is to inform you: (1) that the Court has, for settlement purposes only, certified this action as a class action, on behalf of a class consisting of all persons who purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive, with certain exclusions (the "Class"); and (2) of the proposed settlement that has been reached in this class action between Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock and Lance Hancock ("Lead Plaintiffs"), on behalf of themselves and the certified class, and Defendants Viisage  (now known as L-1 Identity Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G. Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter Nessen (collectively, "Defendants").  The only securities issued by Viisage that were publicly traded during the Class Period were its common stock.

The proposed Settlement provides for the creation of a two million three hundred thousand dollar ($2,300,000.00) Settlement Fund for the benefit of the Class.  A Fairness Hearing will be held before the Honorable Mark L. Wolf, United States District Judge, on _____, 2007 at ____ __.m. in Courtroom 10 of the United States District Court for the District of Massachusetts, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210, to determine, among other things, (i) whether the proposed Settlement is fair, reasonable, and adequate and should be approved, and therefore, whether the action should be

dismissed with prejudice; (ii) whether a proposed Plan of Allocation for the distribution of the Net Settlement Fund to Authorized Claimants should be approved; and (iii) whether the application by Lead Counsel for an award of attorneys' fees and reimbursement of expenses incurred by Plaintiffs' Counsel in prosecuting the Action should be approved. The Court has expressly reserved the right to adjourn the Fairness Hearing from time to time without any further written notice to members of the Class ("Class Members").

You are a Class Member if you purchased Viisage's publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive, unless you request exclusion from the Class in accordance with the instructions contained in the Notice described below. If you are a Class Member, your rights against the Defendants and certain affiliated persons and entities will be affected if the proposed Settlement is approved by the Court.

If you are a Class Member and wish to share in the settlement proceeds, you must submit a signed Proof of Claim form, no later than _____, 2007, establishing that you are entitled to a recovery. IF YOU DO NOT TIMELY SUBMIT A SIGNED PROOF OF CLAIM FORM, YOU WILL NOT SHARE IN THE SETTLEMENT PROCEEDS, BUT YOU WILL STILL BE BOUND BY THE FINAL JUDGMENT OF THE COURT.

This notice provides only a summary of matters concerning the Action and the proposed Settlement and incorporates by reference certain defined terms, the meanings of which are set forth in a detailed Notice of Pendency and Proposed Settlement of Class Action, Application For Attorneys' Fees and Expenses and Fairness Hearing (the "Notice") and Proof of Claim form that have been mailed to Class Members. The Notice and Proof of Claim form contain additional important information regarding the proposed Settlement and related matters affecting Class Members' rights. If you have not received a copy of the Notice or the Proof of Claim form, you may obtain them free of charge by contacting: *In re Viisage Technology, Inc. Securities Litigation Claims Administrator*, c/o A.B. Data, Ltd., P.O. Box 170200, Milwaukee, Wisconsin 53217, toll-free telephone (866) 217-4245, or by downloading them from www.klafterolsen.com, www.entwistle-law.com, or the Claims Administrator's website: www.abdatalawserve.com.

You may also contact Lead Counsel for the Lead Plaintiffs directly: Jeffrey A. Klafter, Klafter & Olsen LLP, 1311 Mamaroneck Avenue, Suite 220, White Plains, NY 10605, and Robert N. Cappucci, Entwistle & Cappucci LLP, 280 Park Avenue, 26th Floor West, New York, NY 10017.

**EMPLOYEES OF THE COURT CANNOT ANSWER QUESTIONS ABOUT THIS CASE. PLEASE DIRECT ALL QUESTIONS TO THE CLAIMS ADMINISTRATOR OR LEAD COUNSEL.**

Dated: _____, 2007              BY ORDER OF THE UNITED
                                          STATES DISTRICT COURT FOR THE
                                          DISTRICT OF MASSACHUSETTS

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

In re VIISAGE TECHNOLOGY, INC.
SECURITIES LITIGATION

_____

This Pleading Applies to: All Actions

_____

Civil Action No. 05-cv-10438-MLW

[PROPOSED] FINAL JUDGMENT AND
ORDER OF DISMISSAL WITH PREJUDICE

WHEREAS:

A.      Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC,
Ronald Sauer, David Hancock and Lance Hancock ("Lead Plaintiffs"), on behalf of themselves and
the Class certified herein, and Defendants Viisage Technology, Inc. (now known as L-1 Identity
Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G.
Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter
Nessen (collectively, "Defendants") have entered into a Settlement of the claims asserted in the
Action, the terms of which are set forth in a Stipulation of Settlement dated July __, 2007 (the
"Settlement Agreement");

B.      This Court entered an Order certifying the Class, for settlement purposes only,
preliminarily approving the Settlement and providing for Notice to potential Class Members,
scheduling a hearing for _____, 2007 (the "Fairness Hearing"), and providing
Class Members with an opportunity to object to the proposed Settlement and to be heard at the
Fairness Hearing, on August __, 2007 (the "Preliminary Approval Order");

C.      Notice has been provided to the members of the Class in accordance with the Preliminary Approval Order, as evidenced by the Affidavit of _____ of _____;

D.      The Court held the Fairness Hearing on _____, 2007 to determine whether the proposed Settlement of the Action on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court, and whether a Final Judgment as provided for in the Settlement Agreement should be entered herein; and

WHEREAS, the Court, having considered all matters submitted to it at the hearing, along with all prior submissions by the Parties to the Settlement and others, and otherwise having determined the fairness and reasonableness of the proposed Settlement of the claims of the Class Members against the Released Persons.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      This Final Judgment incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement.

2.      The Court finds that the distribution of the Notice, the publication of the Summary Notice, and the method or providing notice, all implemented in accordance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order:

(a)      constituted the best practicable notice to Class Members under the circumstances of this Action;

(b)      were reasonably calculated, under the circumstances, to apprise Class Members of: (i) the proposed Settlement of this class action, (ii) their right to request exclusion from the Class; (iii) their right to object to any aspect of the proposed Settlement, (iv) their right to appear at the Fairness Hearing, either on their own or through counsel hired at their own expense, if they are

not excluded from the Class, and (v) the binding effect of the proceedings, rulings, orders, and judgments in this Action, whether favorable or unfavorable, on all persons who are not excluded from the Class;

       (c)    were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and

       (d)    fully satisfied all applicable requirements of the Federal Rules of Civil Procedure (including Rule 23(c)), the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, the Rules of the Court, and any other applicable law.

       3.    This Court finds that it has jurisdiction over the subject matter of the Action, including the terms and conditions of the Settlement Agreement and all exhibits thereto, and over all Parties to the Action and all Class Members.

       4.    The Court finds that the terms and provisions of the Settlement Agreement were negotiated by the Parties at arms-length, entered into by the Parties in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Class Members, and consistent and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law. The Parties and their counsel are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

       5.    The Court finds that Lead Plaintiffs and all other members of the Class, as well as their heirs, executors, administrators, successors, and assigns, are bound by the Settlement Agreement and by this Final Judgment and Order of Dismissal with Prejudice. The Class, as certified by the Court for settlement purposes only, means all Persons who purchased Viisage's

publicly traded securities during the period from May 12, 2004 through March 2, 2005, inclusive. Excluded from the Class are:  (i) the Defendants herein, the directors, officers and employees of Viisage, the members of each Individual Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party; and (ii) those Persons who submitted valid and timely requests for exclusion from the Class in accordance with the procedures set forth in the Preliminary Approval Order and also set forth in the Notice, as identified on Exhibit 1 hereto.

6.     The Action is hereby dismissed on the merits and with prejudice.  The Parties and all persons and entities are to bear their own costs, except as otherwise provided in the Stipulation or this Final Judgment.

7.     Upon the Effective Date, each and every Lead Plaintiff and Class member, and any of their heirs, executors, administrators, successors or assigns, shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against each and all of the Released Persons, whether or not such Class Member submit a timely and valid Proof of Claim form.

8.     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Class Members, Lead Plaintiffs, and Plaintiffs' Counsel from all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims.

9.     The Court finds that Lead Counsel and Lead Plaintiffs adequately represented the Class under Rules 23(a)(4) and (g) of the Federal Rules of Civil Procedure for purposes of negotiating, entering into and implementing the Settlement.

10.     Upon the Effective Date, Lead Counsel, without further approval of Defendants or the Court, may cause to be paid out of the Escrow Account any Notice and Administration Expenses.

11.     Neither this Final Judgment, the Settlement Agreement (whether or not it is consummated and whether or not it is terminated), nor any of their provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, nor any matter arising in connection with such negotiations, proceedings or agreements, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement: (i) is or may in any event be deemed or construed to be or may be offered or received in evidence or used as or deemed to be an admission or evidence of a presumption, concession or admission by any Defendant of the truth of any fact alleged in the Complaint or the validity of any Released Claim or of any wrongdoing, liability, negligence or fault by any Defendant, or a presumption, concession or admission by any Lead Plaintiff or member of the Class as to the infirmity of any fact alleged in the Complaint, viability of any Released Claim, or lack of wrongdoing, liability, negligence or fault by any Defendant; (ii) is or may be deemed to be or may be referred to or used as an admission or evidence of a presumption, concession or admission with respect to any fault or omission, or lack thereof, of the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of the Settlement Agreement, the Settlement or the Final Judgment; (iii) is or may be used as an admission or evidence that the claims of Lead Plaintiffs' or Class Members in the Action did not have merit; (iv) is or may be used or construed against any Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered by Lead Plaintiffs, on behalf of the Class, after trial; (v) is or may be used or construed or received in evidence as an admission, concession or presumption by Defendants that any damages

were recoverable under the Complaint or by Lead Plaintiffs that the damages recoverable under the Complaint would not have exceeded the Settlement Fund.  Defendants may file this Settlement Agreement and/or this Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.  Any Party may file the Settlement Agreement and/or this Final Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or this Final Judgment.

12.    The terms and provisions of the Settlement Agreement and of this Final Judgment are binding on Lead Plaintiffs and all other Class Members, as well as their heirs, executors, administrators, successors, and assigns, and they are hereby permanently barred and enjoined from asserting, instituting, commencing, continuing, or prosecuting either directly or indirectly, representatively, derivatively or in any other capacity, any Released Claims (including Unknown Claims) against any Released Person; *provided, however,* that this Final Judgment shall not bar any action or claim to enforce the terms of the Settlement as approved by the Court or this Final Judgment.

13.    Without affecting the finality of this Final Judgment for purposes of appeal or in any other way, this Court hereby expressly retains exclusive jurisdiction: (a) with respect to implementation and enforcement of the terms of the Settlement Agreement, and the administration and consummation of the Settlement embodied therein, including any distribution from or disposition of the Settlement Fund and any interest earned thereon; and (b) as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Judgment, and for any other necessary purpose.

14.     The Court finds that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

15.     If the Effective Date does not occur, then:

(a)     this Final Judgment and any order or judgment entered after the date of the Settlement Agreement that relates to this Settlement Agreement, shall be null and void and shall have no force or effect;

(b)     the Settlement Agreement shall be null and void and shall have no force or effect, and no Party to the Settlement Agreement shall be bound by any of its terms, except for the terms of Sections 9.6, 7.2 and 10.5 of the Settlement Agreement;

(c)     Lead Counsel shall, within ten (10) days, authorize the Escrow Agent to immediately return to Defendants' Counsel, in accordance with their instructions, the Settlement Amount (plus any interest accrued thereon) less any Notice and Administration Expenses paid out of, or incurred by, the Settlement Fund not to exceed $150,000.00, and less any Taxes and Tax Expenses paid out of, or incurred by, the Settlement Fund;

(d)     the Settlement Agreement, all of its provisions, and all negotiations, statements, documents and proceedings relating to it shall be without prejudice to the rights of Defendants, Lead Plaintiffs, or any Class Member, all of whom shall be restored to their respective positions vis-à-vis each other as they existed immediately before the execution of the Settlement Agreement; and

(e)     neither the Settlement Agreement, nor the fact of its having been made,  nor any documents prepared and statements made in connection therewith shall be referred to, admissible in or introduced or entered into evidence in any other way for any purpose whatsoever in this Action or in any other action or proceeding.

16.     Nothing in this Final Judgment shall preclude or bar any action or claim to enforce the terms of the Settlement Agreement as approved by the Court or this Final Judgment.

17.     All agreements made during the course of this Action, relating to the confidentiality of documents or other information produced during pre-trial discovery in this Action ("Discovery Material") shall survive this Settlement Agreement and this Final Judgment.

18.     The Parties may, without notice to or further approval from the Court, enter into written agreements that amend, modify or expand the Settlement Agreement and its implementing documents (including the exhibits to the Settlement Agreement), provided that such amendments, modifications, or expansions of the Settlement Agreement are not materially inconsistent with this Final Judgment and do not (a) materially limit the rights of Class Members under the Settlement Agreement; or (b) materially limit the rights of the Released Persons under the Settlement Agreement.

19.     The Court, without affecting the finality of this Final Judgment for purposes of appeal, retains jurisdiction as to any award of attorneys' fees and expenses to Lead Counsel on behalf of Plaintiffs' Counsel, any award of costs and expenses to one or more of the Lead Plaintiffs, all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Judgment, and for any other necessary purpose.


