UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

In re VIISAGE TECHNOLOGY, INC.
SECURITIES LITIGATION

Civil Action No. 05-cv-10438-MLW

_____

This Pleading Applies to:  All Actions

_____


**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION
OF THE NET SETTLEMENT FUND**

Jeffrey C. Block, Esq.  (BBO# 600747)
Leslie R. Stern, Esq. (BBO# 631201)
Patrick T. Egan, Esq. (BBO# 637477)
**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**
One Liberty Square, 8th Floor
Boston, MA 02109
(617) 542-8300

*Liaison Counsel for Lead Plaintiffs*

Jeffrey A. Klafter, Esq. (*pro hac vice*)
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656


Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C.  20036
(202) 261-3553


Stephen D. Oestreich, Esq.
Robert N. Cappucci, Esq. (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

*Lead Counsel for Lead Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

PRELIMINARY STATEMENT ................................................... 1

I.  HISTORY AND BACKGROUND OF THE ACTION ................... 3

    A.  Procedural History And Discovery ........................................ 3

    B.  The Settlement Negotiations ................................................. 4

II. THE NOTICE PROGRAM MET THE REQUIREMENTS OF
DUE PROCESS AND RULE 23 OF THE FEDERAL RULES
OF CIVIL PROCEDURE .................................................................. 4

III. THE SETTLEMENT COMPORTS WITH THE APPLICABLE
STANDARDS IN THIS CIRCUIT AND RULE 23 OF THE
FEDERAL RULES OF CIVIL PROCEDURE ............................... 6

    A.  The Court Must Determine Whether The Settlement
Is Fair, Reasonable And Adequate ........................................ 6

    B.  Consideration Of The Relevant Factors ................................ 7

        1.  The Risks Of Establishing Liability And Damages ... 8

        2.  The Complexity And Likely Duration Of This
Litigation Through Trial ............................................. 10

        3.  The Stage Of The Proceedings And The Amount
Of Discovery Completed ........................................... 12

        4.  The Settlement Is The Result Of Arm's-Length
Negotiations Between Experienced Counsel ............. 13

        5.  The Reaction Of The Class To The Settlement
Favors Approval ......................................................... 14

        6.  The Recommendation Of Experienced Counsel ........ 15

        7.  The Range Of Reasonableness Of The Settlement
Amount ....................................................................... 16

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE
AND ADEQUATE ............................................................    17

V.    CONCLUSION.....................................................................    19

## TABLE OF AUTHORITIES

### CASES

*Anixter v. Home-Stake Prod. Co.*,
  77F.3d 1215 (10th Cir. 1996) ............................................................... 11

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)................................................................. 11

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)............................................................. 17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)............................................................... 11

*Bussie v. Allmerica Financial Corp.*,
  50 F.Supp.2d 59 (D. Mass. 1999) ........................................... 7, 10, 14

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)............................................................................ 6

*City P'ship Co. v. Atlantic Acquisition Ltd.*,
  100 F.3d 1041 (1st Cir. 1996)............................................................ 6, 8

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................ 16, 17

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ........................................................ 6, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)........................................................................... 10

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ...................................................... 13

*Detroit v. Grinnell*,
  495 F.2d 448 (2nd Cir. 1974)................................................................ 16

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  183 F.3d 1 (1st Cir. 1999)................................................................... 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................... 18

*Durrett v. Housing Auth. of Providence,*
    896 F.2d 600 (1st Cir. 1990)................................................................ 6

*Giusti-Bravo v. United States Veterans Admin.,*
    853 F. Supp. 34 (D.P.R. 1993)............................................................ 14, 16

*Greenspun v. Bogan,*
    492 F.2d 375 (1st Cir. 1974)................................................................ 14

*In re American Bank Note Holographics, Inc. Sec. Litig.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................. 10

*In re Apple Computer Sec. Litig.,*
    [1991 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 96, 252 at 91,342
    (N.D. Cal. Sept. 6, 1991) ..................................................................... 11

*In re AT&T Corp. Sec. Litig.,*
    455 F.3d 160 (3rd Cir. 2006) ............................................................... 10

*In re Baldwin-United Corp.*
    *(Single Premium Deferred Annuities Ins. Litig.),*
    607 F. Supp. 1312 (S.D.N.Y. 1985)..................................................... 11-12

*In re Biogen Sec. Litig.,*
    No. 94-12177-PBS (D. Mass. 1998)..................................................... 11

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ...................................................... 6

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ............................................................... 17

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    216 F.R.D. 197 (D. Me. 2003).............................................................. 7

*In re Equity Funding Corp.,*
    603 F.2d 1353 (9th Cir. 1979) ............................................................. 5

*In re First Commodity Corp. Customer Accounts Litig.,*
    119 F.R.D. 301 (D. Mass. 1987)........................................................... 6, 11, 12