        IT IS SO ORDERED.


Dated: _____, 2007


                                    _____
                                    HONORABLE MARK L. WOLF
                                    UNITED STATES DISTRICT JUDGE

EXHIBIT 2

# KLAFTER & OLSEN LLP

Jeffrey Klafter and Kurt Olsen founded Klafter & Olsen LLP (the "Firm") in June 2003. The Firm has offices in New York and Washington D.C.  Together, Messrs. Klafter and Olsen bring over thirty eight years combined experience representing plaintiffs and defendants in a wide variety of litigation matters including securities, antitrust, corporate governance, and derivative actions as well as concurrent bankruptcy proceedings.  The Firm's philosophy is to aggressively prosecute select actions as opposed to a "volume" type operation.  The Firm provides its clients with the full spectrum of legal services including: (i) factual investigation, forensic accounting, and legal analysis; (ii) written reports advising the client of the merits of the case, developments in the litigation, and settlement issues; and (iii) advisory services on an "as needed" basis on both case specific and general securities litigation matters.

The Firm has acted as a lead counsel in multiple class actions and has served as co-lead counsel in three class actions in which over $53 million has been  recovered:

- *In re Eaton Vance Corporation Securities Litigation*, Civil Action No. 01-10911-EFH (D. Mass.) ($10.5 million settlement)

- *In re Ashworth, Inc. Securities Litigation*, Master File No. 99cv0121-L(JFS) (S.D. Cal.) ($15.25 million settlement

- *In re SmarTalk Teleservices Inc. Securities  Litigation*, MDL Docket No. 00-1315 (S.D. Ohio) ($27.1 million)

The Firm is currently Court- appointed co-lead counsel in *In re Viisage Technologies, Inc. Securities Litigation*, Civil Action No. 05-cv-10438 (D. Mass.) and *Ruland v. Infosonics Corp. et al.*, Case No. 06cv1231 BTM(WMc).  In addition, the Firm has been selected by CompuDyne Corporation (NASD: CDCY) to represent it in pursuing claims against individuals and entities who illegally sold the Company's stock short in advance of a $30 million private placement, and has recently achieved a $4.8 million in settlements with certain of the short-sellers.

In other complex litigation, the Firm currently has significant roles in the prosecution of *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1708 (DWF/AJB) (D. Minn.) and *In re Insurance Brokerage Antitrust Litigation*, MDL  No. 1663, No. 04-5184 (GEB) (D. N.J.).

\* \* \*

**Jeffrey A. Klafter** has more than twenty-five years of experience in prosecuting securities and commercial litigation.  From 1988 until mid-2003, Mr. Klafter was a partner of Bernstein Litowitz Berger & Grossmann LLP.  Early in his career, Mr. Klafter was one of the principal lawyers responsible for the prosecution of over 100 defendants to recoup the losses suffered by the purchasers of municipal bonds issued by the

Washington Public Power Supply System when it defaulted on those bonds. That litigation resulted in the recovery of over $800 million, one of the largest securities fraud settlements in history. Mr. Klafter has also served as sole or co lead counsel in prosecuting numerous securities class actions on behalf of investors in common stock, municipal bonds, convertible debentures and preferred stock in which hundreds of millions of dollars have been recovered on behalf of investors. Among the many notable achievements for which he had sole or shared responsibility are the recovery of $48 million in *In re Independent Energy PLC Securities Litigation*; the recovery of $300 million in *In Re: DaimlerChrysler AG Securities Litigation*, the decision of the Second Circuit Court of Appeals reversing the district court's dismissal of plaintiffs' complaint in *In re Scholastic Corp. Securities Litigation* and ultimate settlement of that litigation; the recovery with Mr. Olsen of $27.1 million in *In re SmarTalk Teleservices Inc. Securities Litigation*, and a significant recovery on behalf of holders of Sun Oil Company preferred stock in litigation over the indenture governing the stock.

Since forming Klafter & Olsen LLP, Mr. Klafter has also served as special counsel to lead counsel in the *In re Ahold N.V. Securities & ERISA Litigation*, Civil No.: 1:03-MD-01539-CCB (D. Md.) in which $1.1 billion was recently recovered on behalf of the class.

Mr. Klafter has also been responsible for the prosecution of innovative and diverse litigation successfully challenging Delaware regulations governing the disposal of solid waste on behalf of waste haulers; the laying of fiber optic cable along railroad rights of way on behalf of adjoining landowners; and efforts to impose the cost of Y2K compliance on businesses and medical practices by suppliers of various computer software.

Mr. Klafter is a member of the Bar of the State of New York, the United States District Court for the Southern District of New York, other federal district courts, the Second Circuit Court of Appeals, and the United States Supreme Court. Mr. Klafter is a member of the Securities Law Committee of the Commercial and Federal Litigation Section of the New York State Bar Association; the Class Actions and Derivative Suits Committee of the Litigation Section of the American Bar Association, and is a noted author and lecturer on securities litigation issues.

**Kurt B. Olsen** has more than thirteen years of experience representing plaintiffs and defendants in commercial, Title VII, and securities class action litigation. In September 1997, Mr. Olsen founded The Olsen Law Firm. The Firm focused on uncovering complex accounting schemes before they became public including several actions where the defendant companies were forced to restate their financial results after the Firm filed suit. As a lead counsel, Mr. Olsen successfully prosecuted several prominent federal securities class actions including: *In re SmarTalk Teleservices Inc. Securities Litigation* ($27.1 million total settlement); *Edwards v. Casino DataSystems, Inc.* ($5 million settlement); and *Broderick v. PHP Healthcare Corporation.* ($4.5 million settlement); *In re Ashworth, Inc. Securities Litigation* ($15.25 million settlement). In *SmarTalk*, the

district court recognized the $15 million settlement with the company's auditor, defendant PricewaterhouseCoopers LLP, as an "extraordinary" recovery.

Prior to founding The Olsen Law Firm, Mr. Olsen was associated with the Washington D.C. office of Kirkland & Ellis where he represented General Motors Corp., Dow Corning Corp., and the Dow Chemical Co. in various products liability actions. He also served as co-lead trial counsel in *Scott v. Dow Corning, Inc.*, one of only two trial victories in Texas for Dow Corning in the breast implant litigation.  Mr. Olsen is a graduate of the U.S. Naval Academy (B.S. *with Merit* 1984) and the National Law Center, George Washington University (J.D. *with Honors* 1992).  During his career in the U.S. Navy, Mr. Olsen served as a Naval Special Warfare Officer assigned to SEAL Team Five in Coronado, California. He has traveled extensively in the Middle East and Far East, primarily as a special operations platoon commander.

Mr. Olsen is a member of the Bar of the District of Columbia and the State of Maryland, and a member of the United States District Court for the District of Maryland and the District of Columbia.

**Susan Burns** has served as Of Counsel to the Firm since August 2005 and has had significant responsibility for the discovery proceedings in *In re Insurance Brokerage Antitrust Litigation*, MDL  No. 1663, No. 04-5184 (FSH) (D. N.J.).  Ms. Burns has twenty years of diverse experience including large-scale antitrust, pharmaceutical, products liability and securities fraud discovery experience.

Ms. Burns is a member of the Bar of the State of Minnesota, the United States District Court for the District of Minnesota and the United States Court of Appeals for the Federal Circuit.

**Christina Svalstad** has been associated with the Firm since March 2006 and has over three years experience in discovery proceedings in complex litigation.  Ms. Svalstad received her J.D., *cum laude*, from the University of Minnesota in 1999.  Ms. Svalstad is a member of the Bars of the States of Minnesota and Florida.

EXHIBIT 3

# ENTWISTLE & CAPPUCCI LLP
# FIRM RESUME

## **Entwistle & Cappucci at a Glance**

Entwistle & Cappucci LLP is dedicated to providing the most complete and effective legal representation without limitation.  The Firm employs the best-credentialed, seasoned members of the bar in selected areas of expertise through offices located in Armonk, NY; Austin, TX; Chicago, IL; Florham Park, NJ; New York, NY; Tallahassee, FL; and, Washington, D.C. Taking advantage of a sophisticated network of proprietary information, the Firm is committed to using technology in innovative ways that serve our clients' needs with speed and efficiency. We have attained an AV-rating from Martindale-Hubbell and are listed in the Bar Register of Preeminent Lawyers and The Definitive Guide to the Most Distinguished Law Firms in America.

We invite you to learn more about us by visiting our website, www.entwistle-law.com, or by contacting our founding partners, Andrew J. Entwistle, aentwistle@entwistle-law.com, or Vincent R. Cappucci, vcappucci@entwistle-law.com, who would be happy to answer any questions or direct you to other appropriate attorneys within the Firm.

Thank you for your interest in Entwistle & Cappucci LLP.

## **Practice Groups**

Entwistle & Cappucci's tradition of creativity and success in serving its clients around the world traces its history to firms established more than 30 years ago.  Today, we extend our commitment to meet changing client needs by combining this tradition with the most advanced computer and communications technology.

We define ourselves and our practice by the strength of our relationships.  At the heart of these relationships is our understanding of the needs and goals of our clients.  An experienced team of lawyers brings depth, expertise and common sense to the search for practical solutions to business and legal problems.  Every person working in our firm is dedicated to developing long-lasting relationships, rich with the goals we help our clients achieve.

In the following pages, we provide summaries of our approach to the law in the principal areas of our practice:

- Complex Business and Commercial Litigation;

- Securities Litigation and Corporate Governance;

- Business Transactions;

- Employment and Labor;

- Executive Compensation;

- Government Affairs and Administrative Law;

- Insurance and Reinsurance;

- Intellectual Property and Cyberlaw;

- Trust and Estate Litigation, Planning and Administration;

- Alternate Dispute Resolution; and,

- Workouts, Reorganizations and Bankruptcy Litigation.

## Complex Business and Commercial Litigation

Our litigators represent institutional, corporate, governmental and individual clients in many industries, including both domestic and foreign interests.  The Firm has an active trial practice involving cases in federal and state courts and administrative and regulatory bodies throughout the country.  We also provide counseling and guidance in connection with planning and structuring operations and transactions to minimize litigation risks.

The Firm litigates matters in almost all fields of commercial law, including:  corporate finance; traditional banking, merchant banking and investment banking; workouts and reorganization-related matters; general commercial and contract litigation; antitrust; employment and labor; insurance and reinsurance; the defense of directors and officers; the defense of lawyers and accountants in professional malpractice claims; products liability; admiralty; oil, coal, gas and energy-related matters; environmental matters; benefits and Employment Retirement Income Security Act ("ERISA") litigation; federal and state tax disputes; and intellectual property, anti-competition and cyberlaw disputes.  The Firm also prosecutes traditional price-fixing and restraint of trade antitrust cases, utilizing both class action litigation methods and individual representation in federal and state courts.

We recognize that litigation is the most costly form of dispute resolution available to clients.  As a result, our lawyers always counsel on alternative dispute resolution options based upon the assumption that only an informed client is in a position to make a sound business judgment regarding whether to litigate.  Regardless of the course chosen, we pursue an aggressive strategy designed to maximize results and minimize costs.

## Securities Litigation and Corporate Governance

Entwistle & Cappucci LLP has one of the nation's leading securities litigation practices. We have a highly experienced team of litigators who specialize in all aspects of securities related matters for public pension funds and other institutional investors, including the prosecution and defense of private, class and derivative actions; actions alleging breach of fiduciary duty, corporate waste and appraisal proceedings; and actions challenging corporate transactions on fairness and other grounds -- all supported by corporate finance, bankruptcy, and insurance attorneys. This multi-disciplinary team approach gives us a unique perspective and the ability to creatively resolve disputes in the litigation, corporate workout and bankruptcy arenas.

In recent years, the Firm has significantly broadened its representation of public and private pension systems in securities and commercial litigation as those entities have become more selective in choosing counsel in this practice area. Our success is demonstrated not only by the roster of institutional clients who seek our advice, but also by the recoveries, totaling well over $3 billion, which our Firm has secured for defrauded investors in recent years in a multitude of high profile securities class actions.

The Firm is equally well known as a "go to" Firm when institutional investors and financial institutions themselves become defendants in securities, antitrust or other complex business litigation or class actions.

Our work with public institutional investors and governmental entities, which includes working relationships with offices of attorneys general, governors and various state agencies across the country, grows out of our long standing representation of private institutional investors and various domestic and foreign insurance, reinsurance and banking institutions. The Firm aspires to build lasting relationships that are characterized by a detailed and responsive understanding of client goals and objectives. In addition to our securities litigation and related

practice areas, the Firm is also actively engaged in representing clients in other practice areas, including: corporate and antitrust litigation; corporate finance and transactions; bankruptcy and workouts; insurance and reinsurance; trusts and estates; intellectual property; and, employment law matters.