*In re Fleet/Norstar Sec. Litig.,*
    935 F. Supp. 99 (D.R.I. 1996)............................................................... 6, 7, 8

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) ......................................................... 18

*In re Ikon Office Solutions Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................ 17

*In re Lupron Mktg. & Sales Prac. Litig.,*
    228 F.R.D. 75 (D. Mass. 2005)............................................................. 8

*In re PaineWebber Ltd. Pshps. Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    148 F.3d 283 (3d Cir. 1998)................................................................. 10

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52 (D. Mass. 2005)............................................................. *Passim*

*In re Sequoia Sys. Sec. Litig.,*
    Fed. Sec. L. Rep. (CCH), ¶ 48,089 at 98,729
    (D. Mass. 1993)................................................................................... 14

*In re Viatron Computer Sys. Corp. Litig.,*
    614 F.2d 11 (1st Cir. 1980).................................................................. 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989) ...................................................... 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987) ....................................................... *Passim*

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................. 11

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,*
    708 F.2d 1081 (7th Cir. 1983) ............................................................. 11

*Miller v. Republic Nat'l Life Ins. Co.,*
    559 F.2d 426 (5th Cir. 1977) ............................................................... 5

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972)................................................................. 16

*Officers For Justice v. Civil Serv. Comm'n.,*
    688 F.2d 615 (9th Cir. 1982) ............................................................... 16

*Piper v. Chris-Craft Indus.,*
    430 U.S. 1 (1977)................................................................................. 11

*Reppert v. Marvin Lumber & Cedar Co.*,
    359 F.3d 53 (1st Cir. 2004)............................................................... 5

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................ 11

*Rolland v. Cellucci,*
    191 F.R.D. 3 (D. Mass. 2000).............................................................. 11

*Streber v. Hunter,*
    221 F.3d 701 (5th Cir. 2000) ............................................................ 10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................. 5

*Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d. Cir. 2005)................................................................. 6

*Weinberger v. Kendrick,*
    698 F.2d 61 (2nd Cir. 1983)................................................................ 13

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)................................................................. 16

*White v. NFL,*
    822 F. Supp. 1389, 1420-24 (D. Minn. 1993)
    *aff'd*, 41 F.2d 402 (8th Cir. 1994) ....................................................... 18

## STATUTES & RULES

15 U.S.C. §§ 77k, 77l(a)(2), and 77(o) ............................................ 3

15 U.S.C. §§ 78j(b) and 78t(a)........................................................ 3-4

15 U.S.C. §78(u)(D)(e)(1) ............................................................. 18

## UNREPORTED DECISIONS

*AUSA Life Ins. Co. v. Ernst & Young*,
    No. 00-9472, 2002 U.S. App. LEXIS 13845
      2d Cir. July 8, 2002) ............................................................... 11

*Taft v. Ackermans*,
   2007 WL 414493
   (S.D.N.Y. January 31, 2007)..................................................................     17-18

## OTHER

*Moore's Federal Practice* ¶ 23.1.24[2] (3d ed. 1997).  ................................     15

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Turnberry Asset Management, Electronic Trading Group, LLC, Ronald Sauer, David Hancock and Lance Hancock (collectively, "Lead Plaintiffs"), by and through their counsel ("Lead Counsel"), hereby submit this memorandum of law in support of final approval of the proposed Settlement of this securities class action (the "Action") as between Lead Plaintiffs and the Class,[1] and Defendants Viisage Technology, Inc. ("Viisage" now known as L-1 Identity Solutions, Inc.), Bernard C. Bailey, William K. Aulet, Denis K. Berube, Marcel Yon, Buddy G. Beck, Charles A. Levine, Thomas J. Reilly, Harriet Mouchly-Weiss, Paul T. Principato and Peter Nessen (collectively, the "Defendants"). This Settlement, if approved, will result in a complete resolution of all claims in the Action against the Defendants.

Plaintiffs also submit this memorandum of law in support of approval of the proposed plan for the allocation of the net proceeds of the Settlement (the "Plan of Allocation"). For the reasons set forth below and in the Affidavit of Jeffrey A. Klafter in Support of Final Approval of Proposed Class Action Settlement, Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Klafter Affidavit"), filed herewith, both warrant this Court's final approval.

## PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to present the Court with the proposed $2.3 million Settlement, representing approximately 18 percent of the maximum damages Lead Plaintiffs may have been able to recover in this Action. The Settlement was reached after arm's-length negotiations by experienced counsel who possess a firm understanding of the parties' respective

---

[1] Unless otherwise noted, the capitalized terms in this Memorandum shall have the meanings identified in paragraph 1 of the Stipulation and Agreement of Settlement dated as of July 19, 2007 ("Stipulation").

claims and defenses. Lead Plaintiffs submit that it constitutes an excellent result for the Class, given the substantial risks faced in obtaining any recovery for the Class.