We also have years of experience advising public and private institutional clients on corporate governance matters, including board structure and composition; by-law and certificate of incorporation provisions; takeover devices; management remuneration; and accounting and reporting processes, relating to business enterprises in a multitude of industries in both foreign and, domestic financial markets. In this regard, we are highly skilled at litigating in all state and federal courts, governance and corporate transactional disputes, including: claims for corporate waste; breach of fiduciary duty; self-dealing; fairness; and improper business judgment. We are well-equipped to provide in-depth analyses of governance practices and are at the forefront of leading governance issues which best serve long-term investment objectives and principles. We also maintain relationships with domestic and international institutional investor associations, including the Council of Institutional Investors and the International Corporate Governance Network, and have been called on routinely to provide advice in connection with a wide range of shareholder issues. The Firm shares the view of our institutional clients that effective corporate governance and monitoring of business enterprises for transparency and accountability to shareholders and employees, serves the interests of all investors and preserves the integrity of our financial markets.

We also routinely interface with federal agencies, congressional and state representatives on legislative and regulatory initiatives covering governance-related issues. We have particular expertise in the requirements of the Sarbanes-Oxley Act of 2002 (as well as exchange listing

requirements) and have lectured and written on issues related to management certifications, fraud detention, internal audits and document destruction.

Our Firm provides its institutional clients with an advanced Monitoring and Reporting Program designed to furnish the most complete information available to evaluate whether: (i) to pursue securities class action litigation as a lead plaintiff or as a class member; (ii) to litigate claims on an independent basis; or (iii) not to pursue litigation. In general, our Monitoring and Reporting Program involves a regular review of our client's latest holdings in light of emerging market conditions and corporate developments to help identify matters where our clients may consider litigation. As part of our Monitoring and Reporting Program, the Firm performs a preliminary analysis that involves reviewing client losses as well as a detailed report on developing cases which includes: (i) a description of the factual and legal underpinnings of potential claims; (ii) strategies for resolution; (iii) an overview of the likelihood of recovering all or a portion of our client's losses; and (iv) the opportunities to advocate corporate governance changes. As part of our evaluation, we also advise our clients about insurance coverage and assets that may be available to satisfy any judgment or settlement; analyze the potential impact on additional investment portfolios to the extent they contain other or related securities in the subject company (for example, holdings of both common stock and corporate bonds); and related trading and investment issues impacted by litigating or otherwise actively pursuing a business resolution of claims in the situation presented.

## Business Transactions

The Firm provides a broad range of legal services in the area of domestic and international business transactions where our attorneys are deeply committed to providing responsible, cost-effective and timely counseling to our clients. In addition to general corporate and commercial law, we have specialized expertise in:

- **Entity Formation**:  an area in which we advise on the proper choice of entity and formation of corporations, limited liability companies and partnerships; negotiation and documentation of shareholder agreements, limited liability company agreements, partnership agreements and employee agreements, and initial funding of start-up enterprises and follow-on transactions;

- **Mergers and Acquisitions**:  a historically active area of our transactional practice, we advise companies, boards of directors and shareholders/owners in mergers, acquisitions, dispositions and leveraged buy-outs;

- **Securities Issuance**:  our experience includes accessing U. S. capital markets through public offerings and private placements;

- **Venture Capital**:  our business-savvy attorneys understand the unique issues confronting entrepreneurs and capital providers and are regularly engaged by start-up companies, emerging growth companies and mature businesses in a wide variety of industries -- from conventional to technology-based industries -- where we represent clients that are either portfolio companies or capital providers that are engaged in equity, mezzanine and/or senior debt financings;

- **Exit Strategies**:  we advise clients on the proper choice of an exit, including sales, public offerings, refinancings, recapitalizations, restructuring and spinning-off businesses;

- **Asset Protection Planning**:  our attorneys advise on the transfer of an individual's assets to protect those assets from the claims of future creditors, and to minimize U.S. income, gift and estate taxation;

- **Commercial Law and Finance**:  we negotiate and structure a wide variety of transactions including license, franchise and distributorship arrangements, asset-based loans and letters of credit on behalf of both lenders and borrowers; and,

- **Broker-Dealer Regulation**:  we have expertise in the formation of licensed registered broker-dealers and in SEC, NYSE and NASD rules and compliance.

### Employment and Labor

Our employment law attorneys represent individuals and businesses ranging from closely held companies to major corporations and financial institutions. While our lawyers have handled a variety of traditional labor issues, the focus in recent years has been more on employment matters.

Entwistle & Cappucci has represented individuals, professionals, manufacturing companies, service organizations, financial institutions, insurance brokerages, and major insurance and reinsurance companies across the country in a variety of employment related matters, including: discrimination, fraud, trade-secret, unfair competition and related matters in the state and federal courts, and administrative proceedings before federal agencies such as the Equal Employment Opportunity Commission ("EEOC") and the Office of Federal Contract Compliance Program ("OFCCP") as well as a variety of state agencies including New York's Human Rights Division. We have also handled labor negotiations, NLRB proceedings and various related litigations involving benefits and ERISA.

The Firm has counseled clients on procedures to avoid employment discrimination and wrongful discharge claims; on conducting employment audits; and on drafting employment agreements, policies and handbooks. In addition, we conduct lectures and other in-house training on topical issues of concern, such as the avoidance of claims in response to new OFCCP and EEOC initiatives, the Americans with Disabilities Act, Equal Pay Act, and hostile work environment and other sexual harassment claims.

### Executive Compensation

Our executive compensation practice includes all phases of negotiation and drafting for virtually every type of executive compensation transaction, both from the company's and the executive's point of view. While our executive clients have at times likened us to sports agents,

we prefer to think of ourselves as facilitators who assist them in closing an agreement in a manner that maximizes value.

We also advise directors and officers of major multi-national corporations, closely-held businesses, banks, financial institutions and start-up ventures on virtually every "boardroom" issue, including stock purchases, corporate takeovers, the purchase and sale of businesses, and other areas impacting upon their corporate responsibilities.  While we strive to resolve all disputes in this area, the Firm will not hesitate to litigate matters in federal and state courts or before administrative agencies throughout the country, if necessary.

## Government Affairs and Administrative Law

The Firm has a national lobbying and government affairs practice representing prominent multi-national corporations, national and state associations, and small and mid-sized businesses requiring expertise in the development, management and resolution of public policy issues before the governmental community.

Our lawyers draw on their own resources and upon a network of veteran intergovernmental affairs professionals from both sides of the aisle at both the state and national levels.  In this way, we can work with our clients to assure the access to and level of advocacy before decision-makers most appropriate to their specific needs.

Our unique perspective combines legal and business analyses with the insights of various intergovernmental affairs professionals to establish highly effective public affairs strategies, including coalition building, message development, crisis management, legislative tracking, public disclosure reporting, advocacy before legislative committees and regulatory agencies, and overall issue advocacy.

As in all areas of our practice, our government relations work is focused on developing, implementing and completing a common-sense based strategy to ensure that goals are met.

## **Insurance and Reinsurance**

We represent and advise primary insurers, excess insurers, reinsurers and insurance brokers, in capacities ranging from coverage issues and regulatory matters to the defense of insurers in almost all areas of law, including the litigation of intercompany disputes, insolvencies and rehabilitations.  We litigate complex insurance coverage disputes including:  fraud and arson; various issues arising under commercial general liability policies -- especially large multi-site environmental and toxic tort actions (waste sites; lead paint; chemical and radiation exposure; asbestos (PD and BI), and several HIV claims); the errors and omissions of insurance professionals, attorneys and accountants; directors' and officers' liability; advertising liability; employment; disputes arising under public official and law enforcement policies; and insurer, reinsurer and, fiduciary insolvencies.  Our work in these areas includes the direct representation through trial of public officials in antitrust, zoning and discrimination cases; attorneys and accountants in securities fraud, RICO and other malpractice cases; directors and officers in securities fraud, RICO and related cases; and corporations in contract, antitrust, insolvency, employment, ERISA and, product liability suits.

Whether we are actively litigating disputes or advising on coverage, regulatory and related business matters, our lawyers work hard to anticipate both the direct business effect on the client's position in a specific matter and the effect upon the client's overall position in respect of a given line of business or the insurance industry as a whole.  For example, we are often asked to comment on whether a beneficial position in an inter-company coverage or reinsurance dispute will compromise the position taken by the company in other matters.  We also have conducted audits of claims files and conduct employment audits for insurance industry clients to determine the appropriateness of internal regulatory policies and procedures, including

compliance with state and federal employment laws.  Additionally, we have directed various internal investigations for industry and non-industry clients.

The Firm also acts as counsel to the New York State Superintendent of Insurance.  In that capacity, the Firm investigates and prosecutes actions including financial and business fraud, breach of fiduciary duties and other wrongdoing by insurers placed into rehabilitation liquidation, and institutes actions against third parties (including outside auditors) for acts in connection with public filings and other regulated matters.

### Intellectual Property and Cyberlaw

The Firm has long counseled its clients with regard to their intellectual property rights, particularly the enforcement of those rights through litigation, arbitration or mediation.  We have litigated patent, trademark and copyright cases ranging from basic trademark infringement matters to patent-antitrust cases for clients in a variety of industries.

In the last several years, this practice has grown and shifted to include representation in cyberlaw matters for computer, software, information and Internet companies.  Online and Internet-related client companies including business-to-business ("B2B") exchanges; B2B companies; B2C companies; content developers; distributors; backbone, infrastructure and telecom providers; and, software, platform and website developers.  Recent transactions in this area have included everything from subscription agreements; venture capital and other financing arrangements, to content distribution; weblinking, EDI and website and software development agreements, to transactions involving corporate acquisitions, sales and mergers.  We are also active in the area of unfair competition, confidentiality and issues surrounding the duty of loyalty of employees, officers and directors to the various entities with which they are affiliated.  We are regularly called upon to represent corporations in drafting agreements to protect their rights regarding trade secrets, other confidential business information, software development and other

innovations including agreements limiting the future rights of employees to compete with the company post-termination.

Entwistle & Cappucci lawyers also litigate these matters when necessary to protect trade secrets and proprietary information, including source code, object code, and the documentation and design of various other technological innovations, in addition to the more traditional areas involving sales and marketing (including customer lists, pricing and the like in the sales and marketing area); scientific processes in the manufacturing, petrochemical and pharmaceutical industries; and protected information in the financial industry.

## **Trust and Estate Litigation, Planning and Administration**

Our lawyers have been at the forefront of some of the most complex and prominent litigations involving estates and trusts in the country. We represent both fiduciaries and beneficiaries in defending and prosecuting all manner of will contests; proceedings to construe testamentary documents; allegations of mismanagement, self-interested dealing and related claims involving the valuation and management of estates, trusts and other arrangements involving fiduciaries; and, virtually all other types of contested matters involving estates and trusts. More recently, our lawyers were instrumental in recovering $54 million dollars in a hotly contested estate litigation on behalf of a disenfranchised beneficiary.

Planning for the future transfer of wealth including planning for catastrophic illness continues to be an important personal service that we provide our clients. In this area our lawyers work closely with our corporate group to structure family and closely held businesses, assist with succession planning and structuring new ventures to minimize adverse estate tax consequences. Our corporate lawyers also work closely with our estate lawyers to structure transactions during trust and/or estate administration in a way that maximizes value and minimizes the tax impact on the beneficiaries.

## **Alternate Dispute Resolution**

The Firm's lawyers are engaged in all aspects of alternative dispute resolution, including certified mediation in the federal court system.  In addition, we have represented clients in various forms of alternative dispute resolution, including securities, insurance, employment and commercial arbitrations, summary jury trials, and mediations.  We have found that alternative dispute resolution resolves many cases, particularly when all sides to the dispute agree that litigation is no longer an effective or efficient way of settling their dispute and when all sides are convinced they possess all of the relevant information.  Whenever we are engaged in litigation or other kinds of disputes, we always consider whether alternative dispute resolution will provide a solution for the client.

## **Workouts, Reorganizations and Bankruptcy Litigation**

Our litigators, corporate lawyers and bankruptcy counsel work in concert to creatively and efficiently structure corporate workouts and reorganizations both before and in bankruptcy; advise equity holder and creditor committees; handle bankruptcy-related litigation, including the prosecution of claims and litigation of adversary proceedings; and, acquisitions out of bankruptcies and in other distressed circumstances.  Most recently, these representations have included the representation of public and private institutional investors and committees in major bankruptcies, including the Enron, Global Crossing, WorldCom and OMC bankruptcies.

\*    \*    \*

*Entwistle & Cappucci LLP -- a tradition of strength, creativity and client service -- without limits.*

## SELECTED ATTORNEY BIOGRAPHIES

*Partners*

## Andrew J. Entwistle

Andrew J. Entwistle is a founding partner of Entwistle & Cappucci LLP.  The son of a Scottish coal miner and an American schoolteacher, he received his undergraduate degree from the University of Notre Dame and his law degree from the University of Syracuse College of Law. Mr. Entwistle's practice principally involves the representation of public and private institutional investors in complex litigation and corporate finance and transactional matters.

Over the years, Mr. Entwistle has represented clients including Fortune 100 companies, public and private institutional investors, governmental and individual clients in a variety of corporate finance, and transactional matters and in complex business, securities, antitrust and bankruptcy litigation throughout the United States before federal and state courts, surrogate's and probate courts, grand juries, administrative and regulatory agencies and arbitration panels.  For example, Mr. Entwistle's recent representation of the Colorado Public Employees Retirement Association in *In re Royal Ahold N.V. Securities and ERISA Litigation* led to a recovery of more than $1.1 billion for his clients.  Mr. Entwistle is also actively engaged in the defense of institutional investors and international businesses in complex securities, antitrust, bankruptcy and corporate finance related matters.