While Lead Plaintiffs are confident in the merit of the internal control claims remaining in this litigation, Lead Plaintiffs faced substantial obstacles to achieving any recovery. The Settlement takes into account these risks, including the expense in continuing this litigation through additional summary judgment briefing, trial and probable appeal and the likelihood of obtaining and recovering a larger or smaller judgment after trial. The Settlement also confers a present benefit to the Class as compared to the uncertainty of any benefit after years of additional litigation.

Since this action was commenced on March 8, 2005, Lead Plaintiffs have diligently pursued the class action claims against the Defendants. The Settlement was not reached until after Lead Plaintiffs: (i) conducted an extensive investigation of the claims asserted in the Consolidated Amended Class Action Complaint, filed February 27, 2006 ("Complaint"); (ii) thoroughly researched the applicable law with respect to the claims asserted; (iii) made extensive submissions and argument in opposition to Defendants' motion to dismiss; (iv) obtained hundreds of pages of documents from Defendants; (v) consulted with damage experts; and (vi) and engaged in a number of substantive discussions with counsel for Defendants concerning the merits of the internal control claims sustained by the Court.

The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), submitted to the Court on July 23, 2007. Pursuant to paragraph 2.1 of the Stipulation, $2.3 million was deposited into an interest-bearing account on August 31, 2007 for the benefit of the Class. With the interest earned, as of October 31, 2007, the Settlement Fund was valued at $2,313,365.35.

Pursuant to the Court's Order Certifying the Class, Preliminarily Approving Settlement and Providing for Notice, dated August 17, 2007 ("Preliminary Approval Order"), the Notice of Pendency and Proposed Settlement of Class Action, Application for Attorneys' Fees and Expenses and Fairness Hearing (the "Notice") and Proof of Claim form were duly mailed to 25,154 potential Class members and a Summary Notice was published on September 17, 2007 in the national edition of *The Wall Street Journal*.  Objections to the Settlement and the Plan of Allocation were to be filed with the Court and served on counsel or before October 26, 2007.  As of the date of this filing, no objections from any Class members have been filed or served.

Based upon the foregoing, Lead Plaintiffs firmly believe that the Settlement is fair, reasonable and adequate and in the best interests of the Class, and each of the Lead Plaintiffs has provided an Affidavit or Declaration attesting to that fact.[2]  Accordingly, Lead Plaintiffs respectfully request that the Court enter the proposed Final Judgment and Order Approving Plan of Allocation, submitted herewith.

## I.    HISTORY AND BACKGROUND OF THE ACTION

### B.    Procedural History And Discovery

The background and procedural history of this litigation is set forth in ¶¶ 10-16 of the Klafter Affidavit and will not be repeated here.  Essentially, the Action was brought following a series of disclosures by Viisage that allegedly contradicted its prior representations, made during the Class Period, concerning a litigation in which the Company was involved (the "Georgia DMVS Litigation"), and Viisage's disclosures and internal controls.  In their Complaint, Lead Plaintiffs' alleged that these misrepresentations gave rise to liability under both the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o), and the Securities Exchange Act of 1934, 15

---

[2] The Affidavits or Declarations of each Lead Plaintiff are included in the Compendium of Affidavits and Declarations submitted herewith.

U.S.C. §§ 78j(b) and 78t(a). The Complaint further alleges that Lead Plaintiffs and other Class members, who purchased the common stock of Viisage during the period May 12, 2004 through and including March 2, 2005 (the "Class Period"), were damaged based on the declines in the stock, on Viisage's revelations relating to the Georgia DMVS Litigation, on December 27, 2004 and February 8, 2005, and relating to the internal control issues on March 3, 2005.

### C.    The Settlement Negotiations

As more fully set forth in the Klafter Aff., ¶¶ 17-24, the Settlement was the product of extensive arms' length negotiations over nearly four months, prompted by the Court at the conclusion of the February 27, 2007 hearing. Those negotiations were conducted with counsel for Defendants and counsel for Viisage's Directors and Officers Liability Insurer, Carolina Casualty ("D&O Insurer"), and broke down at several junctures. Only through the perseverance of counsel for the Lead Plaintiffs was an agreement-in-principle finally reached. The Stipulation was not executed until over a month later, on July 19, 2007, as the exchange of multiple drafts and e-mails, and multiple telephone negotiations, were required before the papers were acceptable to Lead Counsel, counsel for the Defendants and counsel for the D&O Insurer.