Mr. Entwistle was also appointed by Chief Judge Lifland of the United States Bankruptcy Court for the Southern District of New York to serve on the Court's Special Mediation Panel and has actively litigated a number of complex bankruptcy matters including representing the Retired Employees Committee in the *OMC Bankruptcy*, equity holders in the *American Bank Note Bankruptcy* and the State of Florida in connection with the *Enron Bankruptcy*. Mr. Entwistle is also special litigation counsel for the Global Crossing Estate Representative in connection with the *Global Crossing Bankruptcy*.

Mr. Entwistle is a Charter Fellow of the Litigation Counsel of America.  He has been named to the Martindale-Hubbell Bar Register of Preeminent Lawyers, to the Order of International Fellowship*, Who's Who In The World, Who's Who In America, Who's Who In The East, Who's Who In American Law, Who's Who In Practicing Attorneys, Who's Who In Emerging Leaders In America, Who's Who In Finance and Industry, Who's Who Worldwide Registry and Who's Who Registry of Global Business Leaders.  The International Biographical Centre of Cambridge, England named Mr. Entwistle as its International Legal Professional of the Year for 2004 and inducted him into the Centre's International Order of Merit.

Mr. Entwistle was also named the 2003 Man of the Year by the Catholic Big Brothers for Boys and Girls after more than a decade of service on the Board of that organization which service included founding Sports Buddies, NY  a partnership between the youth of New York City and athletes from the New York region's professional sports teams.  Mr. Entwistle has received special commendations from the President of the United States, the Governors of the States of Georgia and Hawaii, and the New York State Assembly.  He also serves as outside counsel to, and is now or has previously acted as a director on several corporate, advisory and charitable

boards.  Mr. Entwistle is a member of the Board of Directors of the Giuliani Center for Urban Leadership.  In addition to membership in the Federal Bar Council and various city, county, state and national bar associations, Mr. Entwistle is a member of the National Association of Public Pension Funds Attorneys and is an Educational Sustainer of the Council of Institutional Investors.

Mr. Entwistle also acts as Northeast Regional Editor for the Defense Research Institute publication The Business Suit (from 1998-present), is a member of various bar and business association committees (including speaking on Sarbanes-Oxley to the Federal Bar Council's 2003 Annual Bench and Bar Conference and co-chairing a New York State Bar Association Panel on Alternative Dispute Resolution for the Trial Practice Committee of the State Bar's Commercial and Federal Litigation Section), and he has lectured extensively and has been interviewed by print, radio and television journalists to provide commentary on a variety of general business law, litigation, securities law, bankruptcy and trial issues.  Mr. Entwistle was a member on the Federal Bar Council's 2005 Winter Bench & Bar Planning Committee and he spoke on both the Class Action Litigation and Cross Border Issues Panels at the Federal Bar Council's 2005 Conference.  Mr. Entwistle is also the author of articles and publications on various legal and business topics, including:  "Broader CEPA a Mixed Blessing," New Jersey Law Journal, April 9, 2007; "Imputation Doctrine No Longer Protects Auditors," The Business Suit, August 2006; "Second Circuit Update:  Thompson Memorandum's Attorneys' Fees Provision Held Unconstitutional," The Business Suit, August 2006; "Second Circuit Update: Beer Supplier and Distributor Must Arbitrate Dispute Despite New York Law to the Contrary," The Business Suit, DRI, January 5, 2006; "Corporate Exposure and Employment Practices Liability," Mealey's Reinsurance Conference, November 2000; "Distinguishing Valid Fraud Claims From Trumped Up Breach of Contract Actions," The Business Suit, Winter 2000; "The Fine Line Between An Auditor's Recklessness and Intent to Deceive," The Business Suit, Summer 1999; "What a Web We Weave . . . Jurisdiction in Web-Related Litigation," The Business Suit, Winter 1998 (DRI); "Due Deference -- The Supreme Court Confirms the Post-Daubert Discretion of the Trial Judge as the Gatekeeper," The Business Suit, Winter 1998 (DRI); "Red Light, Green Light, 1-2-3:  Stop and Go Traffic on the Information Superhighway," The Business Suit, Winter 1998 (DRI); "The Inevitable Disclosure Doctrine and the Economic Espionage Act:  Emerging Weapons In the Battle to Protect Trade Secrets from Theft and Misappropriation," The Business Suit, Spring 1998 (DRI); "Covenants Not to Compete and the Duty of Loyalty," (DRI Spring 1997 Conference Chicago); "New York Business Law Update 1997," (New York State Society of CPA's); "New York Business Law Update 1998," (New York State Society of CPA's); "Excess Insurers Late Notice and Prejudice, American Home Puts The Issue to Rest," New York Law Journal, July 1993; "Managing the Risks of Accountants Liability, A Legal Perspective," New York Society of CPA's, 1993, 1995, 1997, 1998.  In 2005 the Texas State Bar Association asked Mr. Entwistle to videotape a talk on disaster related issues to assist lawyers and other professionals in the wake of Hurricane Katrina.

After a brief tenure in the District Attorney's office, Mr. Entwistle became a lead trial and appellate attorney at Wilson Elser Moskowitz Edelman & Dicker, trying a broad variety of commercial, securities, insurance, fraud and government-related matters.  During the following years with the Mudge Rose firm, Mr. Entwistle's trial and appellate practice also came to include transaction-related litigation, antitrust and bankruptcy work.  Mr. Entwistle's practice now focuses on representing public and private institutional investors in litigation, transactional and

bankruptcy matters.  Mr. Entwistle also works closely with the governors, treasurers and attorneys general of several states.  In connection with the Firm's Corporate Practice, Mr. Entwistle has acted as lead counsel on joint ventures, restructurings, venture capital placements and a multi-billion dollar leveraged buyout.

**State Bar Admissions**
New York, New Jersey, Illinois, Texas, Colorado, District of Columbia, Georgia (pending)

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second, Third, Seventh and Eighth Circuits; U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the District of New Jersey; U.S. District Court for the Northern District of Illinois; U.S. District Court for the District of Colorado and U.S. District Court for the Eastern District of Michigan; and state and federal courts in the states of New York, New Jersey, Illinois, Texas, Colorado, District of Columbia and Georgia (pending)

**Vincent R. Cappucci**

Vincent R. Cappucci is a founding partner of the Firm and is Head of its Securities Litigation Practice. Throughout the years, Mr. Cappucci has served as lead counsel in many high profile securities class action and derivative litigations as well as individual actions representing some of the nation's largest public pension systems, financial institutions, money managers and wealthy individuals. He has a distinguished record of successes in class litigation, having prosecuted cases in his career which have resulted in recoveries in the billions of dollars. He has personally participated in obtaining four of the top ten securities class action recoveries ever achieved and in four of the remainder, represented public institutions electing to file direct actions. His experience includes a multitude of securities trials, arguments in numerous state and federal appellate courts, appeals to the U.S. Supreme Court, and mediation and dispute resolution.

In *In re DaimlerChrysler AG Securities Litigation*, a case that has received worldwide publicity alleging that the Daimler-Benz/Chrysler $36 billion acquisition was falsely portrayed as a "merger-of-equals," Mr. Cappucci served as lead counsel and in August 2003, achieved the largest settlement in a non-financial fraud securities action -- amounting to $300 million. Mr. Cappucci currently serves as lead counsel in *In re CMS Energy Securities Litigation*, one of the largest pending energy trading fraud actions involving in excess of $8 billion dollars in falsely reported round-trip trading.

Mr. Cappucci has lectured before associations of the bar and various professional organizations and regularly appears on *CNN's Money Line* and *CNBC's Power Lunch and Business Center*, providing expert commentary on a variety of securities litigation and corporate governance issues. Mr. Cappucci has for the last two years been a faculty member of the Annual National Conference on Corporate Governance and Equity Offerings sponsored by the UCLA Anderson School of Management and University of California Rady School of Management, with this year's topic focusing on the Sarbanes-Oxley Act of 2002 and developments in corporate fraud litigation. He also addressed legal practitioners and financial professionals before the National Association of Public Pension Fund Attorneys, Council of Institutional Investors and The American Conference Institute ("Trying and Defending Securities Class Actions").

Mr. Cappucci lectured before international institutional investors on corporate governance and shareholder litigation at the 2003 and 2004 annual conferences of the International Corporate Governance Network ("ICGN") conducted in The Netherlands and Brazil. Mr. Cappucci also serves on the ICGN Accounting and Auditing Practices and Executive Remuneration Board Committees.

Mr. Cappucci is the author of numerous articles appearing in a host of publications, including: "Securities Class Actions: Settlements," The Review of Securities & Commodities Regulation, October, 2003; "Beyond the Sarbanes-Oxley Bill: Additional Measures to Increase Corporate Accountability and Transparency," NAPPA Report, September 2002; "Misreading 'Gustafson' Could Eliminate Liability Under Section 11," New York Law Journal, Sept. 22, 1997; "Liability for Excessive Executive Compensation," The Corporate Governance Advisor, March/April, 1997; "Must Reliance Be Proven To Certify A Class?," New York Law Journal, Aug. 30, 1996, Republished, Securities Reform Act Litigation Reporter, Vol. I; "Class Action Lawsuits and

Securities Fraud: A Plaintiff Lawyer's View of the Litigation Reform Act," Securities Industry News, Oct. 7, 1996; "Conflicts Between Rule 23 And Securities Reform Act," New York Law Journal, April 2, 1996; "Casino Law Is Consistent With Equal Protection," New York Law Journal, March 20, 2002; "Hot Topics in Advertising Law: Investor Fraud," The Association of The Bar of the City of New York, October 22, 2003; and "Did I Really Say That? The Truth Behind the DaimlerChrysler Merger," NAPPA Report, November 2003. Mr. Cappucci is also the author of "Corporate Governance: 2005 in Review" published by Institutional Investor in its 2005 Compliance Reporter.

Mr. Cappucci received his undergraduate degree from Fordham University with a B.S. in Accounting and his law degree from Fordham University School of Law. Mr. Cappucci has also been named to the Martindale-Hubbell Bar Register of Preeminent Lawyers, for his expertise in securities litigation. In addition to membership in various state and national bar associations, Mr. Cappucci is a member of the Federal Bar Council (Member, Programs Committee), the New York State Bar Association (Committee on Securities Litigation), the National Association of Securities Class Action Attorneys, the Association of the Bar of the City of New York (Member, Committee on Consumer Affairs and Sub-Committee on Class Actions), the American Bar Association and the Association of Trial Lawyers of America. He also has been a visiting instructor at Fordham University School of Law at various conferences and Advanced Law Seminars, and is a member of the Dean's Law Advisory Committee and the Law School Planning Committee.

**State Bar Admissions**
New York

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second, Fifth, Seventh, Eighth and Ninth Circuits; U.S. District Court for the Eastern, Northern and Southern Districts of New York; U.S. District Court of the Central District of Illinois; U.S. District Court of the Northern District of Illinois; U.S. District Court for the Eastern District of Michigan; and all courts of the State of New York

**William S. Gyves**

William S. Gyves concentrates his practice on the litigation of complex commercial and employment matters. He chairs the Firm's commercial litigation group. In addition to defending and prosecuting claims in the traditional litigation context, Mr. Gyves has considerable experience in successfully resolving disputes through mediation, arbitration and direct pre-litigation negotiations.

Representing a diverse spectrum of clients -- ranging from the New York State Superintendent of Insurance and one of the world's premier jewelers to financial institutions and institutions of higher education -- Mr. Gyves has prosecuted and defended matters involving a correspondingly wide array of business disputes. In his employment practice, Mr. Gyves counsels and represents management in, among other things, restrictive covenant, breach of fiduciary duty, harassment, discrimination and retaliation matters.

On behalf of his clients, Mr. Gyves recently:

- obtained the pre-discovery dismissal of a federal securities fraud case and defeated a related application for injunctive relief, successfully arguing that membership interests in a limited liability company do not constitute securities under the federal securities laws;

- secured the voluntary withdrawal of a $50 million finder's fee claim brought against a financial institution, based on the strength of a pre-answer investigation demonstrating the claim to be without factual or legal merit;

- obtained through mediation an expedited settlement on behalf of a group of hedge funds defrauded by a company's misrepresentations regarding its financial condition and prospects;

- convinced a court to compel a defendant to surrender monies shown to have been moved illegally to an offshore haven and then traced back to the defendant's principals in the United States;

- obtained injunctive relief precluding a former employee from competing with a client, demonstrating through a computer forensics investigation that the former employee had pilfered the client's confidential and proprietary materials;

- secured the pre-discovery dismissal of a putative consumer fraud class action brought against a financial institution;

- secured injunctive relief halting a construction project that had been disrupting the operations of a college campus; and,

- obtained summary judgment in favor of a financial institution in litigation arising out of a fraudulent mortgage scheme.