## II.    THE NOTICE PROGRAM MET THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

As noted above and described in detail in the Affidavit of Anya Verkhovskaya, sworn to October 31, 2007 ("Verkhovskaya Aff."), also included with Compendium of Affidavits and Declarations, an extensive notice program, by mail and publication, designed to give proper and complete notice of the Settlement to the Class members has been completed by the Court appointed Claims Administrator, A.B. Data, Ltd., in compliance with the Court's Preliminary Approval Order.

4

A total of 25,154 copies of the Court-approved Notice describing the terms of the Settlement, the procedures for opting out of the Class or objecting to the Settlement, and providing details regarding the Settlement Hearing were mailed to potential Class members or their nominees. *See* Verkhovskaya Aff. at ¶¶ 7-10. On September 17, 2007, a Summary Notice of the Settlement was published in the national edition of *The Wall Street Journal*. *Id.*, at ¶ 14. Copies of the Notice were also posted on and downloadable from www.klafterolsen.com, www.entwistle-law.com, www.bermanesq.com and www.abdatalawserve.com.

This notice program was tailored to reach all Class members and fully inform them of all the important details surrounding the Settlement. The Notice explains, in plain English, the nature of this Action, the proceedings to date, the principal terms of the Settlement, the Plan of Allocation, the anticipated fee and expense request, and the rights and options of Class members to either request exclusion from the Class or file objections. Additionally, the published notice clearly and concisely provided important information concerning the Settlement and the means to obtain a copy of the Notice. Further notice was effectuated through the establishment of dedicated page on the Claims Administrator's website (www.abdatalawserve.com/cases.php) and a toll-free telephone number ((866) 217-4245), to receive questions from Class members.

This program complies with the requirements of Federal Rule of Civil Procedure Rule 23 and due process and is similar to the procedures approved in other cases. *See Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56-57 (1st Cir. 2004) (mailing to all known class members and publication notice found to comport with the requirements of due process).[3]

---

[3] *See also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing met requirements of Rule 23 and due process); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 429 (5th Cir. 1977); *In re Equity Funding Corp.,* 603 F.2d 1353, 1361 (9th Cir. 1979) (notice found sufficient where it informed class members of the subject matter of the litigation, terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds).

III.    **THE SETTLEMENT COMPORTS WITH THE APPLICABLE
        STANDARDS IN THIS CIRCUIT AND RULE 23 OF THE FEDERAL
        RULES OF CIVIL PROCEDURE**

   A.    **The Court Must Determine Whether The Settlement Is Fair,
         Reasonable And Adequate**

Courts in the First Circuit consistently favor the settlement of disputed claims.  *Durrett v.*

*Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990); *In re First Commodity Corp.*

*Customer Accounts Litig.,* 119 F.R.D. 301, 313 (D. Mass. 1987) (Wolf, J.); *see also In re Viatron*

*Computer Sys. Corp. Litig.,* 614 F.2d 11, 15 (1st Cir. 1980); Local Rule 16.4(A) (providing that

"[t]he judicial officer shall encourage the resolution of disputes by settlement. . . .").  This

preference for settlements over continued litigation is especially important in cases involving

class actions (including without limitation, securities class actions) where "there is an overriding

public interest in favor of settlement."  *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977);

*see also Durrett,* 896 F.2d at 604; *In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 105 (D.R.I.

1996).  Indeed, in such class action cases, settlement spares the litigants the uncertainty, delay,

and expense of a trial, while simultaneously reducing the burden on judicial resources.  *See e.g.,*

*Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005); *In re Cardizem CD*

*Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

In deciding whether to approve a proposed settlement of a class action, the Court must

find that the settlement is fair, reasonable and adequate.  *Duhaime v. John Hancock Mut. Life*

*Ins. Co.,* 183 F.3d 1, 7 (1st Cir. 1999); *see also City P'ship Co. v. Atlantic Acquisition Ltd.,* 100

F.3d 1041, 1043 (1st Cir. 1996); *First Commodity Corp.*, 119 F.R.D. at 313.

In evaluating the fairness of a settlement, the Court "do[es] not decide the merits of the

case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14

(1981).  The Court should not, therefore, turn the settlement hearing into a trial and reach any

6

conclusions on the issues of fact and law which underly the merits of the dispute. *See Fleet/Norstar Sec. Litig.,* 935 F. Supp. at 106 ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute."). Indeed, an evidentiary hearing or full-blown trial would defeat the very purpose of a settlement -- avoiding a sharply contested trial and unnecessary litigation.

### B.    Consideration Of The Relevant Factors

Judicial evaluation of the fairness of a proposed settlement in a class action involves a limited inquiry into whether the possible rewards of litigation with its risks and costs are outweighed by the benefits of the settlement. While there is no "single inflexible litmus" test to determine whether a settlement is fair, courts in the First Circuit have reviewed a "wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Financial Corp.*, 50 F.Supp.2d 59, 72 (D. Mass. 1999).