A *cum laude* graduate of St. John's University School of Law, Mr. Gyves was Co-Executive Notes and Comments Editor of the St. John's Law Review. After obtaining his undergraduate degree from Fordham University and before attending law school, Mr. Gyves worked for six years as a newspaper journalist, garnering a number of awards for his coverage of politics, government and other matters.

Mr. Gyves has published on a variety of legal issues, including "Welcome Relief for Lenders: Federal Truth and Lending Act Trumps New Jersey Law," New Jersey Law Journal, October 10, 2005; "Trouble No Maw: Employers Breathing Easier As Court Clarifies the Enforceability of Restrictive Covenants," The Metropolitan Corporate Counsel, July 2004; "Electronic Discovery Is a Fact of Life," New Jersey Law Journal, April 29, 2002; "Counsel and Computer Forensics Experts: Teaming Up to Get It Right on Electronic Discovery," The Metropolitan Corporate Counsel, November 2001; "Competing With Former Employers," New Jersey Law Journal, June 25, 2001; "The Duty to Disclose Inaccurate Deposition Testimony," New Jersey Law Journal, September 4, 2000; "Navigating the Minefield of Ex Parte Communications," New Jersey Law Journal, April 10, 2000; "Distinguishing Valid Fraud Claims From Trumped Up Breach of Contract Actions," The Business Suit, Winter 2000; and "The Fine Line Between An Auditor's Recklessness and Intent to Deceive," The Business Suit, Summer 1999. He also has lectured on a variety of topics, including "E-Discovery in the Post-Enron Era," Bureau of National Affairs Litigation Forum: Electronic Discovery and Document Retention, May 1, 2003, and "Defending the Deposition: Potted Plant or Savvy Litigator?" New York State Bar Association Seminar on Deposition Practice and Practicalities in State and Federal Court, April 26, 2002.

Mr. Gyves is a member of the Federal Bar Council, American Bar Association, New York State Bar Association, Association of the Bar of the City of New York, Defense Research Institute, New Jersey Defense Association, New Jersey State Bar Association, Association of the Federal Bar of the State of New Jersey, the Morris County (N.J.) Bar Association, the Bar Association of the Third Federal Circuit and the Historical Society of the United States District Court for the District of New Jersey. He is also a Master of the Brennan-Vanderbilt Inn of Court.

**State Bar Admissions**
New York and New Jersey

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second and Third Circuits; U.S. District Court for the Eastern, Northern and Southern Districts of New York; U.S. District Court for the District of New Jersey; and all courts of the States of New York and New Jersey

**Craig E. Nelson**

Craig Nelson chairs our corporate practice and is the managing partner of our Chicago office. He graduated with a B.A. in Accounting from the University of Notre Dame, an M.B.A. from the University of Houston and a J.D. from the University of Texas School of Law.

Prior to entering the practice of law, Mr. Nelson was a certified public accountant and practiced with the international public accounting firm of Coopers & Lybrand (now PricewaterhouseCoopers). He was initially located in C&L's Chicago office where he audited companies operating in many industries including manufacturing, real estate and financial services. Most of these companies had international operations. Mr. Nelson relocated to C&L's Houston office and transferred to the tax department. His practice focused on advising venture capital firms investing in portfolio companies and buyout firms buying and selling businesses. With his financial and tax accounting skills, auditing experiences and knowledge of C&L developed valuation software, Mr. Nelson assisted clients in valuing targeted companies, developed structures to acquire controlling interests of targeted companies and prepared forecasted financial statements.

Mr. Nelson advises companies involved in a variety of transactions including mergers, acquisitions, dispositions and start-ups. He also represents clients involved in: (1) issuing debt and/or equity capital; (2) making equity and/or debt investments; (3) management buyouts (including a multi-billion dollar leveraged buyout); (4) the formation of strategic alliances; and, (5) partnership dissolutions. Several of Mr. Nelson's clients are technology-based where intellectual property is one of the most significant assets.

A significant portion of Mr. Nelson's legal practice is handling the legal needs of investors and the general transactional needs of our corporate clients. He advises both American and foreign wealthy individuals and large estates on legal matters in connection with wealth management issues such as estate planning, succession planning, the legal review of documents including investment-related documents, asset protection planning and general legal matters in connection with family-owned or controlled businesses. Mr. Nelson works closely with these individuals, their family offices and their other advisors to help develop and implement sound legal planning. Most of his clients view him as an "outsourced general counsel." Mr. Nelson advises foreign investors investing in the United States through structures that minimize worldwide taxation while legally preserving anonymity which is oftentimes desired by investors.

Mr. Nelson works with the Firm's litigators on securities law class actions and private actions. His combination of legal, accounting and business knowledge provides a valuable addition to our litigation team when conducting investigations, identifying facts and developing litigation strategy for these complex cases based on fraudulent financial statements. Mr. Nelson works with the experts on these cases to quantify damages caused by the fraud committed by the defendants in these cases. In addition to litigation related activities, Mr. Nelson oversees the Firm's monitoring services for several of our institutional clients. These monitoring services are designed to timely detect, calculate and report losses to clients resulting from investments in certain publicly traded securities.

Mr. Nelson advises syndicators of various funds (both domestic and offshore) through which investors acquire businesses or invest in U.S. securities and commodities. While representing AT&T, he negotiated and structured teaming agreements and other relevant documents among the world's largest companies engaged in infrastructure development projects in Vietnam, China, the Philippines, Indonesia, Qatar, the British Virgin Islands and other countries located in Europe and South America. Many of Mr. Nelson's clients continue to engage in cross-border transactions.

**<u>State Bar Admissions</u>**
Illinois

**Harold F. McGuire, Jr.**

Harold F. ("Skip") McGuire, Jr. is a graduate of Princeton University and Columbia Law School. Mr. McGuire has vast experience in a number of fields as a trial lawyer and litigation counselor with a national practice, representing plaintiffs and defendants in about equal proportion. He began his career at Cravath, Swaine & Moore and then served as an Assistant U.S. Attorney for the Southern District of New York for more than four years, during which he prosecuted numerous high-profile securities frauds and other white-collar crimes. He is currently special litigation counsel to the Global Crossing Estate Representative and is prosecuting the estate's multi-billion dollar claims arising out of Global Crossing's bankruptcy.

For more than 25 years before joining Entwistle & Cappucci, Mr. McGuire was the senior partner of a litigation boutique, McGuire, Kehl & Nealon, where he carried on a varied litigation practice. Mr. McGuire's significant cases include: the successful representation of the Major League Baseball Players Association in a series of collusion grievances against all the Major League baseball clubs, which resulted in a $280 million settlement in the early 1990s after five years of arbitration and more than fifty days of expert testimony from economists; service as a court-appointed Special Agent to investigate and report on alleged securities and accounting frauds of International Systems and Controls Corp; representation of numerous witnesses, targets and defendants in criminal investigations and prosecutions in the areas of securities law, mail and wire fraud, antitrust and taxation; multi-million dollar civil litigation including both the prosecution and defense of class actions involving securities fraud, civil RICO, commercial contracts, ERISA entitlements, intellectual property, franchising, licensing, accounting, business torts and antitrust issues; representation of business clients in arbitration and mediation proceedings springing from contract and licensing disputes; representation of debtors and creditors in adversary proceedings in bankruptcy courts; and appellate practice in state and federal courts involving most of these subject matters.

Mr. McGuire has litigated well over a hundred matters to a conclusion in trial and arbitration proceedings, and has handled dozens of appeals in federal and state courts. He is proud of his judgment in advising clients about whether to litigate or settle. He serves on the Departmental Disciplinary Committee for the First Judicial Department. He is a member of the American Bar Association, the New York State Bar Association, The Association of the Bar of the City of New York, and The Federal Bar Council.

**State Bar Admissions**
New York

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Second, Third, Fifth, Seventh and Tenth Circuits; U.S. District Courts in various jurisdictions; United States Tax Court; and all courts of the State of New York

**Arthur V. Nealon**

Arthur V. Nealon is a partner in the Firm's Litigation Section and concentrates his practice in the resolution of commercial, securities, employment and white-collar criminal matters. He has represented corporations, partnerships and individuals at trials and appeals in federal and state courts and in arbitration proceedings at the AAA, NYSE and NASD.

A graduate of Columbia College and Columbia Law School, Mr. Nealon was a founding partner of the New York firm of McGuire, Kehl & Nealon, LLP. He was previously an Assistant to the United States Special Prosecutor, a litigation associate at Christy & Viener in New York, and an Assistant District Attorney for New York County.

Over the course of more than 20 years, Mr. Nealon has represented plaintiffs and defendants in securities, accounting and employment litigation and arbitration. He has also handled professional malpractice defense matters for attorneys, physicians and accountants, and defended individuals accused of securities, tax and financial crimes in federal and state court. He is a member of the American Bar Association, the New York State Bar Association, The Association of the Bar of the City of New York and the New York County Lawyers Association.

**<u>State Bar Admissions</u>**
New York

**<u>Court Admissions</u>**
U.S. Supreme Court; U.S. Court of Appeals for the Second and Seventh Circuits; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. District Court for the Central District of Illinois; and all courts of the State of New York

**Robert N. Cappucci**

Robert N. Cappucci received his undergraduate degree from Fordham University, graduating *cum laude* and in *cursu honorum*. He received his law degree from Fordham University School of Law, where he was Articles Editor of the Fordham International Law Journal. He is the author of "Amending the Treatment of Defense Production Enterprises Under the U.S. Exon-Florio Provision: A Move Toward Protectionism or Globalism?," 16 Fordham Int'l L.J. 652 (1993). Over the years, Mr. Cappucci has litigated a wide range of securities class actions, including *In re Dollar General Corporation Securities Litigation*. Civ. No. 3:01--388 (D. Tenn.); *In re BankAmerica Corp. Securities Litigation*, Civ. No. 1264 (S.D. Georgia); and *In re CMS Energy Securities Litigation*, Civ. No. 02-cv-72004 (E.D. Michigan).

Mr. Cappucci is a member of the Commercial and Federal Litigation Sections of the New York State Bar Association and a member of the Litigation Section of the American Bar Association, The Federal Bar Council, The Association of the Bar of the City of New York, and The Association of Trial Lawyers of America.

Before entering private practice, Mr. Cappucci interned with the Honorable John E. Sprizzo, United States District Court, Southern District of New York.

**State Bar Admissions**
New Jersey and New York

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Third and Eighth Circuits; U.S. District Court for the District of New Jersey; U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the Eastern District of Michigan; and all state courts of New York and New Jersey

**Johnston de F. Whitman, Jr.**

Johnston de F. Whitman, Jr., Firm partner graduated *cum laude* from Colgate University. He received his law degree from Fordham University School of Law, where he was a member of the Dean's List and was a member of the Fordham International Law Journal.

Mr. Whitman has a broad range of experience in litigating securities fraud claims and has represented public institutions in obtaining some of the largest securities class actions recoveries since the enactment of the Private Securities Litigation Reform Act of 1995 (the "PLSRA").

Mr. Whitman is also an active member of the Firm's bankruptcy practice and, along with Andrew Entwistle, drafted and argued numerous motions in the Enron bankruptcy proceedings, among others. Mr. Whitman currently serves as a member of the Trust Advisory Committee in connection with the Oakwood Homes Corporation Chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware.

Mr. Whitman practices out of our New York office. He continues to focus his practice on securities litigation, representing private and public institutions in direct and class actions.

**<u>State Bar Admissions</u>**
New York

**<u>Court Admissions</u>**
U.S. District Court for the Eastern and Southern Districts of New York; and all courts of the State of New York

**Paul R. Bradshaw**

Paul R. Bradshaw graduated from East Carolina University and attended Florida State University College of Law, where he served as an editor of the Law Review and graduated with honors. Mr. Bradshaw is the resident partner in the Firm's Florida office.

Mr. Bradshaw previously served as an attorney for the Florida Department of Community Affairs.  Under the administration of Governor Bob Martinez, he acted as staff counsel to the Governor and Cabinet on environmental issues and between 1988 and 1990, headed the state division charged with implementing Florida's landmark growth management legislation.  He then advanced to Chief Cabinet Aide to Governor Martinez and Director of Florida's Office of Planning and Budgeting, serving as such until 1991, when he left state government to enter private practice.  Mr. Bradshaw recently worked as a consultant to Governor Jeb Bush both in connection with his 1998 gubernatorial campaign and more recently on a variety of legislative issues.

Mr. Bradshaw has extensive experience in handling regulatory and administrative matters through state agencies and the courts, as well as in monitoring and tracking legislation and in preparing legislative and political strategies for clients.

**<u>State Bar Admissions</u>**
Florida

**Richard E. Nawracaj**

Richard E. Nawracaj has exceptional experience as both in-house and outside counsel with a background and expertise in information technology law, intellectual property law, commercial transactions, mergers and acquisitions, and litigation/dispute resolution.  Mr. Nawracaj is a skilled negotiator with a solid understanding of the relationship between the law and furthering business interests, with a proven ability to successfully position organizations to attain specific objectives.

Mr. Nawracaj received a B.S. degree in Biochemistry from the University of Illinois-Champaign-Urbana in 1990.  He went on to graduate from Loyola University with a J.D. where he was the recipient of American Jurisprudence award for highest grade in Sales and Securities.  Mr. Nawracaj later went on to J.L. Kellogg Graduate School of Business, where he triple majored in Management and Strategy, Finance and International Business.