Specifically, courts within this Circuit have weighed the following factors, *inter alia*, in assessing the fairness of proposed class action settlements: (1) the risks of establishing liability; (2) the risks of establishing damages; (3) the complexity and likely duration of the litigation through trial; (4) the stage of the proceedings and the amount of discovery completed; (5) whether the negotiations were conducted at arm's-length; (6) the reaction of the Class to the Settlement; (7) the recommendation of experienced counsel; and (8) the range of reasonableness of the settlement amount in light of the best possible recovery and the attendant risks of litigation. *See, e.g., Bussie*, 50 F. Supp. 2d at 72; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass. 1987) (Wolf, J.) (hereinafter "*Faneuil*

*Hall*").  These factors are not exclusive and different factors may predominate in different factual contexts.  *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72  (D. Mass. 2005) (Young, J.) (outlining and applying nine factors); *but see Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 106-07 (emphasizing only a few factors).  In addition, the First Circuit has held, "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."  *City P'ship Co*., 100 F.3d at 1043 (citation omitted).

### 1.   The Risks Of Establishing Liability And Damages

"As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication."  *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005).  Accordingly, courts routinely approve settlements where plaintiffs would have faced significant legal or factual obstacles to establishing liability.  *See e.g. Relafen Antitrust Litig.*, 231 F.R.D. at 73; *Fanueil Hall*, 671 F. Supp. at 823.

This Action presented a higher risk profile than even the typical securities class action given the Court's ruling allowing Defendants' motion to dismiss Lead Plaintiffs' Georgia DMVS Litigation claims.  The remaining internal control claims were subject to significant risks as to establishing both liability and damages.  *See* Klafter Aff., ¶¶ 28-39.  As demonstrated therein, the principal risks faced by Lead Plaintiffs on their internal control claims were their ability to establish a material misrepresentation, *scienter* and anything more than nominal damages.

Lead Plaintiffs' ability to establish a material misrepresentation and *scienter* concerning the adequacy of Viisage's internal controls depended on being able to show that the remedial measures Viisage was admittedly engaged in during the Class Period related to the Certifications that were provided pursuant to Section 302 of the Sarbanes-Oxley Act.  It was Defendants position that those measures related solely to achieving compliance with Section 404 of the

Sarbanes-Oxley Act. Further, Lead Plaintiffs faced an uphill battle with regard to these claims as it would have been necessary for them to prove that Defendants lacked "reasonable assurance" that information required to be disclosed was in fact disclosed, as that was all the was represented. The lack of any restatement of the financial information disclosed during the Class Period heightened the risk that a jury would find for Defendants. Proceeding to trial, of course, assumes that Lead Plaintiffs are able to overcome a certain summary judgment motion by Defendants.

Lead Plaintiffs also faced a significant risk as to recovering any material damages given the announcements by Viisage that accompanied its revelation of material internal control weaknesses on March 2, 2005. Klafter Aff., ¶¶ 35-49. That announcement included a statement by Viisage that it was lowering its revenue guidance for 2005 to about $73-$80 million compared to prior average revenue estimates of $82 million made by security analysts for 2005, and that it would cease providing Earnings Before Interest, Taxes, Depreciation and Amortization (EBITDA) guidance, as it had provided in the past.

As a result of the existence of these multiple disclosures on March 2, 2005, Defendants would have maintained at trial that, at best, only a negligible portion of the $0.97 price decline on March 3, 2005 was caused by the disclosure of material internal control weaknesses. Specifically, Defendants would proffer expert testimony relying on academic studies which they would maintain support the conclusion that less than 5 percent of that decline was related to the misrepresentations. *See* Klafter Aff., ¶ 38 and Exhibit E, thereto. In contrast, the Settlement represents approximately 18 percent of the maximum amount of that decline that Lead Counsel believe, after consulting with their damage expert, can be attributed to the alleged internal control misrepresentations -- $0.485 per share. Klafter Aff., ¶ 39.

9

Before Lead Plaintiffs' damage expert could even present his or her opinions at trial, however, the Court must determine that Lead Plaintiffs' damages model is admissible. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Only then may a jury determine whether Lead Plaintiffs' or Defendants' model is more persuasive. Even if such a determination is brought to the jury, one cannot predict how a jury will weigh competing experts' testimony. In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts." *Relafen Antitrust Litig.*, 231 F.R.D. at 73; *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 167 (3rd Cir. 2006); *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000). In such a battle, Lead Plaintiffs recognize the possibility that a jury could be swayed by Defendants' expert. *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001); *see also In re PaineWebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[D]amages are a matter for the jury, whose determinations can never be predicted with certainty.").