Mr. Nawracaj is regarded as a key advisor of senior management with aptitude to resolve matters in a desirable legal as well as business manner.  He maintains a creative legal and business mind, with the capability to grasp complex legal, financial and business concepts with ease.

Prior to joining Entwistle & Cappucci as Partner, Mr. Nawracaj was Assistant General Counsel at Divine, Inc. and prior to that, at MarchFirst, Inc.  His key accomplishments there included his negotiations of software reseller agreements for third party intellectual property incorporated in corporate software products and establishing, implementing and managing a program for third party licensing of corporate patents, creating $5 million in new annual revenue.  In addition, Mr. Nawracaj successfully managed five lawsuits concerning theft and improper use of corporate intellectual property by former employees.

Mr. Nawracaj is a member of the Illinois State Bar Association and the American Bar Association and principally practices out of the Chicago office.

**State Bar Admissions**
Illinois

**Other Admissions**
U.S. Patent and Trademark Office

**Alix R. Rubin**

Alix R. Rubin concentrates her practice in the areas of employment law and complex commercial litigation and is a partner in the Firm's litigation and employment groups.  Based in the Firm's New Jersey office, Ms. Rubin counsels and represents both institutional and individual clients in a variety of business disputes in federal and state courts as well as before administrative agencies, mediators, and arbitrators.

Ms. Rubin has achieved the following results for her clients:

- dismissal of a student's disability discrimination claim against a university on summary judgment in federal court;

- injunction against New Jersey's enforcement of discriminatory trucking regulations that violate the dormant commerce clause, which was upheld by the federal appeals court;

- dismissals of discrimination charges filed with the Equal Employment Opportunity Commission;

- reversal of the federal district court's erroneous dismissal of claims of two Chinese waitresses against their former employer for wage and hour violations as well as ethnicity and gender discrimination;

- favorable settlements in preference actions in the bankruptcy court;

- guardianships for incapacitated persons; and,

- asylum and permanent resident status for individuals and their families who fled from countries in which they were persecuted and tortured for their political beliefs.

Ms. Rubin also counsels clients with respect to the following:

- negotiation of employment and severance agreements;

- updating employee handbooks to comply with relevant statutes and regulations; and,

- reductions in force.

A graduate of the University of Pennsylvania Law School, Ms. Rubin was Associate and Book Review Editor of the Comparative Labor Law Journal as well as a Legal Research Fellow.  After obtaining her Bachelor of Arts Degree in English and French *magna cum laude* from Tufts

University, she earned a Master of Journalism Degree from Temple University before attending law school.

Ms. Rubin is a member of the American Bar Association, New Jersey State Bar Association, New York State Bar Association, and Association of the Federal Bar of the State of New Jersey. She served as a facilitator on the New Jersey World Trade Center Disaster Legal Response Team, and was named 2003 Pro Bono Attorney of the Year by Volunteer Lawyers for Justice, on whose board she currently serves.  Prior to joining Entwistle & Cappucci, Ms. Rubin was associated with the New Jersey law firm of Lowenstein Sandler.

**Publications**

"Broader CEPA a Mixed Blessing," New Jersey Law Journal, April 9, 2007;

Co-author with Andrew J. Entwistle, "Second Circuit Update:  Thompson Memorandum's Attorneys' Fees Provision Held Unconstitutional," The Business Suit, DRI, August 15, 2006;

Co-author with Andrew J. Entwistle, "Second Circuit Update:  Sarbanes-Oxley Permits Corporation to Advance Defense Costs to Its Officers and Directors," The Business Suit, DRI, April 25, 2006;

Co-author with Andrew J. Entwistle, "Second Circuit Update:  Beer Supplier and Distributor Must Arbitrate Dispute Despite New York Law to the Contrary," The Business Suit, DRI, January 5, 2006;

"Circumstantial Proof Is Sufficient," New Jersey Law Journal, December 26, 2005;

Contributing author, The Practical Guide to Federal and New Jersey Employment Law:  The Employer's Resource, Lowenstein Sandler PC and NJBIA, 2001-2002 and Second editions;

"Anonymous 'Posters' Complicate Discovery," New York Law Journal, November 19, 2001;

"The Americans With Disabilities Act, Reasonable Accommodations and Therapists' Responsibilities," OT Practice, Volume 3, Issue 7, July/August 1998;

"Mental Disabilities and the ADA:  What's an Employer to Do?" Exploring the Real World of Employee Relations:  An Interactive Workshop, January 21, 1998;

"What the Balanced Budget Act Means for New Jersey Health Care Providers," Hannoch Weisman Health Update, Volume III, No. 3, Fall 1997;

"HIV Positive, Employment Negative? HIV Discrimination Among Health Care Workers in the United States and France," Comparative Labor Law Journal, Volume 17, No. 2, Winter 1996.

**State Bar Admissions**

New York, New Jersey and Pennsylvania

**<u>Court Admissions</u>**
U.S. Supreme Court; U.S. Court of Appeals for the Second and Third Circuits; U.S. District
Court for the Eastern and Southern Districts of New York; U.S. District Court for the District of
New Jersey; and all state courts of New York, New Jersey and Pennsylvania

*Senior Counsel*

**Stephen D. Oestreich**

Stephen D. Oestreich joined Entwistle & Cappucci as Senior Counsel to the Firm after spending 25 years as a Senior Partner and Co-Chairman of the Litigation Department of another New York firm.

Over the years, Mr. Oestreich has served as lead or co-lead counsel in numerous securities class actions and derivative actions.  Among his many noteworthy cases, Mr. Oestreich was a lead attorney in *In re The Standard Oil Company/British Petroleum Litigation*, which resulted in a benefit of over $600 million to the class; *Joseph, et al. v. Shell Oil Company, et al*., a class action before the Delaware Chancery Court, which resulted in a $205 million settlement for the benefit of the class; *In re Donnkenny, Inc. Securities Litigation*; *In re Salomon Brothers Securities Litigation*, which settled for $52 million; and the *Itel Securities Litigation*, which resulted in a class settlement of over $40 million.

Mr. Oestreich was also appointed by the Delaware District Court as lead counsel in the *In re Phillips Securities Litigation* and served as a member of plaintiffs' executive committee, as well as plaintiffs' lead settlement counsel in the *In re Gulf Oil/Cities Service Tender Offer Litigation*. Mr. Oestreich also served as co-lead counsel in, and was co-trial counsel in *Sirota v. Solitron Devices, Inc.*, which, after an eleven-day trial, resulted in a jury verdict for the plaintiff class on all issues of liability and damages.  Mr. Oestreich was recently retained by the Global Crossing Estate Representatives as special litigation counsel in connection with the *Global Crossing Bankruptcy* to recover funds on behalf of the Trust.

Mr. Oestreich graduated from Bucknell University (B.S./B.A.) and Fordham University Law School (J.D.), where he was a member of the Law School's National Moot Court Team and Sutherland Moot Court Team and was the recipient of the George W. Bacon Award and I. Maurice Wormser Award.  After law school, he served as trial attorney with the Enforcement Division of the United States Securities and Exchange Commission in its New York Regional Office, where he represented the SEC in numerous hearings and trials.

Mr. Oestreich is presently a member of the Committee on Securities and Exchanges and the Federal Courts Committee of the New York County Bar Association.  His experience also includes serving as Special Master for the Supreme Court of New York and as an arbitrator in the United States District Court for the Eastern District of New York.  Aside from his practice, Mr. Oestreich has also been a guest lecturer on the subject of securities litigation at the Federal Bar Association and at the Rutgers Graduate School of Business.  Most recently, Mr. Oestreich has been called upon by financial news networks to discuss recent developments involving the securities laws.  In 1998, he was the recipient of the Man of the Year Award for the Long Island Chapter of the Crohn's and Colitis Foundation of America.

**State Bar Admissions**
New York

**<u>Court Admissions</u>**
U.S. Supreme Court; U.S. Court of Appeals for the First, Second, Third and Ninth Circuits; United States District Court for the Eastern and Southern Districts of New York; and all courts of the State of New York

*Of Counsel*

**M. Diane Allbaugh**

M. Diane Allbaugh graduated from Cameron University and holds a J.D. from the University of Oklahoma.  She is a member of the Bars of the State of Texas, Oklahoma and the District of Columbia and has published articles in many national law publications.

Ms. Allbaugh represents a unique cross-section of clients, including public utilities, higher education institutions, health care entities and telecommunications companies in many states on issues primarily relating to various intergovernmental matters.

In 1997, Ms. Allbaugh organized a unique coalition of corporations, associations and state offices to host a symposium on long-term care at the LBJ School of Public Affairs at the University of Texas at Austin.  Partners in the coalition included those representing both sides of long-term care issues, including state agencies, legislative offices, associations, HMO's and major corporations.

As Legal Counsel and Executive Assistant to the Vice Chairman of the Oklahoma Tax Commission from 1992 to 1994, Ms. Allbaugh assisted in developing a strategic plan for reengineering the agency.  Prior to this, Ms. Allbaugh served as Assistant General Counsel for the Oklahoma Tax Commission and practiced in the federal, state, county and administrative courts.

**<u>State Bar Admissions</u>**
District of Columbia, Oklahoma and Texas

**Hon. Thomas W. Alfano**

Thomas W. Alfano received his undergraduate degree from Fordham University where he was class valedictorian and elected to Phi Beta Kappa.  He received his law degree from Fordham University School of Law and is admitted to all state and federal courts serving New York State.

Mr. Alfano currently acts in a Senior Counsel capacity in various securities, antitrust and consumer fraud litigations.  Mr. Alfano has extensive trial experience and was previously associated with Skadden, Arps, Slate, Meagher & Flom.

Mr. Alfano was elected to the New York State Assembly in 1996.  He represents the 22nd Assembly District which covers southwest Nassau County.  During his second term in the Assembly, Mr. Alfano was selected to serve as Vice-Chairman of the Assembly Joint Conference Committee.  In this capacity, Mr. Alfano has been speaking and leading the Conference on issues relating to job creation, tax, education and healthcare.  Mr. Alfano has also assisted in spearheading the Governor's Office of Regulatory Reform's State Legislature Outreach Program, formed to solicit input from citizens and businesses across the state to reform the regulatory process.  Mr. Alfano is a frequent commentator on state legislative television programs broadcast from the State Capitol.  Additionally, he has made guest appearances on New York City's National Public Radio on current legislative issues.

Mr. Alfano was also named to serve on the New York State Legislative Budget Conference Committee.  The Conference Committee is comprised of leaders from the Senate and Assembly who formulate the state budget.

Mr. Alfano is a member of the American Legislative Exchange Council, Council of State Governments, National Conference of Insurance Legislators where he sits on the Property and Casualty committee and the subcommittee on Natural Disaster Insurance Legislation, the National Republican Legislators Association and the Nassau County Bar Association.

**Senator Adeline J. Geo-Karis**

Adeline J. Geo-Karis is Of Counsel to the Firm and she is currently first in seniority in the Illinois Senate Republican Caucus, having served the 31st District of Illinois since 1979. The first woman in Illinois history ever to serve in Senate leadership, she served as Assistant Senate Majority Leader from 1993-2003. She previously served six years in the House of Representatives. Named Minority Spokesman for the Senate Executive Appointments Committee, she is currently one of two Republican Senators to serve as co-chairman in the 93rd General Assembly. Additionally, she serves as a member of the Financial Institutions Committee and chairman of the Senate Republican Task Force on Veterans. She is also the first lady of the Senate and a precinct committeewoman and parliamentarian for the Lake County Republican Central Committee. Senator Geo-Karis previously served as co-chair of that committee. She was a delegate to the 1984, 1988, 1996 and 2000 National Republican Convention and secretary to the Illinois Delegation. She was alternate delegate to the 1992 National Republican Convention.

Senator Geo-Karis pioneered legislation on gasohol, solar energy and other alternative energy resources and she successfully sponsored and supported bills for strong crime control and to benefit senior citizens, youth, people with disabilities and the working majority. She was cited for her sponsorship of the Nuclear Safety Preparedness Act, the Alternative Energy Act, and many laws to increase safety on Illinois lakes. She also sponsored the "Guilty but Mentally Ill" law. She also successfully sponsored the repeal of the Illinois inheritance tax.

The Adeline Geo-Karis Leadership Award at Zion-Benton High School was named for her with annual scholarships to be donated annually beginning in 2001.