### 2.  The Complexity And Likely Duration Of This Litigation Through Trial

This was a difficult and complex litigation that was vigorously defended, with considerable effort and expense by all parties. In the absence of the Settlement, the prosecution of this Action would require additional large expenditures over an extended period, after which the Class could obtain a result far less beneficial than the one provided by the Settlement. *See Bussie*, 50 F.Supp.2d at 66; *Relafen Antitrust Litig.*, 231 F.R.D. at 72 ("Costs would include . . . the cost of a four-week trial which promises to feature a battle of various experts."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

Even if the Lead Plaintiffs could eventually recover a larger judgment after trial on behalf of the Class, given the time value of money, a future recovery several years hence that was nominally in excess of $2.3 million would be less beneficial than receiving the benefits of the proposed Settlement now.  Moreover, any future jury verdict would still be subject to the continuing risks of litigation through post-trial motions and inevitable appeals.  Even very large judgments, recovered after lengthy litigation and trial, have been completely lost on appeal.[4] Given the uncertain prospects of success at trial, and the result of any appeals, settlement at this time is highly beneficial to the Class.  Without it, there is considerable risk that Defendants could obtain summary judgment or a favorable jury verdict, leaving the Class with no recovery.[5]

The $2.3 million Settlement will provide cash relief to the Class now, without subjecting them to the risks, duration and expense of continuing litigation through and after trial.  *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.").  Its approval would also obviate the resulting burden on the Court and delay in payment to the Class.  *See, e.g., Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000); *First Commodity Corp.,* 119 F.R.D. at 314; *In re Baldwin-United Corp. (Single Premium Deferred*

---

[4]  *See also*, *e.g.*, *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (Seventh Circuit reversing $1.8 billion judgment); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Piper v. Chris-Craft Indus.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of approximately $26 million - after eight years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs, in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing substantial jury verdict on appeal after 11 years of litigation and dismissing the action); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict); *AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand).
[5]  This was the result in, for example, *In re Biogen Sec. Litig.*, No. 94-12177-PBS (D. Mass. 1998) (jury verdict for defendants in securities fraud trial) and *In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 96, 252 at 91,342 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict).

*Annuities Ins. Litig.),* 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985). These factors therefore weigh heavily in favor of the proposed Settlement.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed

The purpose of considering the stage of the proceedings is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal. *See Faneuil Hall*, 671 F. Supp. at 823, 825. Prior to entering into the Stipulation, Lead Counsel conducted a thorough investigation relating to the events and transactions underlying Lead Plaintiffs' claims. They prepared a detailed Complaint based on, *inter alia*, their analysis of United States Securities and Exchange Commission ("SEC") filings by Viisage, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, media reports about the Company, and pleadings and judicial orders in the Georgia DMVS Litigation relating to the Company. Klafter Aff., ¶13.

Lead Counsel also became intimately familiar with Defendants' contentions, having engaged in extensive briefing on their motion to dismiss and participating in two arguments before the Court concerning that motion. *Id.*, ¶ 14. Further, Lead Counsel had the benefit of informal discovery and expert damage estimates, before entering into negotiations to resolve the Action. *Id.*, ¶ 15. Moreover, there were substantive discussions concerning the merits of Lead Plaintiffs' claims and recoverable damages throughout the settlement negotiations. *Id.*, ¶¶ 17-24. Accordingly, Lead Counsel's recommendation, and Lead Plaintiffs' decision, to enter into the Settlement was made with knowledge of the facts and circumstances underlying Lead Plaintiffs' claims and the strengths and weaknesses of those claims.

### 4.   The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel

An additional factor for the Court to consider here is the existence of arm's-length negotiations by experienced trial counsel in reaching this Settlement.  In lieu of a more extended inquiry into the claims asserted and result achieved by plaintiffs, federal courts have focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary to effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1983); *see also First Commodity Corp.*, 119 F.R.D. at 311-14.  Where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair" *Faneuil Hall*, 671 F. Supp. at 822; *Relafen Antitrust Litig.,* 231 F.R.D. at 71-72.

This presumption of fairness and adequacy applies with special force here because the Settlement was reached by experienced, fully-informed counsel who engaged in protracted and intense arm's length negotiations.  Klafter Aff., ¶¶ 12-25.  The Settlement negotiations were conducted at the specific request of the Court following its rulings on the motions to dismiss and it took over three months before an agreement-in-principle was reached.  During that time, the negotiations broke down at several junctures as the parties were far apart and counsel for each side were strident in their respective positions.[6]  Indeed, it was only after the parties had submitted their Proposed Joint Pretrial Scheduling Order to govern discovery in the Action that they were finally able to reach agreement.  Klafter Aff., ¶¶17-23.  Even after an agreement in principle was reached, negotiations continued between the parties in order to resolve differences concerning the appropriate language to be included in the Stipulation.  It was only after

---

[6] A breakdown in settlement negotiations tends to illustrate their arm's-length and non-collusive nature.  *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y. 2005) ("There is no evidence of collusion between [the parties]; indeed, on more than one occasion, it appeared that negotiations would break down.").

numerous telephone and e-mail interchanges that the parties were prepared to execute the Stipulation.  *Id.*, ¶24.