Senator Geo-Karis is the recipient of numerous honors and awards including: 2002 Friend of Agriculture, Illinois Farm Bureau; 2002 Certificate Appreciation for Excellence in Political Leadership, Treasurer Judy Baar Topinka; 2002 Appreciation Award, Order of AHEPA, Blue Ribbon District 13; 2000 Outstanding Public Service Award, DePaul University College of Law Alumni; Primary Health Care Association Award; 2000 Liberty Bell Award, 19th Judicial Circuit; 1999 Veteran of the Year, American GI Forum; 1999 Child Care Coalition Award; 1999 Legislator of the Year, Illinois Association of County Officials; 1998 Friend of Business LUCI (Leading Us in Commerce and Industry) Award; Hellenic American Achievement Award; North Shore D.A.R. Americanism Medal; Daughters of Penelope Woman of the Year; Illinois Federation of Independent Colleges and Universities Outstanding Legislator; Illinois Association of Park Districts Award; Jane Addams Leadership Award; NAACP Award from North Chicago Chapter; YWCA of Lake County Award for Outstanding Achievement in Government; United Hellenic Voters of America Most Distinguished American of Greek Ethnic Origin in the Field of Government; Illinois Women's Political Caucus Carrie Chapman Catt Award; Greater Waukegan Israel Bond Rally Honoree; Illinois State's Attorneys Legislative Award; Military Order of the Purple Heart Award; and the Midwestern Regional Medical Center Award.

Senator Geo-Karis was born in Tegeas, Greece and educated in the United States. She attended Northwestern University and received her LL.B from DePaul University. She served as Lt. Commander with Top Secret Clearance in the U.S. Naval Reserves. She is a member of St.

Demetrios Greek Orthodox Church in Waukegan, Illinois and served as the past president of its Parish Board of Trustees and Ladies Auxiliary.

**Dr. M. Hossein Bor**

M. Hossein Bor received a Masters in Comparative Law from George Washington University Law School and Ph.D. and Masters Degree in International Law and International Relations from American University. Dr. Bor also has a degree in law from Tehran University and is a member of the Bar of the District of Columbia.

Dr. Bor served as Energy and Economic Advisor to the Embassy of the State of Qatar in Washington, D.C. from 1982 to 1998. His practice includes commercial law, international law, international relations, energy and petroleum, international trade, international transactions, corporate law, contracts, and administrative law.

Dr. Bor is active in facilitating trade, joint ventures, investment, and project development between American corporations and their counterparts from the Gulf (G.C.C.) countries. He advises U.S. companies about conducting business in the Gulf and overseas corporations about business operations in the U.S., including analysis of U.S. and foreign policy and regulatory issues. Dr. Bor maintains a wide range of contacts among government officials, lawyers, the business community and academia in the United Arab Emirates, Qatar, Saudi Arabia, Kuwait, Bahrain and Iran.

Dr. Bor serves as an Adjunct Professor of Law at the Catholic University of America and he has written extensively on various issues relating to the Middle East, including the critically regarded treatise Iran and Its Nationalities, Karatchi: Pakistan Adab Publication, 2000. Dr. Bor has also appeared widely on television and radio broadcasts, including the Voice of America and BBC.

**John A. Bohn**

John A. Bohn served for seven years as the President of Moody's Investors Service, the world's leading credit research and analysis company and a major publisher of financial information, with more than 1,500 employees in 10 countries. Mr. Bohn came to Moody's from a three-year term as President and Chairman of the Export Import Bank of the United States ("EXIMBANK"), a United States government corporation that finances and insures the sale abroad of American produced goods. During his tenure, EXIMBANK provided some $6 billion per year in loans, guarantees and insurance in more than 25 countries. Prior to his service with the bank, which he began as First Vice President and Vice Chairman, Mr. Bohn was Special Assistant to the Secretary of the Treasury, and United States Ambassador and Executive Director at the Asian Development Bank in Manila. Mr. Bohn advises corporate officers and directors on governance issues, counsels on transactional matters, and also currently sits on or chairs the Boards of several organizations whose focus is the Internet or other emerging technologies.

Mr. Bohn graduated with honors from Stanford University, he attended the London School of Economics as a Fulbright Scholar and then graduated in law from Harvard University. After practicing law in California and the Pacific Rim, Mr. Bohn joined the Wells Fargo Bank, where he spent four and one-half years in Tokyo, responsible for Far Eastern activities and, later, was head of the Bank's International Group in Los Angeles at its North American Division in San Francisco. A member of the Foreign Service Association, Mr. Bohn served on the Board of Directors of The Center for International Private Enterprise in Washington, D.C. for four years and serves as a Director of the National Committee on U.S.-China relations. He is a member of the Counsel on Foreign Relations and the Economic Club in New York. He is also a Trustee of The Monterey Institute in California, a member of the Council for Excellence in Government in Washington, and a member of a number of corporate boards.

**State Bar Admissions**
California and Guam

**Court Admissions**
U.S. Supreme Court; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court for the Northern District of California; Trust Territory of the Pacific Islands; and all courts of the State of California and Guam

**Warren P. Taylor**

Warren P. Taylor studied at Princeton University and the University of Oklahoma which ultimately awarded him both a Bachelor of Arts and his law degree.  Mr. Taylor is admitted to practice before the U.S. Tax Court, the U.S. Military Court of Criminal Appeals, the U.S. Supreme Court and the courts of the State of Oklahoma.  While on active duty in the Army, Mr. Taylor received the Bronze Star, Defense Meritorious Service medal, 4 Army Meritorious Service medals, the Army Commendation medal, and various foreign awards and meritorious unit awards.

Following his service in the field and after obtaining his law degree, Mr. Taylor served in various legal positions in the Army, including: Staff Judge Advocate, 2nd Infantry Division, Republic of Korea (Senior Legal Advisor to the Commanding General); Deputy Staff Judge Advocate, 4th Infantry Division; Command Judge Advocate, Military Assistance Command (Vietnam) (principal legal advisor to the U.S. Commanding General of Military Region IV, Mekong Delta, Republic of Vietnam); and Team Chief, Office of the Chief Trial Attorney of the Army (represented the Department of the Army in multi-million dollar contract disputes).  Mr. Taylor then served as Legal Advisor to the Secretary of the Army, advised the Secretary on Congressional investigative activities, developed and implemented "Legislative Action Plans", acted as liaison with Congressional Oversight and Investigative Committees, represented Department of the Army witnesses appearing before Congress, and acted as Lead Counsel for the Army in all personnel and procurement matters pending before the Congress.

Subsequently, Mr. Taylor was selected by General Colin Powell (then Senior Military Assistant to the Secretary of Defense) to be the Legislative Counsel to Secretary Weinberger.  In this capacity, Mr. Taylor developed and implemented defense procurement and acquisition policies, acted as counsel to the Secretary and Deputy Secretary of Defense and other Department of "Defense executives appearing before Congressional Committees, developed "Legislative Action Plans," wrote legislation in coordination with executive and legislative branch executives and successfully advocated before the U.S. Congress for the procurement of advanced weapons systems and for increased funding of "quality of life" programs for all branches of the U.S. military.  Mr. Taylor traveled extensively with Members of Congress and private sector executives as an advisor on national security and defense procurement and acquisition policies and procedures.

Since leaving the Department of Defense and entering the private sector, Mr. Taylor has represented clients in a variety of government relations, litigation and transactional matters including: representing the U.S. Air Force Association before the U.S. Congress; major defense contractors in connection with procurement issues; and a coalition of several American companies that successfully obtained a multi-million dollar contract to dismantle Russian chemical and biological weapons.  Mr. Taylor has also represented the Russian Federation in connection with various matters.

Mr. Taylor's extensive experience domestically before Congress, the Department of Defense, National Guard and various branches of the Armed Services and his overseas contacts in the former Soviet Union and the Middle East, place him in a unique position to assist domestic and foreign companies on government relations, corporate and litigation issues.

**Alfred V. Greco**

Alfred W. Greco received his undergraduate degree from Hunter College of the City University of New York, his law degree from Fordham University and is admitted in all state courts and federal courts in the Eastern and Southern Districts of the State of New York.

Mr. Greco started his legal career as a staff attorney with the Securities & Exchange Commission, Enforcement Division. In this capacity in the SEC's New York Regional Office, Mr. Greco engaged in all phases of enforcement matters involving injunctive actions in the federal courts against alleged violators of the securities laws including public corporations, securities brokerage firms and member firms of the New York Stock Exchange. The foregoing included supervision of preparation and review of extensive investigative reports, depositions and paperwork incident to litigation involving temporary restraining orders, preliminary injunctions and consent decrees. Mr. Greco also participated in and supervised administrative proceedings involving enforcement of all phases of the securities laws with respect to the brokerage community and its registered representatives. Mr. Greco left the SEC to enter private practice and later served as an adjunct professor of Law at Fordham University.

In the course of his private practice, Mr. Greco represents clients from a broad spectrum of the business world including securities underwriters, member firms of the New York Stock Exchange and foreign public and private corporations. This representation has covered all aspects of the federal securities laws including defense of enforcement proceedings and injunctive actions in both the federal and state courts and arbitration proceedings before the National Association of Securities Dealers and the New York and American Stock Exchanges.

During the past twenty-five years, Mr. Greco has represented a broad array of public and private corporations and securities underwriters in both litigated and transactional matters. He has had extensive experience in the preparation of registration statements and the required documentation relating to the public offering of securities, including preparation of complex prospectuses, negotiating and preparing complex underwriting agreements and preparation of documents for compliance with state (blue sky) and federal securities laws. Mr. Greco's area of expertise includes merger and acquisition transactions and the negotiation and preparation of complex documents in connection therewith.

Mr. Greco's extensive knowledge and broad experience has placed him in a unique position to represent or act as a special counsel for other law firms to advise novice as well as seasoned corporations concerning financing and equity offerings as well as acting as a troubleshooter with respect to compliance with the federal securities laws.

**Douglass A. Wistendahl**

Douglass A. Wistendahl received his B.B.A. from the Ohio University graduating with honors and his law degree from the Rutgers School of Law, ranking in the top ten percent of his class. Mr. Wistendahl is admitted to the bar of the States of New York and New Jersey.

Mr. Wistendahl specializes in corporate and commercial representation of European and U.S. clients, including lender and lessors in secured lending and equipment leasing transactions for computers, aircraft, rail cars and containers, lender funded buy-outs of lease and debt portfolios in and out of bankruptcies; licensing; franchising; mergers and acquisitions; and real estate transactions.

Prior to entering private practice Mr. Wistendahl was a law clerk in the Chancery Division of the New Jersey Superior Court.  Mr. Wistendahl has acted as an officer and director for various technology, internet, outdoor sports and fitness, leasing and food service corporations.  Mr. Wistendahl also holds a technology patent involving interactive television.

**Thomas J. Bonner**

Thomas J. Bonner graduated from the University of Notre Dame Law School where he received his J.D..  He is admitted to the Bar of the State of New York and Chairs the International Law and Practice Section of the New York State Bar Association.

Mr. Bonner has extensive experience in general commercial litigation, corporate, banking law, international trade, international finance, real estate finance and loan reorganization.

**Rex A. Guest**

Rex A. Guest received his undergraduate degree from the University of Illinois and his law degree from the Loyola University of Chicago in 1955, ranking fourth in his class.  Mr. Guest practices tax law with a special emphasis on federal and state tax disputes and Tax Court litigation.

As a revenue agent with the Internal Revenue Service from 1948 to 1955, Mr. Guest examined and investigated Federal individual, partnership, fiduciary and corporation returns with primary emphasis on corporate returns.  Mr. Guest conducted the investigation of approximately 100 cases in which a civil fraud penalty was sustained.  Mr. Guest also participated in two cases resulting in convictions for criminal tax evasion.

Mr. Guest served as:  trial attorney with the Office of Chief Counsel, Internal Revenue Service in Milwaukee, Wisconsin (1955-1965); head of the New Orleans office (1965-1967); head of the Kansas City office (1967-1970); Staff Assistant to the Regional Counsel in Chicago (1970-1978); and as Assistant District Counsel from June, 1978 until entering private practice.

Mr. Guest's litigation experience includes every stage of disputed tax cases, whether income, estate or gift tax, furnishing advice to the District Director, reviewing proposed notices of deficiency as to form and legal sufficiency, directing supplemental investigations by revenue agents or special agents, and appearing in court representing the Government during trial.  Mr. Guest has tried in excess of 30 cases in the Tax Court, many of which were of several weeks duration.  Mr. Guest has also tried a significant number of civil fraud cases.
Mr. Guest has also litigated Freedom of Information and disclosure cases; foreclosure and quiet title actions under U.S.C. §2410, U.S.C.; suits by the United States to reduce its tax claims to judgment and/or to foreclose its tax liens; suits to enforce compliance with levies; cases involving priority of tax claims in bankruptcy proceedings and corporate reorganizations, and in state receivership proceedings and probate proceedings.  Mr. Guest has also handled several refund suits in the District Court and Court of Federal Claims, as well as a number of criminal tax cases.

**State Bar Admissions**
Illinois and Wisconsin

**Court Admissions**
U.S. Tax Court; U.S. District Court for the Northern District of Illinois; U.S. District Court for the Eastern District of Wisconsin; and all courts of the States of Illinois and Wisconsin

**William B. Horton, II**

William B. Horton, II received his B.A. from John Hopkins University, his J.D. from Baylor University and his LL.M. from the University of Washington.  He is a member of the Association of the Bar of the City of New York, Washington State, New York State and American Bar Associations.  Mr. Horton is also a member of the Japan-American Legal Society and is fluent in Japanese.

Mr. Horton is a recipient of the American Jurisprudence Award, Conflict of Laws, and has authored "Taxing the Attorneys' Income in Japan" 14 Law in Japan, An Annual 104.