Given these circumstances, there can be no hint of collusion given the hard bargaining that led to the Settlement.  Thus, the Settlement is clearly the product of arm's-length negotiations.

### 5.  The Reaction Of The Class To The Settlement Favors Approval

The response by Class members is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement.  *Relafen Antitrust Litig.*, 231 F.R.D. at 72 (class's reaction supported approval where the "overall reaction to the settlement has been positive" and the objections asserted by class members did not focus upon the total settlement consideration); *Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement]."); *In re Sequoia Sys. Sec. Litig.*, Fed. Sec. L. Rep. (CCH), ¶ 48,089 at 98,729 (D. Mass. 1993) (Woodlock, J.); *Bussie*, 50 F. Supp. 2d at 77; *Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections."); *Faneuil Hall*, 671 F. Supp. at 823.

Consideration of the reaction of the Class is particularly appropriate where, as here, to date no objections to the Settlement have been received.  As noted above, not a single objection to the Settlement has been received in response to the 25,154 copies of the Notice that were mailed to potential Class members or publication of the Summary Notice in the national edition of *The Wall Street Journal*.  Klafter Aff., ¶¶ 5-6.

In addition, both the Notice and Summary Notice advised members of the Class of their right to exclude themselves from the Class.  To effect their right to request exclusion, the Notice instructed that a written request be submitted to the Claims Administrator so that it is postmarked on or before October 26, 2007.  To date, only two requests for exclusion have been received from Class members.  *See* Verkhovskaya Aff., ¶15 and Exhibit F thereto.

As this Court has noted, "any prospective class member who has received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement." *Faneuil Hall*, 671 F. Supp. at 824.  This overwhelmingly favorable response is a powerful indication that the Settlement is fair and adequate.

### 6.  The Recommendation Of Experienced Counsel

Counsel's opinion should be accorded significant weight in determining the fairness of the Settlement.  *See* 3B James W. Moore, *Moore's Federal Practice* ¶ 23.1.24[2] (3d ed. 1997). Counsel on both sides of this Action have vast experience in complex litigation.  The two firms approved by the Court to act as Lead Counsel — Klafter & Olsen LLP and Entwistle & Cappucci LLP, and Liaison Counsel — Berman DeValerio Pease Tabacco Burt & Pucillo, are nationally recognized members of the plaintiffs' bar, specializing in complex class litigation. *See* Klafter Aff., ¶ 60.  Unquestionably, counsel on both sides have the experience, skill and knowledge to assess the merits of the action and to make an informed recommendation regarding the wisdom and fairness of the Settlement.  Klafter Aff., ¶¶ 60-61.  Indeed, "[t]he greater experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, adequacy, and reasonableness."  Moore, *supra*, ¶ 23.85[2].

In light of the considerable risks to obtaining any recovery had the parties not agreed to settle this Action, Lead Plaintiffs are satisfied that the Settlement is a very favorable resolution of this litigation.  The Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case.  *Cotton*, 559 F.2d at 1330 (citation omitted); *see also Giusti-Bravo*, 853 F. Supp. at 40.

### 7.  The Range Of Reasonableness Of The Settlement Amount

A reasonable settlement is not determined by a hard and fast mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement. . . ."  *Relafen Antitrust Litig.*, 231 F.R.D. at 73 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also Faneuil Hall*, 671 F. Supp. at 826.

Courts routinely approve proposed settlements even though the benefits amount to less than the recovery sought.  *Officers For Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 628 (9th Cir. 1982); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1391, 1417 (D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992).[7]

The inquiry should focus on comparing "[t]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement."  *Relafen Antitrust Litig.*, 231 F.R.D. at 74.  Here, the Settlement represents approximately 18 percent of the maximum amount Lead Plaintiffs might recover if they were successful in overcoming every hurdle described above.  Even if Lead Plaintiffs successfully prevailed on summary judgment and liability at trial, they could still end

---

[7] "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Detroit v. Grinnell*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974); *accord*, *Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (Second Circuit upheld a settlement which amounted to "only a negligible percentage of the losses suffered by the class").