Mr. Horton represents a cross-section of clients including finance, corporate, entertainment, intellectual property and insurance.

**Randy C. Cain**

Prior to his association with the Firm, Randy C. Cain was a partner at Brown McCarroll, LLP. Before a merger with Brown McCarroll in 2003, he was a partner at the Austin law firm of Hilgers & Watkins, PC, where he started that firm's Legislative Section.

Prior to that, Mr. Cain served as general counsel to the Texas Secretary of State. As general counsel he was chief legal advisor to the Secretary on all matters within agency jurisdiction, including election law, agency administration, ethics, and statutory filings.

Mr. Cain served as deputy to the Assistant Secretary for Legislative Affairs at the U.S. Department of the Treasury. As a member of Secretary Bentsen's legislative staff, he worked on the passage of NAFTA, budget reconciliation and banking regulatory consolidation, among other issues. In that capacity, Mr. Cain met with congressional staff on treasury legislative initiatives, set up meetings with members of Congress and prepared legislative briefings for the Secretary of the Treasury.

Prior to his work at the Treasury, Mr. Cain was legislative director in Washington, D.C. for Senator Lloyd Bentsen. He directed a legislative staff of twelve persons and supervised preparation of legislation, floor statements, and the development of policy positions and legislative initiatives.

Mr. Cain received an undergraduate degree in General Business from the University of Texas at Austin. After receiving his law degree from Baylor University, Mr. Cain worked for Hilgers & Watkins, P.C. for three years before he took the position of Assistant City Attorney for legislative affairs for the City of Dallas. Mr. Cain represented the interests of the City Council as legislative liaison to both State and Federal legislatures and agencies.

Mr. Cain is a member of the Phi Delta Phi Fraternity; State Bar of Texas; and he served as the Travis County Bar Association's Director of CLE Seminar on Legislative Practice in 1998.

**<u>State Bar Admissions</u>**
Texas

**<u>Court Admissions</u>**
U.S. District Court for the Western District of Texas and all courts of the State of Texas

**Edward Budy, Esq.**

Edward Budy has extensive experience in corporate matters related to health care, manufacturing and regulated businesses. He concentrates his practice on corporate and commercial business transactions. Mr. Budy has negotiated numerous stock and asset purchase agreements, bank loan documentation, asset based and cash flow credit facilities, mezzanine financing, software licenses, real estate leases and equipment leases, and has advised companies on strategic business initiatives as well as risk management and financing issues.

Most recently, Mr. Budy was the General Counsel for Addus HealthCare, Inc., one of the largest providers of in-home support services, with further interests in home medical equipment, medical staffing and correctional health care. At Addus, Mr. Budy oversaw complex litigated matters involving the protection of trade secrets; state and federal class actions involving Fair Labor Standards Act wage and hour issues; e-discovery and forensics. He handled HIPAA training and compliance, and employment and human resource matters including hiring and employment contracts, disciplinary actions, terminations, separation agreements and EEOC claims.

Mr. Budy has also served as General Counsel for Norcross Companies, a conglomerate with interests in protective and sport footwear, building material supplies, wholesale hardware distribution, fireplace furnishings and meteorological balloons. He also has experience in the adult and child day care businesses as General Counsel of Children Today, a provider with 80 centers in the Midwest and Southeast.

Mr. Budy embraces the philosophy that legal solutions should also be business solutions, and that he is a business partner as well as a legal counselor. He believes that he must be both an effective advocate and an efficient and timely provider of his services. With over 20 years of in-house experience, Mr. Budy has been a business adviser and counselor as a member of upper management responsible for strategic and tax planning, casualty and benefits insurance programs, pension and 401(k) plans, and mergers and acquisitions. His experience includes all aspects of corporate and limited liability company formation, operation, termination and governance.

Mr. Budy is a graduate of the Louis D. Brandeis School of Law at the University of Louisville. He received his Bachelor of Arts in Political Science from the University of Louisville.

**<u>State Bar Admissions</u>**
Illinois and Kentucky

**<u>Court Admissions</u>**
U.S. District Court for the Western District of Kentucky; and all courts in the States of Illinois and Kentucky

*Associates*

**Richard W. Gonnello**

Richard W. Gonnello graduated *summa cum laude* from Rutgers University with a B.A. in Classics and History where he was named Phi Beta Kappa.  He received his J.D. from UCLA Law School.

Prior to joining Entwistle & Cappucci, Mr. Gonnello participated in corporate internal investigations and led numerous securities actions, commercial litigations and arbitrations from initiation to settlement.

**<u>State Bar Admissions</u>**
New York

**<u>Court Admissions</u>**
U.S. District Court for the Eastern and Southern Districts of New York; and all courts of the State of New York

**Robert M. Travisano**

Robert M. Travisano, an associate in the Firm's commercial litigation group, concentrates his practice in the area of complex business disputes. Mr. Travisano counsels and represents institutional clients in a broad range of business disputes in the federal and state courts of both New York and New Jersey. He also has represented managed care organizations and third-party administrators in litigations involving the Federal Employees Health Benefits Act and commercial contracts. In addition, Mr. Travisano has represented foreign and domestic insurers in the litigation and negotiation of complex coverage disputes in connection with fidelity, general liability, director and officer, and property and casualty policies.

Mr. Travisano graduated from St. John's University School of Law after his undergraduate studies at Villanova University. At St. John's, Mr. Travisano served as the Executive Notes and Comments Editor for the St. John's Journal of Legal Commentary. Upon graduation from St. John's, Mr. Travisano served as a law clerk to the Honorable Joseph A. Falcone, Assignment Judge, Superior Court of New Jersey.

<u>**Publications**</u>
Co-author, "Second Circuit Update: Merchant Lacks Standing to Assert Antitrust Claims Against Credit Card Companies for Chargeback Fees," The Business Suit, December 22, 2006;

Co-author, "Imputation Doctrine No Longer Protects Auditors," The Business Suit, DRI, August 15, 2006;

Co-author, "Welcome Relief for Lenders: Federal Truth in Lending Trumps New Jersey Law," New Jersey Law Journal (October 2005);

Co-author, "What is Past is Prologue: Why Congress Should Reject Current Financial Reform Legislation and Breathe New Life Into Glass-Steagall," 13 St. John's Journal of Legal Commentary 373 (1998).

<u>**State Bar Admissions**</u>
New York and New Jersey

<u>**Court Admissions**</u>
U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the District of New Jersey; and all courts of the States of New York and New Jersey

**Helen Chung**

Helen Chung graduated from Cornell University with a B.S. in Communication. She received her law degree from Boston University. Upon finishing law school, Ms. Chung entered private practice and handled complex commercial litigation. At the Firm, Ms. Chung practices in the area of securities litigation and is currently working on *Global Crossing Estate Representative v. Gary Winnick, et al*. pending in the Southern District of New York.

**State Bar Admissions**
New York

**Court Admissions**
U.S. District Court of the Eastern and Southern Districts of New York; and all state courts of the State of New York

**Michael A. McDonough**

Michael McDonough's areas of practice include commercial litigation and intellectual property law. He has represented a diverse range of clients in a broad range of business related disputes.

Mr. McDonough graduated from the University of Scranton with a B.A. in History. He received his law degree from St. John's University School of Law, where he was an editor on the St. John's Journal of Legal Commentary.

**Publications**
"Mail Fraud and the Good Faith Defense," 14 St. John's Journal of Legal Commentary 279, (1999)

**State Bar Admissions**
New York and New Jersey

**Court Admissions**
U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the District of New Jersey; and all courts of the States of New York and New Jersey

**Jordan A. Cortez**

Jordan A. Cortez is an honors graduate of Dartmouth College where he received a B.A. in Government. He received his J.D. from the University of Notre Dame Law School where, as a member of the Notre Dame Seventh Circuit Moot Court team, he prepared an appellate brief and participated in oral argument on behalf of a habeas corpus petitioner before the Seventh Circuit Court of Appeals in Chicago, Illinois.

**State Bar Admissions**
New York

**Shannon L. Hopkins**

Shannon L. Hopkins focuses her practice on complex securities class actions on behalf of defrauded investors.  Ms. Hopkins graduated *cum laude* from Bryant College with a B.S.B.A., dual concentration in accounting and finance.  She received her law degree from Suffolk University, *magna cum laude*.  During law school, Ms. Hopkins was a member of the Journal of High Technology and authored a note entitled, "Cybercrime Convention:  A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 1010.  Ms. Hopkins also served on the executive board of Phi Delta Phi.  She is also a certified public accountant.

**State Bar Admissions**
New York and Massachusetts

**Court Admissions**
U.S. District Court for the District of Massachusetts, U.S. District Courts for the Southern and Eastern Districts of New York, all courts of the State of New York and the Commonwealth of Massachusetts

**Laura J. Babcock**

Laura J. Babcock is an associate in the Firm's securities litigation group. Ms. Babcock graduated from the University of Connecticut with a B.S. in Business Technology with a concentration in Finance. While at UCONN, she was a two-time New England Scholar. She received her J.D., *cum laude*, from Pace University. At Pace, she was a member of the ATLA and NADCL Trial Advocacy Teams.

She is a member of the American Bar Association and Association of Trial Lawyers of America.

**State Bar Admissions**
New York and Connecticut

**Court Admissions**
U.S. District Courts for the Southern and Eastern Districts of New York

**James C. Bitanga**

James C. Bitanga is an associate in the Firm's securities litigation group. He graduated from Ateneo de Manila University in the Philippines with a B.S. in Business Management and Communications Technology. Mr. Bitanga has won several international awards as a parliamentary debater including an Asian Championship, final 16 of the World University Debating Championships and the distinction of judging the World Grand Final Round during his undergraduate studies.

Mr. Bitanga received his J.D. from Boston College Law School, where he served as Chair for Moot Court in the Board of Student Advisors. He was a member of the Philip C. Jessup International Law Moot Court Team, where he ranked as one of the best oralists in that competition. He was also a semi-finalist in the BSA Mock Trial Competition.

Mr. Bitanga is a member of the Business Law and Litigation sections of the American Bar Association. Prior to his legal career, he worked as an advertising executive.

**State Bar Admissions**
New York (pending)

**Michael H. Rosner**

Michael H. Rosner focuses his practice on complex securities litigation, representing private and public institutions in direct and class actions.

Mr. Rosner received his law degree from Fordham University School of Law, where he graduated *magna cum laude* and was a member of the Law Review.  He received a B.A. in Psychology from the State University of New York at Albany, where he graduated *summa cum laude* and was elected a member of Phi Beta Kappa.

**<u>State Bar Admissions</u>**
New York

**<u>Court Admissions</u>**
U.S. Court of Appeals for the Second Circuit; U.S. District Courts for the Southern and Eastern Districts of New York; and all courts of the State of New York.

**Daniel M. Meier**

Daniel M. Meier attended New York University and graduated with a Bachelor of Arts degree in Honors Economics.  He received his J.D. from Fordham University School of Law.

While attending Fordham, Mr. Meier was Notes & Articles editor for the International Law Journal, President of the Jewish Law Students Association and a staff member of the Board of Student Advisors.  He was also the *cum laude* recipient of the Archibald R. Murray Public Service Award.

Prior to joining Entwistle & Cappucci, Mr. Meier was an intern at the New York Stock Exchange and the Fordham University Criminal Defense Clinic.  In addition, he was a research assistant at Fordham for Professor Nicholas Johnson.

**<u>State Bar Admissions</u>**
New York (pending)
New Jersey (pending)

**Michael N. Richman**

Michael M. Richman attended Yeshiva University and graduated with a Bachelor of Science degree in Finance.  He received his J.D. from Fordham University School of Law.

While attending Fordham, Mr. Richman was on the staff of the Journal of Corporate and Financial Law.  He received the Emmet J. McCormack Foundation Prize for Excellence in the Discipline of Admiralty Law as well as the Archibald R. Murray Public Service Award.

Prior to joining Entwistle & Cappucci, Mr. Richman was an intern at the New York Stock Exchange.  In addition he was a research assistant at Fordham for Professor Cheryl Bader.

**<u>State Bar Admissions</u>**
New York (pending)

*Offices*

Entwistle & Cappucci LLP
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  212-894-7200
Facsimile:   212-894-7272

Entwistle & Cappucci LLP
200 Business Park Drive
Suite 305
Armonk, New York 10504
Telephone:  914-730-3200
Facsimile :  914-730-3206

Entwistle & Cappucci LLP
1122 Colorado Street
Suite 106
Austin, Texas 78701
Telephone: 512-637-4994
Facsimile:  512-474-4567

Entwistle & Cappucci LLP
333 West Wacker Drive
20th Floor
Chicago, Illinois 60606
Telephone:  312- 251-9500
Facsimile:   312-251-9300

Entwistle & Cappucci LLP
120 South Monroe Street
Tallahassee, Florida 32302
Telephone:  850-671-4401
Facsimile:   850-671-4402

Entwistle & Cappucci LLP
30 Columbia Turnpike
P.O. Box 95
Florham Park, New Jersey 07932
Telephone:  973-236-0666
Facsimile:   973-236-9565

Entwistle & Cappucci LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  202-349-2051
Facsimile:   202-349-1499