up with a hollow victory if the jury adopted Defendants view of damages and awarded less than $1 million – an amount that would not be available to the Class until years from now if Lead Plaintiffs prevailed on all appeals.  Klafter Aff., ¶ 39.  This result therefore clearly falls within the range of reasonableness.  *See id.* (approving settlement representing 26% of the damages estimated by plaintiffs' expert and 55% of the damages estimated by defendants' expert); *In re Ikon Office Solutions Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement amounting to 5.2 percent of potential recovery).  Indeed, in light of the various risks detailed above, the Settlement represents an excellent recovery.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Lead Plaintiffs respectfully submit that the Plan of Allocation for the Net Settlement Fund, fully described in the Notice at pp. 6-7, should be also approved as it provides a fair and equitable method to divide the Net Settlement Fund among Class members who submit timely and valid Proof of Claim forms ("Authorized Claimants"), consistent with the governing law.  As clearly set forth in the Notice, pp. 5-6, Class members were informed that they had an opportunity to object to the Plan of Allocation no later than October 26, 2007.  To date, Lead Plaintiffs are aware of no such objections.  Klafter Aff., ¶ 6, 43.

A plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure must be fair and reasonable.  *See Class Plaintiffs v. Seattle*, 955 F.2d at 1284.  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a "reasonable, rational basis[,]" particularly if recommended by "competent and experienced class counsel."  *Taft v.*

*Ackermans*, 2007 WL 414493, at *9 (S.D.N.Y. January 31, 2007) (citations omitted); *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd*, 41 F.2d 402 (8th Cir. 1994); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible Class members. Here, the Plan of Allocation does not grant preferential treatment to any of the Lead Plaintiffs and no consideration was given to when any of the Lead Plaintiffs purchased or sold Viisage common stock. Klafter Aff., ¶ 44. Rather, as set forth in the Klafter Aff., ¶¶ 43-45, it is predicated on: (1) the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005), which was decided after the commencement of this Action, and its progeny; and (2) the fact that the first disclosure that Viisage had material weaknesses in its financial controls occurred on March 2, 2005.

In *Dura*, the Supreme Court held that to recover damages, a plaintiff must show a connection between the alleged misrepresentations and the loss. Since this decision, appellate courts have interpreted *Dura* to bar a recovery of losses absent a showing that the losses were caused by a public disclosure concerning the alleged fraud. *See* Klafter Aff., ¶ 44. It is for this reason that only Authorized Claimants may share in the Net Settlement Fund for Viisage shares purchased during the Class Period and held as of the close of the markets on March 2, 2005.

The Plan of Allocation credits all such purchases by Authorized Claimants with the lesser of: (1) $0.485 [half of the $0.97 price drop on March 3, 2005] and (2) if sold prior to June 1, 2005,[8] the difference between the purchase price of the shares and the sale price of the shares. The Authorized Claimant's Recognized Loss is equal to the resulting damages on all eligible shares, less any profits in Viisage stock during the period. Each Authorized Claimant is entitled

---

[8] The June 1 date is 90 days after the March 2 disclosure and is used due to the limits on recoverable damages set forth in Section 21D(e)(1) of the Securities Exchange Act, 15 U.S.C. §78(u)(D)(e)(1).

18

to recover his/her/its Recognized Loss to the extent there are sufficient Net Settlement Funds.  If there are not, each Authorized Claimant will be entitled to receive the same percentage of their Recognized Loss, determined by the ratio of the total Recognized Losses of all Authorized Claimants and the value of the Net Settlement Fund.  The Plan of Allocation is similar in structure to numerous other such plans, which have been utilized in other similar securities class action cases and approved by Courts.

   The Plan of Allocation therefore represents a fair and equitable method for allocating the Net Settlement Fund among Authorized Claimants and should be given final approval by the Court.

## V.    CONCLUSION

   For the foregoing reasons, Lead Plaintiffs respectfully submit that the Settlement meets all objective criteria of fairness, reasonableness and adequacy.  Lead Plaintiffs therefore respectfully request that the Court enter:  (1) the proposed Final Judgment and Order of Dismissal with Prejudice; and (2) the proposed Order Approving Plan of Allocation.

Dated:  November 2, 2007                Respectfully submitted,

                                        **BERMAN DEVALERIO PEASE TABACCO
                                        BURT & PUCILLO**

                                        By:    /s/ Patrick T. Egan
                                               Jeffrey C. Block (BBO# 600747)
                                               Leslie R. Stern  (BBO# 631201)
                                               Patrick T. Egan (BBO# 637477)
                                               One Liberty Square, 8th Floor
                                               Boston, MA 02109
                                               (617) 542-8300

                                        **Plaintiffs Liaison Counsel**

19

Jeffrey A. Klafter, Esq. (*pro hac vice*)
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10605
(914) 997-5656

Kurt B. Olsen, Esq.
**KLAFTER & OLSEN LLP**
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C.  20036
(202) 261-3553

Vincent R. Cappucci. Esq.
Stephen D Oestreich, Esq.
Robert N. Cappucci, Esq. (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, NY 10017
(212) 894-7200

**Co-Lead Counsel for**
**Lead Plaintiffs and the Class**

20